property related thereto. They are a family-owned business and the named Plaintiffs in this lawsuit. *Erdley Dec.*[3], ¶5.

Erdely brought his father-in law's invention to market, and now, with Gorge Design, sell the unique and revolutionary product under the common law trademark ULTIMATE GROUND ANCHOR ("Plaintiffs' Mark") that is the most effective ground anchor ever made ("Plaintiffs' Product"). The Plaintiffs' Product is made of 100% recycled materials and manufactured in the U.S.A. The Plaintiffs' Product will secure pets; anchor RV awnings; hold tarps over boats, ATVs and firewood; as well as ensure tents and sunshades stay put. Kirby Erdely identified the need for this product and created the market for this product. *Id.* at 6.

By August of 2015, a crowdfunding campaign was launched on kickstarter.com. In less than one month, the campaign was fully funded and at the end of the campaign, it was 214% funded from 641 backers in nearly 20 countries. *Id.* at 8. The current version of Plaintiffs' Product is sold through the orangescrew.com website, and the amazon.com and eBay Internet marketplaces by Gorge Design Group, LLC d/b/a Orange Screw; and various retail stores across the United States. *Id.* at 9.

Plaintiffs' Product has been featured in videos, articles, or podcasts by numerous media outlets, including NBC (https://www.kgw.com/article/money/washington-based-company-dealing-with-counterfeit/283-c0e3d0a8-9ce4-483c-a8d6-886fca7923a0); NPR (https://edge2.pod.npr.org/anon.npr-mp3/npr/hibt/2019/06/20190607_hibt_hybt_-_orange_screw_for_seamus_-_061019.mp3/20190607_hibt_hybt_-_orange_screw_for_seamus_-_061019.mp3_3b65203266d0646bdd82770ddadcecb6_4423741.mp3?orgId=1&d=260&p=5103

---

[3] Refers to the Declaration of Kirby Erdely in Support of Plaintiffs' Ex Parte Application for Entry of Temporary Restraining Order and Preliminary Injunction, filed herewith.

13&story=730695224&t=podcast&e=730695224&siteplayer=true&size=4161660&awCollectio nId=510313&awEpisodeId=730695224&dl=1&hash_redirect=1&x-total-bytes=4423741&x-ais-classified=download&listeningSessionID=0CD_382_301__98a5c26012621d891e7c46c58c5cbb f1ae572ff6); NBC's The Today Show (https://www.youtube.com/watch?v=5FuTdEn6bYs&feature=youtu.be); and the Gear Junkie (https://gearjunkie.com/threaded-tent-stake-anchor). *Id.* at 10.

Genuine goods bearing Plaintiffs' Mark and using Plaintiffs' Works (as defined below) are widely legitimately advertised and promoted by Plaintiffs, their authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiffs' overall marketing. *Id.* at 11. Thus, Plaintiffs and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiffs and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiffs' brand and the goods sold thereunder. Similarly, Defendants' individual sellers stores are indexed on search engines and compete directly with Plaintiffs for space in the search results. *Id.* at 12.

**B. Plaintiffs' Rights**

Plaintiffs are the owners of various published photographs, videos, artwork, creative text and product instructions appearing on kickstarter.com and orangescrew.com. ("Plaintiffs' Works"), which are shown in Complaint **Exhibit 1** and Complaint **Exhibit 2**, respectively. *Id.* at 13. Additionally, Plaintiffs have taken numerous steps to protect Plaintiffs' Product. For instance, Kirbly Erdely is the owner of U.S. Patent No. 7309198 for "Re-useable threaded tie

downs" ("Plaintiffs' Patent") (describing Plaintiffs' Product and its use). A copy of the assignment record and the issued patent is attached as Complaint **Exhibit 3**. *Id.* at 14.

The patented features of Plaintiffs' Product, common law trademark for the ULTIMATE GROUND ANCHOR, the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associates all of this IP with Plaintiff's genuine product. *Id.* at 15.

Plaintiffs' genuine product is only manufactured in the United States and the quality of the product is closely controlled. Thus, if a product that purports to be Plaintiffs' Product Product is manufactured in China or overseas, it is a counterfeit. *Id*. at 16. Likewise a ground anchor that through visual inspection and analysis infringes on one or more of the claims in the U.S. patent owned by the Plaintiffs but is offered for sale as new on an Online Marketplace at below market price, it is also a counterfeit. *Id.* at 17.

Plaintiffs' Mark has been used in interstate commerce to identify and distinguish Plaintiffs' goods. *Id.* at 18. Plaintiffs' Mark has been used by Plaintiffs prior in time to Defendants' use of this mark. *Id.* Plaintiffs' Mark has never been assigned or licensed to any of the Defendants in this matter. *Id.* The Plaintiffs' Mark is a symbol of Plaintiffs' quality, reputation, and goodwill and has never been abandoned. *Id.*

### C. Plaintiffs' Efforts to Police the Defendants' Conduct

The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores using the Seller IDs set forth on "**Schedule A**" to the Complaint. *See Ray*

*Dec.*[4], ¶ 3. These interactive commercial Internet websites provide on-line Merchant Storefronts (as defined *infra*) that allow the Defendants to maintain their anonymity while advertising, offering for sale, and selling Infringing Products into the United States and into Pennsylvania. The Internet marketplaces used by these Defendants include AliExpress.com, eBay.com, and wish.com.  *See Ray Dec.,* ¶ 3 and Composite Exhibit 1 attached thereto.

Plaintiffs have been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiffs' reputation and bottom line. *Erdely Dec.,* at ¶ 19. Some Defendants sell their fake version of Plaintiffs' Product at a fraction of the controlled retail price, going as low as $3.00 or $4.00. *Id.* Because of the software provided by the various Internet marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. *Id.* The Plaintiffs' Product is ignored. *Id.* Plaintiffs have had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.  *Id.*

Another major problem with the Internet marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Infringing Products. *Id.* In essence, a counterfeiter in Vietnam or Russia, for example, may order a crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US consumer through a Third Party Service Provider. *Id.* The ease of this system encourages knock-offs to flourish. *Id.*

---

[4] Refers to the Declaration of Taylor Ray in Support of Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, filed herewith.

For these reasons, Plaintiffs retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces. *Id.* at ¶ 20. During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. *See id.* These manufacturers were supplying many of the other identified Defendants with infringing products flooding the Internet marketplaces and damaging Plaintiffs' business. This damage to Plaintiffs' business will continue unless Plaintiffs receive the sought after restraining order and injunctive relief. *Id.*

**D. The Defendants' Wrongful Conduct**

Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Mark and/or Plaintiffs' Works for any purpose. *Id.* at ¶ 25. Defendants' unlawful activities have deprived and continue to deprive Plaintiffs of their rights to fair competition. *Id.* By their activities, Defendants are defrauding Plaintiffs and the consuming public for Defendants' benefit. *Id.* Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiffs ongoing irreparable harm. *Id.* Accordingly, Plaintiffs are seeking entry of a temporary restraining order prohibiting Defendants' further wrongful unfair competition and infringement of Plaintiffs' patent. *Id.*

Given Defendants' copying and use of Plaintiffs' Mark, Plaintiffs' Works, and/or the '198 Patent, the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale. *Id.* at ¶ 26. By using Plaintiffs' intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiffs. *Id.* Such false association is in violation of 15 US.C. § 1125(a) and is causing and will continue to cause Plaintiffs' irreparable harm and damage. *Id.*

As part of Plaintiffs' counsel's ongoing investigation regarding the sale of Infringing Products, Plaintiffs' counsel investigated the promotion and sale of Infringing Products by Defendants and obtained available payment account data for receipt of funds by Defendants for the sale of knock-off versions of Plaintiffs' genuine products through the Seller IDs. *Ray Dec.*, ¶ 3. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is featuring, displaying, and/or using the Plaintiffs' Mark, the Plaintiffs' Works, and/or infringing at least one claim of the '198 Patent without authorization and that the products that each Defendant is offering for sale, using virtually identical copies of Plaintiffs' Mark, the Plaintiffs' Works, and/or infringing at least one claim of the '198 Patent are, in fact, not genuine products. *Id.* The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing products to the United States, including to customers located in Pennsylvania. At checkout, a shipping address located in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address. *Id.* Plaintiff Erdely inspected the detailed web listings describing the Infringing Products Defendants are offering for sale through the Internet based e-commerce stores operating under each of their respective Seller IDs, and determined the products were not genuine versions of Plaintiffs' products. *Id.* and Composite Exhibit 1, and *Erdely Dec.,* ¶¶ 27 – 29.[5]

---

[5] See *e.g., Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Plaintiff's Intellectual Property Manager found that the products offered for sale on the Defendant's websites were non-genuine counterfeit products, based on a visual inspection of Defendant's websites); *Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016) (Plaintiff's representative reviewed the items bearing the Louis Vuitton Marks offered for sale through Defendant's Internet websites and determined the products to be non-genuine, unauthorized versions of the

Section 43(a) of the Lanham Act prohibits the use "in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). A comparison of Plaintiffs' images and common law trademark to the advertising and offering for sale of Defendants' products reveals the obvious knock-off and infringing nature of Defendants' activities. Defendants' goods are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States. Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them. Defendants are also falsely representing to consumers that their goods are genuine, authentic, endorsed, and authorized by Plaintiffs. Ultimately, Defendants' Internet activities infringe upon Plaintiffs' intellectual property rights. The Seller IDs, and associated payment accounts, are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiffs.

In light of the covert nature of Defendants' offshore and infringing activities and the importance of creating economic disincentives for such infringing activities, courts have recognized these concerns and routinely grant *ex parte* applications for relief in cases asserting

---

Plaintiff's products.); *Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013) (Plaintiff's Director of Legal Administration reviewed the various Chanel-branded products offered for sale by Defendants on each of the websites operating under the subject domain names, and determined that the products were non-genuine Chanel products); *Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) (Plaintiff's representative personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through its website, and concluded that those products were non-genuine Chanel products).

Section 43(a) violations on the Internet.[6]  Accordingly, Plaintiffs respectfully request that this Court grant their *ex parte* Application for the following: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, Alibaba.com US LLC ("Aliexpress"), Amazon Services LLC d/b/a amazon.com ("Amazon"), eBay, Inc. d/b/a eBay.com ("eBay"), Shopify (USA), Inc. d/b/a Shopify.com ("Shopify") "Third Party Service Providers" and "AliPay US Inc. d/b/a Alipay.com ("Alipay"), Amazon Payments, Inc. d/b/a pay.amazon.com, and PayPal, Inc. d/b/a paypal.com ("PayPal") Financial Institutions".

---

[6] *See, e.g., Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al.*, No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017); *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al.*, No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc.*, No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD*, 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015); *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.*, No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.*, No. 1:10-cv-09336-DAB, (S.D.N.Y. Jan. 4, 2011) (unpublished); *Chloe v. Designersimports.com USA, Inc*., No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y. Apr. 29, 2009); *see also In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

### III.  ARGUMENT

A.      THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Federal courts "may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987)). This determination entails a two-step inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) (1). Second, if the forum state allows jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). As alleged herein, Defendants' unlawful, counterfeiting and infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of jurisdiction over Defendants thereunder comports with due process.

1. **Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322**

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit…(3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . .(10) Committing any