violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world (including within Allegheny County, Pennsylvania) to view and purchase products, including Infringing Products, as demonstrated by the websites themselves and Plaintiff's purchase of Infringing Products. *See Ray Dec.,* ¶ 3 and Composite Exhibit 1, and *Erderly Dec.,* ¶ 27 - 29.  *See n. 4, infra.* (collecting cases in which operating interactive web sites was deemed sufficient to confer personal jurisdiction upon the Court).

Here, by advertising, offering for sale, selling, distributing and shipping retail products directly to consumers across the world, including consumers located throughout the U.S. and specifically in Pennsylvania, Defendants have committed tortious acts, as alleged herein, outside of Pennsylvania, thus directly giving rise to the claims asserted in the instant action. *See Ray Dec.,* ¶ 2 and Composite Exhibit 1; *see also Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce)*; A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while plaintiff's provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), see later opinion, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL

30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff).

Here, the injury clearly occurred within Pennsylvania, as Defendants' Infringing Listings, resulted in consumers throughout the U.S., and specifically in Pennsylvania, purchasing Infringing Products. *See Ray Dec.,* ¶ 2 and Composite Exhibit 1. As a direct result of Defendants' counterfeiting and infringing actions, Plaintiff has suffered harm in Pennsylvania through lost sales in Pennsylvania and lost Pennsylvania consumers. *See Erdely Dec.,* ¶¶ 29 - 32.

Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania, through their fully interactive web sites, as well as yet undiscovered online marketplaces, to offer for sale and/or sell Infringing Products. The identified Defendants merely use fanciful and made up store names or seller ids without complete addresses, contact information, phones numbers and the like). *See Ference Dec.,* ¶¶ 6 - 7; Defendants used and continue to advertise, market, promote, offer for sale, sell, distribute and/or import Infringing Products to Pennsylvania  customers and/or potential customers, including in Allegheny County, Pennsylvania. *See Erdely Dec.* ¶¶ 27 - 32.

Here, the fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Infringing Products through their Merchant Storefronts, as well as any and all as yet undiscovered online marketplace platforms, alone supports a finding that Defendants have intentionally used these marketplace platforms, "as a means for establishing regular business with a remote forum." *EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012* U.S. Dist.. *LEXIS 78088, at \*10 (E.D.N.Y. June 4, 2012)* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008); *see also Lifeguard Licensing Corp.,* 2016 U.S. Dist.. LEXIS 89149, at \*8

and *EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *10. Courts have indeed found

that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal

jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled

into court [in the present jurisdiction]." *Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003);

*see also EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at *12.

      Whether a Defendant physically shipped Infringing Products into Pennsylvania is not

determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given

defendant's online interactions with consumers in considering whether a particular defendant has

transacted business in the forum state.  *See Ray Dec.* ¶ 2.  *See Zippo Mfg. Co.,* 952 F. Supp. at

1119; *Rolex Watch, U.S.A., Inc. v. Pharel,* 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS

32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of

South Carolina, because he transacted business in New York by monitoring and responding to

inquiries for counterfeit watches through websites accessible in New York).  Plaintiff and

Plaintiff's counsel have viewed Defendant's Infringing Products via their online User Accounts

and Merchant Storefronts. *See Ray Dec.*, ¶ 2 and *Erdely Dec.* ¶¶ 27 - 29.[7]  Thus, Defendants'

---

[7]   *See Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011), and that, "[t]he offering for sale of
even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction
over the alleged infringer under N.Y. CPLR § 302.  *Cartier v. Seah LLC,* 598 F. Supp. 2d 422, 425 (S.D.N.Y.
2009).  Moreover, under Second Circuit case law, when analyzing personal jurisdiction in the Internet context,
"traditional statutory and constitutional principles remain the touchstone of the inquiry," and while a website's
interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the
defendant 'transacts any business' in New York,'" ... "it does not amount to a separate framework for analyzing
internet-based jurisdiction." *Best Van Lines, Inc.,* 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker,* No.
03- Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004)) (citing *Zippo Manufacturing
Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)). Sister circuits similarly rely on the traditional
principles guiding the personal jurisdiction analysis when analyzing the same in the Internet context, namely the
Eleventh Circuit (see, *e.g., Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011)
(criticizing the over-reliance on the sliding scale of interactivity analysis and instead applying a traditional
personal jurisdiction analysis in an Internet case where the website was fully interactive); *see also Louis Vuitton
Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) (applying the traditional purposeful
availment test in a case where defendant's fully interactive website was accessible in Florida, and was selling
and distributing infringing goods through his website to Florida consumers), and the Seventh Circuit (see, e.g.,
*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010)

sophisticated commercial operations, specifically including their offering for sale and/or selling

of Infringing Products through their highly interactive User Accounts and Merchant Storefronts,

along with Defendants' own representations on their Merchant Storefronts that they ship

Infringing Products to the U.S., including to Pennsylvania addresses, unequivocally establishes

that Defendants conduct business within this District and the claims in this suit arise from

Defendants' business dealings and transactions with consumers in Pennsylvania. *See Zippo Mfg.*

*Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997).

---

(addressing the impact of a defendant's online activities upon the personal jurisdiction analysis and reiterating that, as with offline activities, the Court must focus upon the deliberate actions of the defendant within the State)), are instructive in considering whether the exercise of jurisdiction over Defendants in the instant action is appropriate under similar, if not identical facts. For example, courts in the Eleventh Circuit have routinely granted temporary restraining orders, preliminary injunctions and default judgments in online counterfeiting cases where no purchases of the counterfeit/infringing products were made, but the plaintiffs alleged and confirmed that each of the foreign defendants operated fully interactive commercial websites through which they advertised, promoted, offered for sale, and sold products bearing what the plaintiff determined to be counterfeit and infringing trademarks into the U.S., and in interstate commerce, in violation of the plaintiff's rights. *See, e.g., Malletier,* 2016 U.S. Dist. LEXIS 93072, at *3; *Mycoskie v. 2016tomsshoessaleoutlet.us,* No. 16-61523- CIV-GAYLES, 2016 U.S. Dist. LEXIS 95963, at *4 (S.D. Fla. July 22, 2016); *Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015); *Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015); *Gucci Am., Inc. v. Gucc-Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015); *Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieandfitchdk.com,* No. 15-62068-CIV-BB, 2015 U.S. Dist. LEXIS 179117, at *5 (S.D. Fla. Oct. 7, 2015); *Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at *11 (S.D. Fla. Sep. 29, 2015); *Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015). Similarly, the Seventh Circuit, in *Illinois v. Hemi Group LLC,* held that it had personal jurisdiction over the foreign defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents, specifically noting that the "[defendants] maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts," and as a result, the "[defendants] stood ready and willing to do business with Illinois residents." *Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010); *see also Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (holding that defendants had "expressly aimed" their actions at the state, making specific personal jurisdiction proper even without a sale made to an Illinois resident, because in addition to intentionally creating and operating commercial, fully interactive AliExpress.com Internet stores through which consumers can purchase counterfeit Monster Energy Products, the defendants had affirmatively selected a shipping option to ship counterfeit products to the U.S., including to Illinois residents, and the plaintiffs' exhibits showed that the named defendants had specifically offered to sell particular counterfeit products to individuals with Illinois shipping addresses and provided PayPal account number for the buyer to make the payment for the item, and as a result, the defendants expressly elected to do business with the residents of all fifty states, including Illinois).

2.  **Exercising Personal Jurisdiction Over Defendants Comports With Due Process**

The assertion of personal jurisdiction over Defendants also comports with the Due

Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such

that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial

justice.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457

(1940)).

This Court may exercise personal jurisdiction when the plaintiff can establish that the cause

of action at issue arose from the defendant's activities within the forum state. *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984). The plaintiff initially bears the burden

of proving a *prima facie* case, by a preponderance of the evidence, that the defendant's contacts with

the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d

141, 146 (3d Cir. 1992). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985); *see*

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ("In the language of minimum

contacts, when the defendants committed 'their intentional, and allegedly tortious, actions

expressly aimed at California, they must have reasonably anticipated being hailed into court

there.'") (internal quotations omitted); Here, the Defendants intentionally directed their activity

towards the Pennsylvania market, thereby purposefully availing themselves of "the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *See Erdely Dec*. ¶ 29. *See Ray Dec*. ¶ 2 and Composite Exhibit 1. Thus, the Plaintiff has

made out a *prima facie* case, by a preponderance of the evidence that Defendants' contacts with

the Pennsylvania meet the "minimum contacts" test.

Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest

extent allowed under the Constitution of the U.S. and may be based on the most minimum

contact with this Commonwealth allowed under the Constitution of the U.S.."  42 Pa. C. S. A. §

5322(b) (1981).  Thus, because Pennsylvania's long-arm statute is coextensive with the dictates

of the U.S. Constitution, the traditional two-step analysis is collapsed into a single inquiry:

"whether the exercise of personal jurisdiction would conform with the Due Process Clause."

*Poole v. Sasson,* 122 F. Supp.  2d 556, 558 (E. D. Pa. 2000); *see also Renner v. Lanard Toys*

*Limited,* 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise

of personal jurisdiction over the defendant would be constitutional."). Due process requires that

the defendant have "minimum contacts" with the forum state.  *Remick v. Manfredy,* 238 F.3d

248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66

S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws.'" *Remick,* 238 F.3d at 255 (quoting

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026,

94 L.Ed.2d 92 (1987)).

Here, each of the Defendants has used an interactive web site for offering for sale and

selling infringing products.  This Court has personal jurisdiction over each Defendant based upon

internet-based sales activity into the US and this judicial district. The seminal opinion in this

regard is *Zippo Mfg. Co,* 952 F. Supp. at 1119.  In *Zippo,* this court established a "sliding scale"

analytical framework for internet-based personal jurisdiction cases based upon the "level of

interactivity and commercial nature of the exchange of information that occurs on the Web site."

952 F. Supp. at 1124. The court explained:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is
> directly proportionate to the nature and quality of commercial activity that an
> entity conducts over the Internet. This sliding scale is consistent with well-
> developed personal jurisdiction principles. At one end of the spectrum are

situations where a defendant clearly does business over the Internet. If the
defendant enters into contracts with residents of a foreign jurisdiction that involve
the knowing and repeated transmission of computer files over the Internet,
personal jurisdiction is proper. At the opposite end are situations where a
defendant has simply posted information on an Internet Web site which is
accessible to users in foreign jurisdictions. A passive Web site that does little
more than make information available to those who are interested in it is not
grounds for the exercise personal jurisdiction. The middle ground is occupied by
interactive Web sites where a user can exchange information with the host
computer. In these cases, the exercise of jurisdiction is determined by examining
the level of interactivity and commercial nature of the exchange of information
that occurs on the Web site.

*Id*.

The Third Circuit endorsed this general framework in *Toys "R" Us, Inc. v. Step Two,*

*S.A.,* 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of

"the intentional nature of the defendant's conduct vis-a-vis the forum state." *Id.* at 452. In other

words, "there must be some evidence that the defendant 'purposefully availed' itself of

conducting activity in the forum state, by directly targeting its website to the state, knowingly

interacting with residents of the forum state via its website, or through sufficient other related

contacts." *Id.* at 454. *See also Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d

551, 556 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))

In the wake of *Zippo* and *Toys "R" Us,* most courts have concluded that a defendant that

intentionally conducts business transactions over an interactive website with customers in the

forum state has purposefully directed itself of the laws of that forum.  In *Square D,* for example,

the defendant's website contained links providing "a [telephone] number and e-mail address for

the purpose of placing an order," information concerning product warranties, and a link that

permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number,

and quantity of the product to be purchased, as well as the purchaser's company name, phone,

fax and e-mail." *Square D Co. v. Scott Elec. Co.,* No. 06-459, 2008 WL 4462298, at *3 (W.D.

Pa. Sept. 30, 2008). There was also a space on the form for additional "comments" concerning a proposed transaction. *Id.* Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "provid[ing] much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." *Id.* at *8, Indeed, the court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. *Id.* at *9.  Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania.  *Id.* As explained by the court:

> The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation to a customer [in] Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum. *Id.* at *11.

*Willyoung v. Colorado Custom Hardware, Inc.* is similarly instructive. *Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept. 30, 2009).  In *Willyoung,* the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to [defendant's] on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.' " *Id* . at *12. Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales.  *Id.* Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website." *Id.* at *13. Other courts have frequently reached the same conclusion. *See also Gentex Corp. v. Abbott,* 978 F. Supp. 2d