*Bridwell,* 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm)).

The harms caused by the infringement of ate least one claim of the '198 patent is equally insidious. The infringements devalue the patent by associating it with inferior quality goods, and it undermines the value of the patent by creating the impression that infringement may be undertaken with impunity which threatens Plaintiffs' ability to attract investors and markets for the genuine products. *See Erdely Dec.,* ¶ 26. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs' have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiffs' ability to enforce its exclusive rights.*"); Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business).

Also, because Defendants' substandard Infringing Products are virtually indistinguishable from Plaintiffs' genuine products, not only could any injury that results from use of Defendants' substandard Infringing Products be attributed to Plaintiffs *(See Erdely Dec.*, ¶ 24), thereby causing irreparable harm to Plaintiffs in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but Plaintiffs potentially could be exposed to legal liability for any such injury, which is of particular importance given the nature of the genuine products. *Id. at* ¶ 33. Thus, this factor weighs heavily in Plaintiffs' favor.

2. **<u>Plaintiffs Are Likely to Prevail on The Merits of Their Lanham Act Claims</u>**

To prevail on a false designation of origin claim pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, a plaintiff must show: (1) that defendants used a false designation of origin; (2) that the use of the false designation of origin occurred in interstate commerce in connection with goods or services; (3) that the false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of Plaintiffs' goods by another person; and (4) that Plaintiffs have been or are likely to be damaged as a result. *See AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994). False designation of origin claims often take one of two forms: "passing off" claims and "reverse passing off" claims. The Supreme Court distinguished the two claims as follows: "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. Reverse passing off, as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n. 1 (2003) (citations omitted).

Although the above sets out the general rule, in cases involving use of a plaintiff's photographs and common law trademarks, courts do not go through a detailed analysis of these four factors. Rather, the focus is on whether a defendant has used plaintiff's photographs to advertise defendant's own products; if the defendant has, Section 43(a) has been violated and an injunction issues. Similarly, when considering infringement of a common law trademark, the focus is on whether use of the same mark is by the defendant is likely to create confusion; if there is a likelihood of confusion, an injunction issues. Plaintiffs are likely to prevail on the merits of their passing off claim as the evidence shows Defendants have misrepresented the Infringing Products as Plaintiffs' genuine products by using Plaintiffs' Works and/or Plaintiffs'

Mark while marketing their knock-off products, and Defendants' actions have created actual confusion between Defendants' knock-offs and Plaintiffs' genuine Products.

### a. <u>Defendants' Use of Plaintiffs' Photographs</u>

The Lanham Act, including Section 43(a), was enacted in 1946. The very first case to consider whether a defendant's use of a plaintiff's photograph in defendant's advertising was a Section 43(a) violation was *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649 (3d Cir. 1954). The Third Circuit reversed a district court's grant of a defendant's motion to dismiss for failure to state a claim, summarizing the case as follows:

> Plaintiff, a manufacturer, and defendant, a retailer, are both members of the dress industry, selling dresses in commerce. Each is incorporated in Pennsylvania. Alleging a fraudulent and injurious use of a picture of plaintiff's dress in defendant's advertising, the plaintiff brought this action under the Lanham trade-Mark Act of 1946 for damages an injunctive relief. …
>
> * * * *
>
> On its face Section 43(a) seems rather clearly to cover the present claim. It provides in relevant part that "Any person who shall * * * use in connection with any goods * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods * * * to enter into commerce, * * * shall be liable to a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation." Section 39 gives federal district courts jurisdiction of causes arising under this statute regardless of the amount in controversy or the citizenship of the litigants.
>
> The present complaint alleges that plaintiff created and alone sold to the retail trade throughout the country a certain distinctively styled dress. To advertise this dress plaintiff published pictures of it, together with its price, $17.95, in advertisements in leading newspapers and in some two million individual mailing pieces distributed through retailers. In this way the picture and price of this dress became associated in the minds of many readers and identified as plaintiff's $17.95 dress.
>
> It is further alleged that, at about the same time, defendant was offering for sale through mail order and otherwise in interstate commerce a dress which in fact was much inferior to plaintiff's in quality and notably different in appearance. In this connection defendant published under its name in a magazine of national

> circulation a display advertisement worded and designed to promote the mail order sale of its dress at a stated price of $6.95, but showing as the most prominent feature of the advertisement an actual photographic reproduction of plaintiff's dress, thus fraudulently represented as the article defendant was selling for $6.95. Plaintiff alleges that this misrepresentation caused some trade to be diverted from plaintiff to defendant and caused other trade to be lost by plaintiff as a result of the mistaken impression conveyed to those familiar with the advertising of both parties that plaintiff was offering for $17.95 a dress worth only $6.95.
>
> **In relation to the language of Section 43(a) this complaint states about as plain a use of a false representation in the description of goods sold in commerce as could be imagined.**

*L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650 (3d Cir. 1954) (emphasis added).

It seems that some things never change.

In a 1967 case – pre-Internet – the plaintiffs created, designed, engineered and sold a novelty signal light. The defendant caused to be copied and manufactured in Hong Kong a "Chinese" copy of plaintiff's novelty signal light. In granting a preliminary injunction, the Court stated:

> This unfair competition is also sufficient to sustain a cause of action cognizable under Section 43(a) of the Lanham Trademark Act, 15 U.S.C.A. § 1125(a). This Section provides, in pertinent part, that:
>
>> "Any person who shall affix * * * or use in connection with any goods or services, or any container * * * for goods, a false designation or origin, or any false description or representation, including any words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."
>
> Plaintiffs and defendant are in competition for the signal light market. Suffice it to say that plaintiffs' light appears to be of a higher quality than defendant's.

- 36 -

>The application of Section 43(a) of the Lanham Act to this type of activity has been firmly established. **In a series of cases, the courts have held that defendant may not use a photograph of plaintiff's product to advertise and sell its own less expensive and inferior product.**[9] Such action is clearly unfair competition within the meaning of the statute and may be enjoined under the proper circumstances.
>
>A preliminary injunction has issued even where a defendant has altered the photograph of a plaintiff's product in order to put defendant's trade name or trademark on the product when, in fact, defendant's product was not identical but inferior, National Dynamics Corp. v. John Surrey, Ltd., (Inc.) 238 F.Supp. 422 (S.D.N.Y. 1963), and when all identifying marks have been removed from plaintiff's pictured product. Zandelin v. Maxwell Bentley Mfg. Co., supra. In the latter case, Judge Van Pelt Bryan stated the rationale for these decisions:
>
>>"This section [Lanham Act § 43(a)] applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiff's product, thus creates the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost." (197 F.Supp. at 611).

*Crossbow, Inc. v. Dan-Dee Imports, Inc.*, 266 F. Supp. 335, 339-40 (S.D.N.Y. 1967) (emphasis added).

In cases where a defendant has used the plaintiff's photograph in defendant's advertising, courts do not engage in a rigorous factor-by-factor analysis and simply conclude there has been a violation of Section 43(a). *See Bangor Punta Operation v. Universal Marine Co.*, 543 F.2d 1107 (5th Cir. 1976) ("The plaintiff contends that the misappropriation of its advertising material by defendants results in the violation of § 43(a) of the Lanham Act. We agree."); *Ebling & Reuss Co. v. International Collectors Guild, Ltd.*, 462 F. Supp. 716, 720 (E.D. Pa. 1978) (Preliminary Injunction issued where "the advertisements do not depict the cup set actually sold

---

[9] *American Optical Co. v. Rayex Corp.*, 266 F. Supp. 342 (S.D.N.Y.1966); *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.),* 261 F. Supp. 238 (S.D.N.Y.1966); *Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.)*, 266 F. Supp. 755 (S.D.N.Y.1964), *aff'd*, 360 F.2d 1021 (2d Cir. 1966); *National Dynamics Corp. v. John Surrey Ltd.*, 238 F. Supp. 423 (S. D.N.Y.1964); *National Dynamics Corp., v. John Surrey Ltd.*, 238 F. Supp. 422 (S. D.N.Y.1963); *Zandelin v. Maxwell Bentley Mfg., Co.*, 197 F. Supp. 608, 611 (S.D. N.Y.1961); *L'Aiglon Apparel v. Lana Lobell, Inc.*, 214 F.2d 649 (3rd Cir. 1954).

by defendant; rather, they show plaintiff's Taltos set.  This, in itself, is a false description or representation, actionable under the Lanham Act."); 1 Federal Unfair Competition: Lanham Act 43(a) § 6:12 (Dec. 2018 Update) ("Generally stated, using one product or its facsimile such as a still photograph or motion picture, or otherwise in an advertisement or promotion, while actually delivering another product even though similar in quality or appearance, has been held actionable under Section 43(a)." (citations omitted).)

As demonstrated in **Composite Exhibit 1**, Defendants have used Plaintiffs' photographs in Defendants' listings.  Such conduct is a clear violation of Section 43(a) of the Lanham Act.

### b. Defendants' Use of Plaintiffs' Common Law Trademark

In order for a party to prevail on a claim of common law trademark infringement under Section 43(a),[10] the party must establish that (1) the mark is valid and legally protectable, (2) the mark is owned by the plaintiff and (3) use of the same mark by the defendant is likely to create confusion among the relevant consumers. *See, e.g., Otokoyama Co. Ltd v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). *See also Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir.1994); *Ford Motor Co. v. Summit Motor Prods. Inc.,* 930 F.2d 277, 291 (3d Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991).  Plaintiffs' evidence submitted herewith satisfies all three requirements.

---

[10]  Like other courts, the Third Circuit Court of Appeals also recognize another type of passing off that violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) — where the objectionable conduct is the defendant's passing off that lures potential customers away from the plaintiff but where the customers recognize the passing off before actually transacting business with the defendant. *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 294–95 (3d Cir. 2001). This particular type of passing off, which creates what is known as "initial interest confusion," is prohibited by the Lanham Act because without such protection, "an infringer could use an established mark to create confusion as to a product's source thereby receiving a 'free ride on the goodwill' of the established mark."  *Id.*

The first two elements of Plaintiffs' common law trademark infringement claim are easily met. Plaintiffs' unregistered ULTIMATE GROUND ANCHOR mark is inherently distinctive. Moreover, Defendants have never had the right or authority to use the Plaintiffs' Mark. *Erdely Dec*. ¶¶5 and 25.

The Third Circuit uses a ten-factor test, the so-called *Lapp* factors, in determining the third element, likelihood of confusion. *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1229 (3d Cir. 1978). These factors are: (1) the strength of Plaintiffs' Marks; (2) the degree of similarity between the Plaintiffs' Marks and Defendants' marks; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion; (5) the intent of the defendant in adopting the mark; (6) actual confusion; (7) the similarity of the channels of trade; (8) the extent to which the targets of the parties' sales efforts are similar; (9) the relationship of the goods in the minds of consumers; and (10) other factors suggesting that consumers might expect the trademark owner to manufacture both products, or manufacture a product in the defendant's market. These ten factors are to be weighed and no single factor is dispositive. *Id*.

### 1. *Plaintiffs' Mark is Strong and Distinctive*

In determining the strength of a mark, the Third Circuit has repeatedly applied a two-prong test of "(1) the distinctiveness or conceptual strength of the mark; and (2) the commercial strength or marketplace recognition of the mark." *A & H Sportswear v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 221 (3d Cir. 2000) (quotations omitted); *see also Fisons Horticulture, Inc. v. Vigoro Industries,* 30 F.3d 466, 478-79 (3d Cir. 1994). Lanham Trade–Mark Act, §§ 32, 43(a)(1)(A, 15 U.S.C.A. §§ 1114, 1125(a)(1)(A). The Plaintiffs' Mark is distinct as applied to

the goods with which it is associated and as used in connection with Plaintiff's Product, which has achieved recognition and fame. *See Erdely Dec.*, ¶¶ 10 and 18.  Likewise, the Plaintiffs' Mark is suggestive as applied to the goods with which it is associated, as each "requires imagination, thought and perception to reach a conclusion as to the nature of the goods," and thus, the Plaintiffs' Mark is inherently distinctive and is thereby entitled to trademark protection "without proof of secondary meaning." *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F. Supp. 479, 488 (S.D.N.Y. 1968); *see also Thompson Medical Co., v. Pfizer Inc.,* 753 F.2d 208, 216 (2d Cir. 1985); *Bernard v. Commerce Drug Co.,* 774 F. Supp. 103 (E.D.N.Y. 1991) (applying the aforementioned standards in the context of an unregistered trademark). Thus, this factor weighs in Plaintiffs' favor since Plaintiffs owns an inherently distinct trademark.

### 2. Defendants' Infringing Products and Marks are Virtually Identical to Plaintiffs' Product and Plaintiffs' Mark

Defendants have used identical copies of the Plaintiffs' Mark in marketing and promoting their substandard, Infringing Products at Defendants' User Accounts and Merchant Storefronts; as such, this factor weighs in favor of Plaintiffs.  Defendants' Infringing Products are clearly designed to look as much like the Plaintiffs' Products as possible, without the quality and workmanship of the Plaintiff's Products. *See id.*; *see also Rado Watch Co.* v. *ABC, Co.,* 92-cv-3657-PKL, 1992 U.S. Dist.. LEXIS 8356, at *11 (S.D.N.Y. June 8, 1992) (finding that the similarity of the marks weighed heavily in plaintiff's favor where it is "exceedingly difficult" to distinguish between authentic and infringing goods, "even in a side- by-side comparison"). Only minor differences exist between the Infringing Products and the Plaintiffs' Products, which have no bearing on a finding of likelihood of confusion. *See id.*; *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1004-1005 (2d Cir. 1997) (holding that the test for confusion is "whether they create the same general overall impression such that a consumer who

has seen" the authentic product would, when seeing the infringing product, be confused). Further, courts do "not look with much favor on the businessman who, out of the wealth of words available, chooses as a trademark one which comes as close as he dares to a well-known mark on the identical product." *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir. 1972).

### 3. *The Sophistication of Purchasers*

"Where the purchasers of a products are highly trained professionals, they know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 151 (2d Cir. 2003). In contrast, ordinary "retail customers," (i.e., the consumers of Plaintiffs' and Defendants' products), "are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination." *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.,* 778 F. Supp. 2d 261, 268-269 (E.D.N.Y. 2011) (citing *Virgin Enterprises,* 335 F.3d at 151) (quoting district court). *See also Fisons,* 30 F.3d at 478–79. Thus, this factor favors Plaintiffs' likelihood of success on the merits.

### 4. *Defendants Acted in Bad Faith*

Given that Defendants' choice of marks, which is identical to the Plaintiffs' Mark and used in connection with the offering for sale and/or sale of virtually identical products, it can be presumed that Defendants intended to trade off the goodwill and reputation of Plaintiffs, their Product and their Mark. *See Erdely Dec.,* ¶¶ 27 – 29 and *Ray Dec.*, ¶ 2 and Composite Exhibit 1; *see also Kraft Gen. Foods, Inc. v. Allied Old English, Inc.,* 831 F. Supp. 123, 132 (S.D.N.Y. 1993) ("When a company appropriates an identical mark that is well known and has acquired a secondary meaning, an inference can be drawn that the company intends to capitalize on the