goodwill and reputation of the mark as well as any confusion that might result concerning the common origin of that mark and the senior user's product.").[11]  If Defendants' infringing actions are found to be willful, "likelihood of confusion will be presumed as a matter of law." *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.,* 79 F. Supp. 2d 331, 340 (S.D.N.Y. 1999).

### 5. Actual Confusion Can Be Inferred Between Defendants' Infringing Products and the Plaintiffs' Product

Seeing as Defendants are offering for sale and/or selling knock-off versions of the Plaintiffs' Product under the Plaintiffs' Mark, or a confusingly similar mark, actual confusion can be inferred. *See Erdely Dec.,* ¶¶ *27 − 29* and *Ray Dec. at* ¶ 2 and *Composite Exhibit 1.* Moreover, actual confusion exists in this case. *See Erdely Dec.* ¶ 22.  Notwithstanding, Plaintiffs do not need to prove actual confusion, only a likelihood of confusion to obtain equitable relief. *See Opticians Ass'n of America v. Independent Opticians of America Prot.,* 920 F.2d 187, 195 (citations omitted).  *See also One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC,* 553 F. Supp. 2d 201, 206 (E.D.N.Y. 2008) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir. 1981) ("To obtain an injunction in a trademark case the plaintiff need show 'only a likelihood of confusion or deception ... in order to obtain equitable relief.'").

---

[11]  *See also Toys "R" Us, Inc..,* 559 F. Supp. 1189, 1199 (E.D.N.Y. 1983) (citing *E.I. duPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F. Supp. 502, 514 (E.D.N.Y. 1975)) ("On the assumption that a businessman will ordinarily act to his commercial advantage, and that the attraction of an established business' good will to the newcomer's product is such an advantage, the inference to be drawn from imitation is the imitator's own expectation of confusion as to the source of origin of his product. Where, as here, there is little to distinguish the marks themselves and the prior mark is a long-established one of which the newcomer was aware, doubts about intent are resolved against the newcomer, and a reasonable explanation of its choice is essential to establish lack of intent to deceive.") and *Gucci America, Inc. v. Action Activewear, Inc.,* 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991) ("Where the evidence "shows or requires the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit.") (internal citation omitted).

### 6. *Defendants' Infringing Products Are of Inferior Quality*

The Plaintiffs' Product is manufactured with high quality materials in the United States. *See Erdely Dec.* ¶ 23. Plaintiffs have neither authorized Defendants' use of the Plaintiffs' Mark or confusingly similar marks in connection with the Infringing Products nor approved or tested Defendants' Infringing Products being offered for sale and/or sold under or in connection with the Plaintiffs' Mark and/or confusingly similar marks. *See Id. at* ¶¶ 23 - 26. Hence, Defendants have encroached on Plaintiffs' right to control the quality of the goods manufactured and sold under the Plaintiffs' Mark. *See Groupe SEB USA v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014). *See also Polymer Technology Corp. v. Mimran,* 975 F.2d 58, 62 (2d Cir. 1992) (quoting *El Greco Leather Products Co.,* 806 F.2d at 395) ("'One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark . . . the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain'"). In light of the above, this factor further supports a finding of likelihood of confusion.

### 7. *Defendants ' Infringing Products Directly Compete with the Plaintiffs' Product and There is No Gap to Bridge*

In considering the proximity of the products in the market, the concern is "competitive proximity," meaning "whether and to what extent the two products compete with each other." *Cadbury Beverages Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir. 1996). In assessing the proximity of the parties' products, courts "look to the nature of the products themselves and the structure of the relevant market. Among the considerations germane to the structure of the market are the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Id.* (citations and internal

quotations omitted). "[T]he closer the secondary user's goods are to those the consumer has seen marketed under the prior user's band, the more likely that the consumer will mistakenly assume a common source." *Virgin Enterprises v. Nawab,* 335 F.3d 141, 150 (2d Cir. 2003). In this case, Infringing Products and the Plaintiff's genuine products are both marketed through the same channel of trade (the Internet), to the same retail consumers, and the retail customers are likely to be confused that the products are the same, so this factor weighs in favor of Plaintiffs.

Further, where, as here, Defendants are offering for sale and selling products that are virtually identical in kind, but not in quality to the Plaintiff's genuine products, bearing infringing marks in the same class of goods under which Plaintiffs sell their products, they are already in competitive proximity and there is no "gap" to bridge. *See Dertsakyan Dec.,* ¶¶ 26 - 29; *Ray Dec.*, ¶ 3 and Composite Exhibit 1. "[T]here is a great likelihood of confusion when an infringer uses the exact trademark...." *U.S. Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d. Cir. 1981). Thus, likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities. *See also* 2 *McCarthy,* § 23:3 ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement."). *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 115 (2d Cir. 2009) (This factor "is irrelevant . . . where . . . the two products are in direct competition with each other."); *see also Star Indus. v. Bacardi & Co.,* 412 F.3d 373, 387 (2d Cir. 2005) (concluding that "[b]ecause . . . [the] products are already in competitive proximity, there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis") and *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.,* 00-cv-5304-SJ, 2004 U.S. Dist.. LEXIS 10426,

at *15-16 (E.D.N.Y. March 26, 2004) (citations omitted) ("Where the products are competitive, there is no gap to bridge and the likelihood of confusion is greater.").

### 3.  Plaintiff Are Likely to Prevail on Their Patent Infringement Claim

Plaintiff has established a likelihood of success on its cause of action for patent infringement. "Section 271(a) of the Patent Act defines direct infringement as 'whoever without authority makes, uses, offers to sell, or sells any patented invention, within the U.S. or imports into the U.S. any patented invention during the term of the patent therefor, infringes the patent.' 35 U.S.C. § 271(a)." *Grecia v. McDonald's Corp.*, 2018 U.S. App. LEXIS 5903, at *7-8 (Fed. Cir. Mar. 6, 2018).

Plaintiff owns a U.S. patent for its unique product, U.S. Patent No. 7,309,198 ("the '198 patent").  *Erdely Dec.*, ¶ 8. "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017). "This presumption is sufficient to establish a likelihood of success on the validity issue, absent a challenge by the accused infringer." *Id.*

To show infringement, Plaintiff submits a detailed infringement claim chart for Plaintiff's '211 patent that set forth the text of the patent claim to compare with annotated images of the infringing products. *Ference Dec.*, Ex. 1.  Thus, Plaintiff has shown it is likely to prevail on its patent infringement claims.

### 4.  Plaintiffs Are Likely to Prevail on Their State Law Claims

Because Plaintiffs have shown a likelihood of success on its Lanham Act claims, Plaintiffs respectfully submit that they have also shown a likelihood of success on their unfair competition and common law trademark infringement claims under Pennsylvania Law.  *Mateson*

*Chemical Corp. v. Veronon,* 2000 WL 680020, at *5 n.7 (E.D. Pa. May 9, 2000). *See also*

*Advance Magazine Publrs. Inc. v. Vogye Intern.*, 123 F. Supp. 2d 790, 795 (D.N.J. 2000) (citing

*A &H Sportswear, Inc.*, 237 F.3d at 201 - 11.)

### 5.  <u>The Balance of Hardships Favors Plaintiffs</u>

The balance of hardships unquestionably and overwhelmingly favors Plaintiffs in this

case. Here, as described above, Plaintiffs have suffered, and will continue to suffer, irreparable

harm to their business, the value, goodwill and reputation built up in and associated with the

Plaintiffs' Marks and to their reputation as a result of Defendants' willful and knowing sales of

substandard imitations of the Plaintiffs' genuine product. *See Erdely Dec.,* ¶¶ 22- 29.  In

contrast, any harm to Defendants would only be the loss of Defendants' ability to continue to

offer their Infringing Products for sale, or, in other words, the loss of the benefit of being allowed

to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent

defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to

complain if an injunction against continuing infringement destroys the business so elected."

*Windsurfing Intern, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Broad. Music,*

*Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (quoting *Mint, Inc. v. Amad,*

2011 U.S. Dist.. LEXIS 49813, at *3 (S.D.N.Y. 2011) (internal quotation marks and citation

omitted)); *see also Mitchell Group USA LLC*, No. 14-cv-5745-DLI/JO, 2014 U.S. Dist.. LEXIS

143001, at *6-7 (E.D.N.Y Feb. 17, 2014) (citing *Philip Morris USA Inc. v. 5 Bros. Grocery*

*Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist.. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014)

("Absent an injunction, there will be further erosion of plaintiff's goodwill and reputation.

Defendants, on the other hand, will be called upon to do no more than refrain from what they

have no right to do in the first place.")).

6.  __The Relief Sought Serves the Public Interest__

Defendants are directly defrauding the consuming public by palming off the Infringing

Products as Plaintiffs' genuine goods.  The "public has an interest in not being deceived—in

being assured that the mark it associates with a product is not attached to goods of unknown

origin and quality."  Public interest can be defined a number of ways, but in a trademark case, it

is most often a synonym for the right of the public not to be deceived or confused.  2 *McCarthy,*

§ 30:21.  *See Bill Blass, Ltd. v. Saz Corp.,* 751 F.2d at 156 (there is a public interest in the

protection of the trademark and to avoid confusion in the public); *SK & F, Co. v. Premo*

*Pharmaceutical Laboratories,* 625 F.2d 1055, 1057 (3d Cir.1980) ("preventing deception of the

public is itself in the public interest").  *See also International Kennel Club v. Mighty Star, Inc.,*

846 F.2d at 1092 n. 8 ("[T]he relevant consideration is the consumer's interest in not being

deceived.")  Here, the public has an interest in being able to rely on the high quality of the

Plaintiffs' genuine products bearing and/or sold in connection with the Plaintiffs' Mark and

Plaintiffs' Works.  Since Defendants have willfully and knowingly inserted substandard

Infringing Products into the marketplace, the public would benefit from a temporary restraining

order and preliminary injunction halting any further sale and distribution of Defendants'

Infringing Products. *See Erdely Dec.,* ¶¶ 25 - 33.

C.  **PLAINTIFFS ARE ENTITLED TO AN ORDER PREVENTING 1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF DEFENDANTS' MERCHANT STOREFRONTS**

1.  **Defendants' Assets Must be Frozen**

In addition, the Court should enter an order limiting the transfer of Defendants'

unlawfully gained assets.  Plaintiffs have demonstrated above that they will likely succeed on the

merits of their claims.  As such, under 15 U.S.C. § 1117(a), Plaintiffs will be entitled to an

accounting and payment of the profits earned by Defendants throughout the course of their

unlawful scheme.  Furthermore, it is unlikely that Defendants possess the funds to satisfy any

potential judgment and Pennsylvania law also permits the prejudgment restraint sought by

Plaintiffs.  Due to the deceptive nature of Defendants' business, and Defendants' deliberate

violations of both federal trademark and patent laws, Plaintiffs respectfully request this Court

grant additional *ex parte* relief restraining the transfer of all monies held or received by Context

Logic, PayPal, AliPay or other financial institutions for the benefit of any one or more of the

Defendants.  *See, e.g., Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U. S. Dist.

LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) (citing *Wishnatzki &N athel, Inc. v. H.P. Island-*

*Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. 2000)

("[W]here plaintiffs seek both equitable and legal relief in relation to specific funds, a court

retains it equitable power to freeze assets."); *Int'l Star Class Yacht Racing Ass'n v. Tommy*

*Hilfiger USA., Inc.,* 146 F.3d 66, 71-72 (2d Cir. 1998) ("A district court faced with a Lanham

Act violation possesses some degree of discretion in shaping [the] relief according to the

principles of equity and the individual circumstances of each case" within the parameters of

allowing an accounting for profits); *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532,

1537 (2d Cir. 1992); *Tiffany (NJ) LLC* v. *Forbse,* No. 11-cv-4976-NRB, 2012 U.S. Dist. LEXIS

72148, at *34 (S.D.N.Y. May 23, 2012); *Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492-

KPF, 2014 U.S. Dist.. LEXIS 190098 (S.D.N.Y. May 29, 2014); and *Hoxworth v. Blinder,*

*Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (district court has power to issue an

injunction in order to protect a future damages remedy; the unsatisfiability of a money judgment

can constitute irreparable injury).

This Court has broad authority to grant such an order.  The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed.  *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999).  The Third Circuit has additionally ruled that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in order to protect a future damages remedy.  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (1990).  Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to restrain assets *pendent elite*.  *See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all of the Circuit Courts have held that Rule 65 is available to freeze assets *pendent lite* under some set of circumstances").

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).  In the years since *Marnatech*, many federal courts have granted the temporary restraint of an infringer's assets in cases similar to this one, including recently in actions against operators of 'rogue' websites selling infringing products to ensure the availability of an equitable accounting. *See, e.g., The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil Action No. 10-Civ-1630 (AKH) (S.D.N.Y. March 2, 2010); *National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. January 19, 2011); *Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010).

Plaintiffs may obtain an order restraining Defendants' Assets by demonstrating a "likelihood of dissipation of the claimed assets, or other inability to recover money damages, if relief is not granted." *DatatechEnters. LLC v. FFMagnatLtd.,* No. 12-cv-04500-CRB, 2012 U.S. Dist. LEXIS 131711, at *12 (N.D. Cal. Sept. 14, 2012) (citing *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009)).  District courts have the "authority to freeze those assets which could [be] used to satisfy an equitable award of profits."  *North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05-cv-9083-RMB, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted).  In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11.  Yet, the onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits do not stem from such illegal activity.  *Id.*

Under 15 U.S.C. § 1117(a), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or infringement and/or plaintiff's damages. The Supreme Court specifically held that a trademark "infringer is required *in equity to account* for and yield up his gains to the true owner," and "profits are then allowed as an *equitable* measure of compensation." *Gucci Am. v. Bank of China,* 768 F.3d 122, 131-132 (2d Cir. 2014) (quoting *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259 (1916) (emphasis added) and *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940)). Specifically, with respect to claims involving infringement arising under the Lanham Act, it has been established that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *See, e.g., Warner Bros. Entm't Inc. v. Doe,* 2014 U.S. Dist.. LEXIS 190098 (S.D.N.Y. May 29, 2014); *Microsoft Corp. v. Jun Yan,* 2010 U.S. Dist.. LEXIS

- 50 -

14934 (Dist. Conn. Feb. 18, 2010); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982 (11th Cir. 1995) (finding that the district court had the authority to freeze assets that could have been used to satisfy an equitable award of profits pursuant to 15 U.S.C. § 1117) and *Reebok Int'l, Ltd.,* 970 F.2d at 560 ("Because the Lanham Act authorizes the district court to grant Reebok an accounting of Betech's profits as a form of final equitable relief, the district court had the inherent power to freeze Betech's assets in order to ensure the availability of that final relief."). Furthermore, in the Third Circuit, the inability of a defendant to satisfy a judgment for legal damages justifies a pre-judgment restraint of existing assets. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (concluding the unsatisfiability of a money judgment can constitute irreparable injury).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who appear to be unknown individuals, that are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to U.S. consumers solely via the Internet, and accepting payment for such Infringing Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiffs' in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See Ference Dec.,* ¶ 6.

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restrain is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. *See F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon

- 51 -