finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets); *Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) (agreeing that, "Plaintiff's concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief and that there is a strong likelihood that advance notice of the motion would cause Defendants to drain Financial Institution accounts, thereby depriving Plaintiff of the remedy it seeks") and *SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) (granting plaintiff's request for an *ex parte* asset freeze based on plaintiff's assertion that Defendants were foreign entities, and therefore could easily move assets out of bank or brokerage accounts at a moment's notice).[12]

In this case, Defendants' blatant violations of federal trademark and copyright laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets.  Moreover, as Defendants' business are conducted anonymously over the Internet, Plaintiffs have additional cause for *ex parte*  relief, as Defendants may easily secret or transfer their assets with the Court's or Plaintiffs' knowledge.

## 2.   Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains and enjoins the Third Party Service Provider(s), as well as any and all as yet undiscovered online marketplace platforms, from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Infringing Products by Defendants on their Merchant Storefronts through their User Accounts will result in immediate and irreparable injury to Plaintiff, as described above.  *See Gucci Am., Inc. v. Weixing Li,* 768

---

[12]   See also *supra fn. 3*

F.3d 122, 126 (2d Cir. 2014) (Hon. Richard J. Sullivan entered a temporary restraining order, which, in part, enjoined the sale of counterfeit goods on the Internet) and *AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist.. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015) (Hon. Katherine B. Forrest entered a temporary restraining order which was subsequently converted into a preliminary injunction, which, in part, disabled the defendants' websites, which were their means of distributing, offering for sale and selling counterfeit products.).[13]

One reason why courts have ordered this relief is the ease with which a Merchant Storefront may be set up.  For example, a defendant who knowingly sells Infringing Products will likely try and set up another Merchant Storefront to keep selling when the current Merchant Storefront stops working.  *See Ference Dec.*, ¶ 6.  This brings into play a balancing of the hardship to Defendants against the hardship to Plaintiff if the relief is not granted.  In the present case, the hardship to Plaintiff outweighs any hardship to Defendants.  The proposed Order does not block any of the enjoined Defendants from setting up another Merchant Storefront to sell non-Infringing Products.  The proposed Order merely blocks any goodwill associated with the Merchant Storefront which sold Infringing Products; the Defendants are free to set up a new Merchant Storefront that does not sell Infringing Products.

Blocking the good will associated with the Merchant Storefront helps prevent the situation with the defendants where the Infringing Product listing has been taken down but if someone (e.g., a repeat buyer) contacts a Defendant at the Merchant Storefront using the messaging system provided by the online marketplace asking for the Infringing Product it will be made available by a Defendant.  *Id.*  The only way to preclude this type of harm to Plaintiff is to freeze the Defendants' Merchant Storefronts.

---

[13] See also *supra fn. 3*

A freezing of Defendants' Merchant Storefronts also acts to provide immediate notice of the present action to Defendants.  Indeed, a number of cases have required that the domain names on which a defendant's storefront operates be turned over to the plaintiff and pointed to a webpage providing notice of the lawsuit against the defendant.  *Iron Maiden Holdings Ltd. v. The P'ships & Unicorporated Assns. Identified on Schedule "A"*, No. 18-CV-522 (N.D. Ill. Feb. 1, 2018) ("Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant document on a website to which the Defendant Domain Names which are transferred to Plaintiff's control will redirect"). Thus, the freezing of Defendants' Merchant Storefronts is also a manner of ensuring that Defendants receive notice of the present action.

### 3. Transferring the Defendant's Domain Names to Plaintiffs' Control is Appropriate

As part of the TRO, Plaintiff also seeks temporary transfer of the Defendant Domain Names to Plaintiff's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, Plaintiffs respectfully request that, as part of the TRO, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Plaintiffs.

### D.    PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiffs respectfully request that the Court order expedited discovery from Defendants, Financial Institutions and the Third Party Service Provider regarding the scope and extent of Defendants' infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Provider, including, without limitation any and all websites, any and all accounts with online marketplace platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them ("User Accounts"), and any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Provider and the Financial Institutions.

District courts have broad power to require early document production and to permit expedited discovery.  *See* Fed. R. Civ. P. 30(b), 34(b).  Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury which will result without expedited discovery

looms greater than the injury that defendant will suffer if expedited discovery is granted. *See, e.g., Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, 1994 U.S. Dist.. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. *See* Fed. R. Civ. P. 26(d)(1). While in the past, Courts have often applied a four-factor test to determine when expedited discovery may be granted,[14] they now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000)).[15] Regardless of which test is applied, Plaintiffs have established that they are entitled to the expedited discovery requested. Plaintiff has demonstrated both irreparable injury and its probability of success on the merits above, and taking into account the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies who have both the incentive and the capability to hide or destroy relevant business records and other discoverable information and documentation upon hearing of this action, Plaintiff respectfully submits that there is good cause for this Court to grant Plaintiff the expedited discovery requested herein because it will prevent further injury to Plaintiff and assist

---

[14]   ". . . the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.,* 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[15]   See, *e.g., Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016); *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015); *Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015); *Admarketplace, Inc. v. Tee Support, Inc.,* No., 2013 U.S. Dist. LEXIS 129749, at *3-4 (S.D.N.Y. Sept. 11, 2013); *Dig. Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012); and *Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (agreeing with the *Ayyash* Court that the more flexible approach is the better approach).

Plaintiff in pursuing its claims against Defendants and in recovering the damages to which it is entitled. *See Ayyash,* 233 F.R.D., at 327.

Despite the likelihood of success of Plaintiffs' claims and the injury it has and continues to endure, if this Court were to deny expedited discovery, Plaintiffs may lose the opportunity to effectively pursue their claims against Defendants because there are several aspects of Defendants' infringing activities that Plaintiffs are not yet able to confirm, including: 1) the true identities of Defendants, 2) the full scope of Defendants' infringing activities, 3) the source or location of Defendants' inventory of Infringing Products and/or 4) where the proceeds from Defendants' infringing activities have gone. *See Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635- LGS, 2013 U.S. Dist.. LEXIS 129749, at *5 (S.D.N.Y. Sep. 11, 2013) (finding that a plaintiff "who has a potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery"). Therefore, only through an order from the Court allowing expedited discovery will Plaintiff be able to fully ascertain the extent of Defendants' infringing activities.

Plaintiffs respectfully requests an *ex parte* Order allowing expedited discovery in order to permit them to discover certain identifying information, including information concerning all of Defendants' Financial Accounts, Assets and User Accounts and their sales of Infringing Products.  The discovery requested on an expedited basis in Plaintiffs' [Proposed] Order has been limited to include only that which is essential to prevent further irreparable harm. Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery. Moreover, Financial Institutions and the Third Party Service Provider have complied with

similar requests for expedited discovery in like actions before this Court.  *See supra* note 6.

Plaintiffs respectfully submit that their request should be granted.

### E.    PLAINTIFFS' REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

Generally, a bond is a condition of preliminary injunctive relief.  Fed. R. Civ. P.  65(c) requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."  Thus, the injunction bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

The injunction bond also serves other functions. "It is generally settled that, with rare exceptions, a [party] wrongfully enjoined has recourse only against the bond." *Id.; see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990) (Applicants "derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully issued preliminary injunctions can recover only against the bond itself."). Thus, the bond generally limits the liability of the applicant and informs the applicant of "the price [it] can expect to pay if the injunction was wrongfully issued." *Instant Air Freight,* 882 F.2d at 805; *see also id.* at 805 n. 9 ("The bond can thus be seen as a contract in which the court and [the applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.") (quotations omitted).

Plaintiffs respectfully submit that in connection with the Court's order pursuant to its inherent equitable power requiring that the Defendants' Assets and Defendants Financial Accounts be frozen by the Financial Institutions, Plaintiffs' provision of security in the amount

of $5,000 ("Security Bond") is more than sufficient.  This Security Bond is equal to an amount that similar plaintiffs have posted in related cases before Courts. *See, e.g. Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Doggie Dental Inc. v. Max_Buy,* No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond); *Airigan Solutions, LLC v. Artifacts_Selling, Civil Action No. 18-cv-1462-NBF (*Temporary Restraining Order entered on November 2, 2018, $5,000.00 bond required*), and Airigan Solutions, LLC v. Babymove, Civil Action No. 19-cv-166-NBF (*Temporary Restraining Order entered on February 14, 2019, $5,000.00 bond required*), Rapid Slicer, LLC v. Buyspry, Civil Action No. 19-cv-249-MJH (*Temporary Restraining Order entered on March 11, 2019, $5,000 bond required*), Showtech Merchandising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. Pa. Sept. 6, 2012); *See Wow-Virtual Reality, Inc. v. 740452063 et al.*, No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25, 2018); *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No. 17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017); *Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017). Moreover, one New York Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See, e.g., Ontel Products Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017).[16]

---

[16]    The Second Circuit has held that "[d]istrict courts ... are vested with wide discretion in determining the amount

Plaintiffs believe that Defendants would be unable to show a strong likelihood of harm, and even if Defendants were to experience a likelihood of harm, such harm is outweighed by the harm to Plaintiff, as detailed above.  For these reasons, Plaintiffs respectfully request that the Court, in accordance with Fed. R. Civ. P. 65(a), enter the Security Bond in the amount of $5,000.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that their Application be granted *ex parte* and that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Providers and the Financial Institutions, in the form of the [Proposed] Order accompanying this Application, and such other relief to which Plaintiffs may show they are legally entitled.

Respectfully submitted,

Dated: September 15, 2020

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

---

of the bond that the moving party must post." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Typically, "the amount of the bond posted is the limit that a wrongfully restrained party may recover," but the Court must also balance this against a likelihood of harm the non-movant would be able to show. *Interlink Int'l Fin. Servs,, Inc. v. Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001); *see also Doctor's Assocs.*, 85 F.3d at 985.

Attorneys for Plaintiffs