Andrew T. Oliver (Cal Bar No. 226098) (emergency appearance)
Michael C. Ting (Cal Bar No. 247610) (emergency appearance)
AMIN, TUROCY & WATSON LLP
160 West Santa Clara Street, Suite 975
San Jose, CA  95113
Telephone: 650-393-0634
Email:  aoliver@ATWiplaw.com
          mting@ATWiplaw.com

Attorneys for Defendant
Neomagic Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORGE DESIGN GROUP, LLC, *et al.*,<br><br>              Plaintiffs,<br><br>       v.<br><br>SYARME, *et al.*,<br><br>              Defendants. | Civil Action No. 2:20-CV-01384-WSS<br><br>**DEFENDANT NEOMAGIC CORPORATION'S MEMORANDUM IN SUPPORT OF OMNIBUS MOTION IN RESPONSE TO ORDER TO SHOW CAUSE**<br><br><br>**DEMAND FOR JURY TRIAL** |

# Contents

I.      COUNSEL EMERGENCY APPEARANCE ................................................................ 3

II.     BRIEF STATEMENT OF RELIEF SOUGHT ........................................................ 4

III.    INTRODUCTION ............................................................................................... 4

IV.     THE COURT SHOULD DISSOLVE THE TRO AND DENY FURTHER
        INJUNCTIVE RELIEF ........................................................................................ 6

        A.      Plaintiffs Did Not Show and Cannot Show Likelihood of Success on
                the Merits ................................................................................................ 6

                1.      Inoperative Complaint ................................................................ 6

                2.      Common Law Trademark Infringement ..................................... 7

                3.      Patent Infringement .................................................................... 8

                4.      Unfair Competition Claims ...................................................... 10

        B.      Plaintiff Did Not Show Irreparable Harm ........................................... 14

        C.      The Balance of the Equities Disfavors an Injunction ......................... 14

        D.      Public Interest Concerns Outweigh Plaintiffs' Interests .................... 14

        E.      The Requested Relief is Overbroad ..................................................... 15

V.      THE COURT SHOULD DISSOLVE THE SERVICE ORDER ................................. 15

VI.     THE COURT SHOULD DISSOLVE THE DISCOVERY ORDER ........................... 16

VII.    THE CASE SHOULD BE UNSEALED ................................................................ 17

VIII.   IF THE TRO IS NOT DISSOLVED OR THE PRELIMINARY
        INJUNCTION ISSUES, THE BOND SHOULD BE SIGNIFICANTLY
        INCREASED ...................................................................................................... 18

IX.     THE COURT SHOULD ORDER PLAINTIFFS AND THEIR
        ATTORNEYS TO CEASE FROM FILING SIMILAR ACTIONS ............................ 19

X.      CONCLUSION .................................................................................................. 21

XI.     EVIDENTIARY OBJECTION .............................................................................. 21

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

This motion is made responsive to the Court's order to show cause (ECF No. 18 p. 11) in conjunction with a motion to dismiss pursuant to Rule 12 that has already been filed.

## I.        COUNSEL EMERGENCY APPEARANCE

Attorneys Andrew T. Oliver and Michael C. Ting of Amin, Turocy & Watson LLP make this emergency appearance on behalf of Defendant Neomagic Corporation ("Neomagic"), who does business using the website at www.mercadomagic.com.  Neomagic has been listed in the tables in the complaint, temporary restraining order, and other documents as Defendant No. 25, Defendant/Store Name "mercadomagico", and Seller ID/Subject Domain Name "mercadomagico.com."

Neither Mr. Oliver nor Mr. Ting is admitted to practice in this district nor admitted *pro hac vice* for this case, although Mr. Oliver is admitted to practice before the United States Supreme Court and both are admitted to the bar of the State of California, the bars of the United States Court of Appeals for the Ninth and Federal Circuits, and the bars of multiple United States District Courts.  Messrs. Oliver and Ting are in good standing with each of these courts and the state bar.  Messrs. Oliver and Ting and their client Neomagic respectfully thank the Court for this opportunity to appear on an emergency basis to oppose the motion for preliminary injunctions, including seeking the dissolution of multiple related orders and dismissal of the complaint among other relief.

The basis for appearing on an emergency basis is that Neomagic did not receive any meaningful notice of the pending complaint, motions, orders, discovery, etc. until September 29, 2020, through an email identifying a website where various documents related to this lawsuit were available for download. (Neomagic did receive a notice from a third party on September 23, indicating that a financial account had been frozen due to Court order, but the notice did not provide any reasonable manner of understanding why the account was frozen.)  On September 29, Neomagic inquired of Mr. Oliver regarding legal representation.  On September 30, Mr. Oliver noted during review of the documents that the Court set a deadline to respond of October 2 and a hearing on October 5.  Not having time to interview or retain local counsel in this district (and not yet having been retained himself), on the same day, September 30, Mr. Oliver contacted chambers under the procedures set forth in section I B of Judge Stickman's Practices and Procedures, and left a voicemail.   On October 1, chambers contacted

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

Mr. Oliver by telephone and confirmed that in view of the extremely limited time to respond to the order to show cause, it would be acceptable to appear on an emergency basis without local counsel and without being admitted pro hac vice.  Chambers also confirmed that because counsel does not have e-filing credentials, it would be acceptable to email the filings to chambers at the email addresses provided for emergency/time sensitive submissions in Judge Stickman's Practices and Procedures.

Neomagic respectfully requests that the Court enter the documents into the electronic filing system for this case so that they appear on the case docket.

## II.     BRIEF STATEMENT OF RELIEF SOUGHT

Defendant Neomagic Corporation (doing business as www.mercadomagic.com) ("Defendant" or "Neomagic") hereby responds to the Court's Order to Show Cause (ECF No. 18 p. 11) ("OSC") why preliminary injunction should not issue through this opposition styled as an omnibus motion to dissolve temporary restraining order ("TRO"), motion to dissolve order authorizing alternative service of process, motion to dissolve order authorizing expedited discovery, and motion to require Plaintiffs to serve all previously-served entities with an order effecting same and report same to the Court, and for various other relief specified in the notice and proposed order submitted herewith.

While Neomagic seeks to dissolve the motion authorizing alternative service, and because that motion is not yet dissolved, Neomagic also files concurrently herewith a motion pursuant to Rule 12 that further supports dissolving the TRO and refusing a preliminary injunction based, in part, on lack of venue, lack of personal jurisdiction, failure to state a claim on which relief may be granted, insufficient service of process, and other grounds under Rule 12.

## III.     INTRODUCTION

Plaintiffs filed numerous, onerous, misleading, often incorrect, and false papers with this court in an attempt to impose undue burden on Defendants and deny Defendants multiple due process rights by obtaining orders from this Court in a sealed proceeding against Defendants that would have been easy to contact based upon minimal prefiling investigation.  It is unclear whether Plaintiffs intentionally

misrepresented the facts, but it should be clear to all involved that Plaintiffs' filings violated Rule 11 and that Plaintiffs did not make even a minimal prefiling effort to investigate before dumping over 500 pages of filings on this Court.

Plaintiffs are now holding Neomagic (and presumably other defendants) hostage, with an order that threatens to shut down Neomagic's entire website where hundreds or thousands of products unrelated to this lawsuit are listed for sale and sold by numerous parties. Plaintiffs have seized Neomagic's financial account and are holding the funds hostage, causing business damages and requiring Neomagic to incur significant attorneys' fees to fight overbroad injunctive relief, while demanding an exorbitant settlement payment for what Neomagic believes is a single unit of sales of a product no longer listed on the website. In fact, it appears that the lone sale of this product was a sale to Plaintiffs' counsel. With only a single sale and a product no longer listed for sale, it is hard to fathom how Plaintiffs obtained a sweeping temporary restraining order.

And in obtaining the order, Plaintiffs did not establish even the bare minimums that would be necessary for entry of a temporary restraining order (let alone a preliminary injunction) related to the identified causes of action for patent infringement, common law trademark infringement, and unfair competition. To obtain such relief, a high burden must be met with respect to establishing the four factor test for relief, i.e., (1) likelihood of success on the merits, (2) irreparable harm, (3) balance of the equities, and (4) public interest concerns. As will be shown below, Plaintiff did not come close. And this is further confirmed in the concurrently filed motion to dismiss pursuant to multiple sections of Rule 12(b) that demonstrates that this case is not even appropriately in this district. Plaintiff is in Washington. Defendant is in California. And the only basis for filing in this district is the presence of Plaintiffs' counsel in Pennsylvania.

If Neomagic's pleading seems indignant, it is because Neomagic is was unfairly abused by this procedure, resulting in seizure of a significant financial accounts without basis and a looming threat of a shutdown of Neomagic's marketplace website on which the allegedly infringing product is no longer offered and on which hundreds or thousands of other products are offered and on which many sellers earn revenue. Neomagic was served at the last minute and needed to rush to hire counsel and ask

5

counsel to work all night to prepare papers by the Court's deadline.  The abuse of the legal system perpetrated by Plaintiffs here should not be condoned by this Court.

## IV.   THE COURT SHOULD DISSOLVE THE TRO AND DENY FURTHER INJUNCTIVE RELIEF

Plaintiffs cannot show the four factors necessary to obtain a preliminary injunction against Neomagic (or many other defendants) and the temporary restraining order should not have issued.  The Third Circuit considers a four-factor test for issuance of a preliminary injunction, which Plaintiffs cannot meet.  "The four-factor test is familiar: a preliminary injunction may issue if (1) the plaintiff shows that it is likely to succeed on the merits; (2) the plaintiff establishes that it is likely to suffer irreparable harm absent issuance of the injunction; (3) the balance of equities does not disfavor granting an injunction; and (4) public interest concerns do not outweigh the interests advanced by issuance of the injunction."  *Fres-co Sys. USA v. Hawkins*, 690 F. App'x 72, 75 (3d Cir. 2017).  Each of these factors is analyzed below.

### A.   Plaintiffs Did Not Show and Cannot Show Likelihood of Success on the Merits

Plaintiffs allege three causes of action and make vague allegations regarding copyright and trade dress rights.  As set forth, not only did Plaintiffs fail to show likelihood of success in their papers, the facts demonstrate that it is highly unlikely that Plaintiffs will be able to ultimately show likelihood of success.

#### 1.   Inoperative Complaint

Plaintiffs cannot show that they are likely to succeed on the merits of any of their claims for relief, as set forth in Neomagic's motion to dismiss under Rule 12.  As established in that motion and incorporated herein, venue is improper in this district and personal jurisdiction is also lacking in this district, meaning that the Complaint should be dismissed with prejudice, because no amendment to the pleading can cure the absence of venue or personal jurisdiction.  Regardless of the merits (which actually fall in Neomagic's favor), this district should not enter any injunctive relief against Neomagic.

## 2.     **Common Law Trademark Infringement**

Plaintiffs cannot show likelihood of success on their trademark infringement allegations that are directed to the phase "Ultimate Ground Anchor," which they allege serves as a common law and unregistered trademark.  Complaint ¶2; ECF No. 10 p. 39.  Plaintiffs cannot prevail on the merits against Neomagic with respect to this alleged trademark.  Why?  Neomagic has not used the alleged trademark.  Examination of Plaintiffs' evidence against Neomagic will demonstrate that Neomagic has not used "Ultimate Ground Anchor."  *See* ECF No. 12 at Composite Exh. 1 at pp. 256-259 (pages following slipsheet labeled "Seller Display Name mercadomagico").  The text on this product listing states only, "Plastic Spiral Screw Shape Tent Nail Hiking Camping Beach Tent Stakes Peg Nail w/ Clear Tube for Outdoor Travel" and "$4.99."  The alleged trademark is absent.  Not only is the trademark absent, the listing doesn't use any of the individual terms "ultimate", "ground", or "anchor."  There is no chance that Plaintiffs will prevail on the merits of trademark infringement against Neomagic.

(This is true for many other defendants as well. So before the Court enters any injunction or default judgment against those defendants, it should carefully consider the allegations and reject attempts by the plaintiff to make unfounded findings of trademark infringement. For example, conducting a word search of "ultimate" in the composite exhibit at Ray Decl. Ex. 1 shows large swaths of defendants who apparently do not use the term "Ultimate Ground Anchor." The term "ultimate" is missing from the product listings in pages 11 – 55, 120-138, 144-168, 195-235, 243-292, 312-373, and 390-427. So approximately 2/3 of the alleged evidence of trademark infringement that Plaintiffs filed actually shows absence of use of "Ultimate Ground Anchor.")

In addition to this and with respect to all defendants, where a trademark is not federally registered (such as here) secondary meaning is required: "If the mark has not been federally registered or, if registered, has not achieved incontestability, then 'validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.' Secondary meaning must be established by the plaintiff at the time and place that the defendant began use of the mark." *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 124 F. Supp. 3d 489, 520 (W.D. Pa. 2015) (internal citation omitted).

"The more descriptive the term, the greater the evidentiary burden to establish secondary meaning." *Id.* Here, the term "ultimate ground anchor" is either generic or highly descriptive. "Ground anchor" is a generic term for these products. So the only question is whether "ultimate" is generic for positive properties or finality, or whether ultimate transforms the phrase into a descriptive phrase (which would still remain unprotectable absent secondary meaning).

So, even for those defendants who use the mark, Plaintiffs are faced with a high evidentiary burden of establishing secondary meaning. Yet, Plaintiffs' papers do not establish secondary meaning.

### 3.      Patent Infringement

Similarly, Plaintiffs must establish the likelihood of success on the merits as to patent infringement, but cannot. "[T]he estimated likelihood of success in establishing infringement is governed by Federal Circuit law." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012). "In a patent infringement case, likelihood of success on the merits requires a showing that, in light of the presumptions and burdens that will inhere at trial on the merits, it will likely prove three components: title to the patent, infringement and validity. First, the patentee must show that it has title to the patent-in-suit." *Sunrise Med. Hhg v. Airsep Corp.*, 95 F. Supp. 2d 348, 435 (W.D. Pa. 2000) (emphasis added). Plaintiffs do not show either of the first two items: title and infringement.

First, Plaintiffs attach a record of an assignment recording to the complaint, which is insufficient to show title. As a judge of this Court has stated, "[T]he mere fact that Sunrise recorded what purports to be an assignment document does not mean, without more, that the assignment was valid or transferred title to the patent." *Sunrise Med. Hhg v. Airsep Corp.*, 95 F. Supp. 2d 348, 436 (W.D. Pa. 2000). The proof of valid assignment is absent. Plaintiff only showed a record of where the patent office recorded the purported assignment. So Plaintiff has not established likelihood of success.

Second, the Plaintiffs cannot establish likelihood of infringement. *Sunrise*, 95 F. Supp. 2d at 435. If even one element of a claim is missing from the accused product, the patent cannot be infringed. Here, the patent has two independent claims and each of them include a claim limitation requiring "a plurality of threads" on the shaft.  Complaint Exh. 3 (asserted patent) at claims 1 and 5.  Thus, every claim (both the two independent and three dependent claims) in the patent requires "a plurality of threads."  The term "plurality" has established meaning in the patent law of "two or more."  Thus, to infringe, an accused product must have two or more threads.  An ordinary definition of a "thread" on a screw is a ridge wrapped around a cylinder in the form of a helix.  *See, e.g.,* https://en.wikipedia.org/wiki/Screw_thread.  Here, the accused product of Neomagic only has a single thread, as demonstrated at Ray Decl. Exh. 1 at pp. 256-259:



As can be seen in the image above, the single thread wraps around the length of the shaft.  In contrast, some screws do have a "plurality" of threads, such as the multi-threaded screws pictured below, which are often called "multi-start" screws as opposed to "single-start" screws of the type shown above:




Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

Infringement of the patent requires a "plurality of threads" and hence requires a multi-start screw.  But the accused product is a single-start screw.  Thus, there is no likelihood that Plaintiffs will establish infringement.

Plaintiffs have not established likelihood of success on two points, most importantly: infringement and secondarily: title.

(This will be true for most or all other defendants as well. In searching the Ray Declaration, counsel for Neomagic hasn't seen any accused products that appear to have a plurality of threads.  So before the Court enters any injunction against those defendants, it should carefully consider the allegations and reject attempts by the plaintiff to make unfounded findings of patent infringement.)

### 4.      Unfair Competition Claims

Plaintiffs' don't show a likelihood of success on the unfair competition claims either.  Plaintiffs' arguments regarding its unfair competition claims rely on an allegation that Neomagic uses "Plaintiffs' Works and/or Plaintiffs' Mark" and that this has created actual confusion.  ECF No. 10 pp. 34-35.  Plaintiffs can't show this.

As to the second point, the use of Plaintiffs' alleged trademark, as shown above, Neomagic doesn't even use any of the individual terms in "Ultimate Ground Anchor" and certainly doesn't use the entire phrase.

Thus, the question turns to "Plaintiffs' Works" and whether they form the basis for an unfair competition claim.  Plaintiff defines "Plaintiffs' Works" as Plaintiffs' photographs.  If Plaintiffs had registered a copyright in the photographs, they could have protected the photographs.  But they did not.  (Or, at least, Plaintiffs have not alleged copyright infringement in this case.)  So Plaintiffs are stuck with attempting to prove that Defendants used Plaintiffs photos, that the photos have secondary meaning that associates them with Plaintiffs, and that consumers are confused by use of the photos because they believe that they are purchasing from Plaintiffs.  Alternatively, it may be competition if Defendants are deceptively using a photo of a high quality product to sell a low quality product, but there is no evidence of any such switcheroo.  Rather, Plaintiffs chose not to submit evidence attempting

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

to impugn any Defendant's product, presumably because such evidence does not exist.  At a minimum, there is no such evidence with respect to Neomagic.

Plaintiffs argue that "defendant may not use a photograph of plaintiff's product to advertise and sell its own less expensive and inferior product."  ECF No. 10 p. 37.  Neomagic believes that this law is outdated.  But even if current, there is no evidence suggesting that Neomagic's single unit sale was inferior.  And there is no confusion evidence, because the sole sale was to Plaintiffs' counsel who was not confused.

Turning to the photos at issue with respect to Neomagic, a small selection of photos is identified in the Ray Declaration Exh. 1 at pages 256-259, as displayed below:



Only a handful of these photographs arguably show any product.  The photos showing products are marked in green and red below.  The green circles indicate photos that Plaintiffs indicate are their own, as set forth in Exhibits 1 and 2 to the Complaint.  The red X marks indicate photos or images that plaintiffs do not claim as their own.  The pink squares indicate photos that do not show the products:

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As can be seen, all but one of the photos that shows more than the head of the screw is not in the set claimed by Plaintiffs. The single photo of Plaintiffs' that shows more than the head (bottom row middle) is reproduced so poorly that one cannot argue that it shows any product. (It is reproduced slightly larger in Plaintiffs' evidence in Ray Exh. 1 p. 257, but still does not show more than an orange shaft or indicate anything about quality or source.) Plaintiffs apparently base their confusion argument on this. But it is hard to understand how that photograph could cause confusion given the large photo above it that Plaintiffs have not claimed that fairly represents the product. (Keep in mind that absent trademark, trade dress, confusion, or patent rights, photos are only protectable under copyright law.)

And unlike Plaintiffs' photos prominent in the Complaint exhibits, the clear tube in Neomagic's photos does not say "Orange Screw." (Compare photo above to Complaint Exhibits 1 and 2.) Each of Plaintiffs' photos of the clear tube bears the "Orange Screw" logo. Taken as a whole, there is little to no likelihood that the above photos would establish unfair competition even if such a claim was permitted by law.

Further, Plaintiffs' argument relies on a showing that using Plaintiffs' photographs "to advertise and sell its own less expensive and inferior product" is unfair competition. However, if Neomagic

shipped what was depicted, then there is no unfair competition. *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 304 (2d Cir. 1981) ("Unlike the dressmaker in L'Aiglon, defendants admittedly shipped exactly what they depicted in their ads.").  To establish likelihood of success, Plaintiffs would have needed to show that the product was inferior.  Plaintiffs did not submit any evidence regarding the quality or even the appearance of the product attributed to Neomagic.  And Neomagic does not have any such products to submit, because Neomagic sold only a single unit and no longer lists the product nor uses any of the above photographs.  Plaintiffs did not establish that Neomagic shipped anything other than what was depicted.  Thus, there is no likelihood of Plaintiffs' succeeding.

Regardless of these facts in Neomagic's favor, however, the law in 2020 is not what Plaintiffs' case law from 1954, 1967, 1976, and 1978 states.  The Supreme Court has weighed in on section 43(a) of the Lanham Act:

> "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."  The rights of a patentee or copyright holder are part of a "carefully crafted bargain," under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. Thus, in construing the Lanham Act, we have been "careful to caution against misuse or over-extension" of trademark and related protections into areas traditionally occupied by patent or copyright.  "The Lanham Act," we have said, "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity."  Federal trademark law "has no necessary relation to invention or discovery," but rather, by preventing competitors from copying "a source-identifying mark," "reduces the customer's costs of shopping and making purchasing decisions," and "helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product,…"

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34, 123 S. Ct. 2041, 2048 (2003) (internal citations omitted).  Thus, to the extent that Plaintiffs do not claim copyright rights in the photos, they are "subject to copying."  *Id.*  And to the extent that Plaintiffs do claim copyright rights, they must have a registration before asserting such rights.  *See Fourth Estate Pub. Ben. Corp. v. Wall Street.com,* LLC, 139 S. Ct. 881, 890-892 (2019) (unanimously ruling that copyright owners must wait for registration before pursuing claims in court).

Finally, Plaintiffs' state law unfair competition claims are preempted by the copyright act and the Lanham Act, such that there is no likelihood of prevailing on them.  *See Fun-Dumental Too, Ltd. v. Universal Music Grp., Inc.*, No. 97-1595, 1997 U.S. Dist. LEXIS 9597, *17 (E.D. Pa. July 8, 1997) *citing*

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

*Waldman Publ'g Corp. v. Landoll, Inc.*, 848 F.Supp. 498, 500-501 (S.D.N.Y. 1994) ("Where a plaintiff claims a defendant has copied plaintiffs' product and sold it under defendant's name, that claim of reverse passing off is preempted by the Copyright Act."). Thus, Plaintiffs have no likelihood of prevailing on that claim.

**B.    Plaintiff Did Not Show Irreparable Harm**

There is no irreparable harm associated with the non-use of a trademark.

There is no irreparable harm for a single unit sale of an allegedly patented device. Patent law provided for lost profits or a reasonable royalty. The price of the product is listed in Plaintiffs' evidence, so any damage can be computed.

There is no irreparable harm for unfair competition where a single unit of a $4.99 item was sold and the listing was ceased before the lawsuit.

Plaintiff cannot establish this factor.

**C.    The Balance of the Equities Disfavors an Injunction**

In the absence of protectable rights, this country favors free trade and free markets. The ability to sell and profit from free enterprise outweighs Plaintiffs' desire to stifle competition through overassertion of its limited intellectual property and underhanded use of the Courts to illicitly seize assets and hold them hostage for exorbitant settlement payments.

This factor weighs in favor of Defendants.

**D.    Public Interest Concerns Outweigh Plaintiffs' Interests**

Plaintiffs arguments are based on "palming off" by Defendants and fail to show public interests. Neomagic doesn't use the alleged mark. And the alleged "palming off" claim is unlikely to succeed as shown above. There is an exceedingly small likelihood of confusion with respect to Neomagic. Plaintiffs' allegation that Neomagic's products are substandard or infringing are without support, but are merely conclusory attorney argument.

On the other hand, many sellers use Neomagic's www.mercadomagico.com website to sell goods and earn money. Hundreds or thousands of products are listed there. The requested injunctive relief would seize the website and shut it down. The requested relief is exceedingly broad for purposes of stopping sales of a single product on a site that serves many users and sells hundreds or thousands of products.

The public interest favors no injunctive relief.

### E.        The Requested Relief is Overbroad

As to Neomagic, and likely as to all Defendants, the injunction sought is extremely overbroad. The injunction permits seizure and freezing of financial accounts, seizure and deactivation of entire websites and online accounts, and various other broad relief. Here, while Plaintiff is not entitled to any injunctive relief, if an injunction issues, it must be narrowly tailored to prevent the alleged harm. Thus, any injunction should be limited to: (a) ceasing to use "Ultimate Ground Anchor" as a trademark; (b) ceasing to use Plaintiffs photos to sell provably inferior products; and (c) ceasing activities related to multi-threaded ground anchors that meet the other patent criteria. No injunctions should be issued as to website seizures, property forfeitures, financial account seizures, etc.

## V.        THE COURT SHOULD DISSOLVE THE SERVICE ORDER

Neomagic respectfully requests that the order authorizing alternative service under Fed. R. Civ. P. 4(f)(3) be dissolved as to all defendants until Plaintiffs establish a need for such relief for each defendant. The alternative service order (ECF No. 17) authorizes service "upon each Defendant" under Fed. R. Civ. P. 4(f)(3). However Fed. R. Civ. P. 4(f) is related solely to "Serving an individual in a foreign country." Corporations, partnerships, or associations must be served under Fed. R. Civ. P. 4(h). And corporations such as Neomagic who are incorporated and reside in the United States cannot be served under Rule 4(f). Similarly, at least one other defendant, called "Urban & Hawk" in the complaint, appears to be a Delaware corporation. *See* https://urbanandhawk.com/pages/terms-of-service/ (listing the name "Urban Commerce LLC" and a Delaware address); *see also*

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (Delaware corporation search listing Urban Commerce LLC as a Delaware company).  And Plaintiffs' motion said that they were not moving for alternative service on Defendants 3, 13, and 22, but the order doesn't exclude them. Finally, Neomagic attempted to determine whether the other defendants are in the United States, but could not because the TRO presumably caused their service providers to remove their shops and/or websites.

The order permitting alternative service is contrary to law and fact and should be dissolved until Plaintiffs provide specific facts showing each defendant to be served internationally and why service under Fed. R. Civ. P. 4(f)(1) or 4(f)(2) is not appropriate.

## VI.    THE COURT SHOULD DISSOLVE THE DISCOVERY ORDER

Neomagic respectfully requests that the Court dissolve the order to provide expedited discovery.  As shown in the co-pending motion to dismiss under Rule 12, Plaintiffs' complaint and this action contain numerous defects that mandate dismissal as to Neomagic and likely as to other Defendants, not the least of which is that both venue and personal jurisdiction are lacking as to Neomagice.  *See* Neomagic's Motion to Dismiss.

Moreover, as set forth above and in the motion to dismiss, Plaintiffs not only fail to show a likelihood of success on the merits, but Plaintiffs actually fail to state a claim on which relief can be granted or a claim for which injunctive relief is appropriate.  Despite this, Plaintiffs argued in their 60+ page motion (ECF No. 10 p. 55) that such expedited discovery can be granted if multiple conditions are met, including irreparable injury, likelihood of success, connection between expedited discovery and irreparable harm, evidence that the injury to plaintiff without expediting is greater than the injury to defendant through expediting, etc.

Plaintiffs have not shown the presence of these requirements.  As detailed above, the likelihood of success is minimal both on the merits of the claims and procedurally (because, as shown in the co-filed Rule 12 motion to dismiss, both venue and personal jurisdiction are absent as to Neomagic).  With respect to irreparable injury, the single sale of an accused product to Plaintiffs' attorney is insufficient to

16

show such harm, especially where there is no use of the alleged trademark, no infringement of the patent, and no unfair competition.  Finally, forcing Defendants into expedited discovery without proper service, proper process, or any realistic notice, while also seizing websites, user accounts, and financial accounts, works substantial harm on Defendants with little benefit to Plaintiffs.  This case is not unlike an other case against domestic and foreign defendants, where discovery can proceed according to the ordinary schedule provided by the Federal Rules of Civil Procedure and the Court's scheduling conference.

Moreover, the discovery requested on an expedited basis is extensive and unwarrantedly burdensome, with 6 interrogatories (although interrogatory 6 seems to have at least 9 subparts, taking the total to at least 15 interrogatories), at least 17 requests for production (numbered incorrectly as 15) of which many are improperly broad in that they request "all documents",[1] and at least 40 requests for admissions, many of which require extensive investigations into topics such as patent infringement, unfair competition, trademark or copyright issues, sales, etc.  *See generally* ECF No. 20 (Plaintiffs' expedited interrogatories, requests for production, and requests for admissions).

The Court should dissolve the order authorizing expedited discovery.  ECF No. 18 pp. 12-14.

## VII.   THE CASE SHOULD BE UNSEALED

Neomagic also respectfully submits that this case should be unsealed.  Respectfully, this case should never have been sealed.  Sealing the case serves only to deny defendants their due process rights and rights to notice.  For example, as noted above, one of Neomagic's financial accounts was frozen on September 23, but Plaintiffs did not provide any reasonable notice of the lawsuit until September 29, in advance of a filing deadline on October 2.  This is abuse by Plaintiffs.

Moreover, Plaintiff's request for sealing relies on 15 U.S.C. §1116(d)(8) for authority, which is not applicable here.  Section 1116(d) relates to a "counterfeit mark."  The term "counterfeit mark" is either (i) a registered mark, or (ii) a mark under 36 U.S.C. §220506 (which relates to marks involving the

---

[1] For example request 8 is extremely broad, asking for all communications with any third party service provider.

17

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

Olympics). Plaintiffs have neither. Their complaint is directed to unregistered "common law" trademark rights. And the mark is completely unrelated to the Olympics.

Sealing merely provides Plaintiffs and their attorneys an opportunity to obtain overreaching, improper, and abusive relief while denying Defendants their due process rights to oppose such relief.

## VIII.   IF THE TRO IS NOT DISSOLVED OR THE PRELIMINARY INJUNCTION ISSUES, THE BOND SHOULD BE SIGNIFICANTLY INCREASED

While the Court should dissolve the TRO and deny entry of a preliminary injunction, if the Court maintains either type of injunctive relief, the bond should be significantly increased. Here, Plaintiffs have identified one allegedly infringing product out of tens, hundreds, or thousands of products sold by the various Defendants. For example, Neomagic's website offers at least 12 different categories of products with many products in each. *See* www.mercadomagico.com. As of the day this brief was written, the "Electronics" section alone offered over 32 pages of electronics products with 24 products listed on each page (24 X 32 = 768 products). Multiplied by the 12 categories, this is potentially thousands of products, yet Plaintiffs seek to seize websites and close entire businesses over a single product. (In fact, the allegedly infringing product seems to have made only a brief appearance on Neomagic's website and it appears that the only unit sold was sold to Plaintiffs' attorneys.) Posting a $5,000 bond for approximately 40 defendants amounts to approximately $125 per defendant while obtaining an injunction that shuts down entire businesses.

Moreover, based on the misrepresentations presented in their sealed ex parte papers, Plaintiffs have seized a financial account of Neomagic. While counsel does not know the exact amount of funds in that account, counsel has been informed that those funds are significant enough to Neomagic that the seizure is causing harm to Neomagic's business, which Neomagic will likely seek to recoup from Plaintiffs and Plaintiffs' counsel. Counsel is led to believe that the $5,000 bond is not enough to recover from that damage just to Neomagic, let alone recover if multiple defendants make claims against the bond. In short, the $125 per defendant isn't enough to even recover a single hour of attorney fees in attempting to unfreeze the frozen account.

Neomagic respectfully submits that Plaintiffs should post an initial bond of between $50,000 and $100,000 per defendant (i.e., a total of $2,000,000 to $4,000,000) if it seeks to shut down entire businesses based on the extremely flimsy claims brought in this action. Neomagic further, respectfully submits that Defendants should be permitted an opportunity to seek to increase the bond amount based upon a showing of financial data after being provided adequate notice and an opportunity to respond. The two to three days permitted in this instance are not adequate for counsel to even adequately counsel a client, let alone prepare a response related to a bond amount.

Any injunctive relief should be suspended until Plaintiffs post the bond of $2 million to $4 million, and Plaintiffs should be required to immediately notify all entities upon whom they served the TRO and obtained seizures, freezes, or other actions, so that those entities release all assets that were frozen or otherwise impaired. Until then, the entire $5,000 dollar bond posted by Plaintiffs should be recoverable by Neomagic under Fed. R. Civ. P. 65(c), because it was wrongfully restrained and because it was required to incur significant attorneys' fees in seeking relief from restraint and to dismiss a case that never should have been filed against NeoMagic in this district, to dissolve various orders that Plaintiffs' obtained through misstatements and inadequate pre-filing investigation, and to oppose the imposition of a preliminary injunction. Neomagic's recovery should not be limited by the amount of the bond.

## IX.   THE COURT SHOULD ORDER PLAINTIFFS AND THEIR ATTORNEYS TO CEASE FROM FILING SIMILAR ACTIONS

Plaintiffs and their attorneys in this action (i.e., any or all of Stanley D. Ference III, Brian Samuel Malkin, and./or other attorneys from the law firm of Ference & Associates) filed the Complaint, the Motion for TRO, and associated declarations and exhibits without performing an adequate pre-filing investigation, at least as to Neomagic. As simple examination of the front page of

Neomagic's www.mercadomagico.com web page (listed in Exhibit A to the Complaint) would have uncovered the following:



Any attorney performing an adequate pre-filing investigation would have naturally, then, at minimum, performed an online (e.g., google) search for "NeoMagic Corporation", which would have led them to the NeoMagic home page.  The very first tab "company" would have informed that person that Neomagic is not "an individual(s) and/or business entity of unknown make up…[that] upon information and belief, either reside or operate in foreign jurisdictions…" as alleged by Plaintiffs, but rather a Delaware Corporation.  ECF No. 1 ¶15.  Plaintiffs' fundamental failure to investigate the fundamental issue of whether Neomagic is a foreign or domestic corporation calls into question the validity of the Complaint as a whole and calls into question the motivations of the attorneys and Plaintiffs.

**About Us**

NeoMagic Corporation was incorporated in California in May 1993 and subsequently reincorporated in Delaware in February 1997.

http://www.neomagic.com/Company.html

As such, Plaintiffs and their attorneys should be barred from filing any future sealed actions or requests for ex parte relief from this, or any other court, unless they file therewith an affidavit, verified under oath, that establishes a proper Rule 11 pre-filing investigation has been performed and that both attorney and client has made a reasonable effort to identify and contact each defendant.  Such affidavit should specify on a defendant-by-defendant basis the investigation performed and facts learned.  And any sealed filing or application for ex parte relief filed by either Plaintiff or any of Plaintiffs' attorneys should include and prominently reference this order.

Such an order can be entered pursuant to the Court's inherent power, the Court's power to discipline attorneys, and likely under other authorities unknown to Defendant that relate to control of vexatious litigation.

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

X.      **CONCLUSION**

This is a case in which Plaintiffs abused process and a sealed case to obtain relief far overreaching their rights and their purported intellectual property.  The intellectual property is extremely weak and does not relate to Neomagic's activities in the market.  The Court should dissolve virtually all of the relief that Plaintiffs obtained through their false pretenses and permit Neomagic to recover the $5,000 bond posted by Plaintiffs.

In addition, the Court should take this opportunity to clean up practice by Plaintiffs and their attorneys by imposing the requested measures going forward with respect to sealed cases and ex parte filings.  It works great unjustice and undoes due process rights when a plaintiff or attorney can file a secret case, improperly seize assets, and hold those assets hostage hoping for a windfall settlement based on extremely weak intellectual property rights.  Neither this Court nor the nation is served by such actions.

XI.     **EVIDENTIARY OBJECTION**

Neomagic objects to the Declarations of Brian Malkin and Stanley Ference pursuant to Fed. R. Evid. 702, and Rule 3.7 of the Pennsylvania Rules of Prof. Conduct (Sept. 4, 2019).  Rule 3.7 provides "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless [one of three conditions seemingly absent here is met]." ABA Informal Opinion 89-1529 suggests, in footnote 1, that Rule 3.7 applies to "a hearing on a preliminary motion."  FRE 702 limits opinion testimony to those having special knowledge and meeting other conditions.

Messrs. Ference and Malkin placed themselves in the role of a fact and expert witness by submitting large sections of argument, fact and opinion testimony, and conclusions, including, e.g., Ference Declaration ¶¶ 2 (first paragraph 2), 7-8, 10-15; Malkin Declaration ¶¶ 5-25. Their testimony includes opinions about intent, willfulness, infringement, patent law, similarity of goods, practices of defendants, sophistication of defendants, operations of defendants, legal conclusions based on facts, interpretation of literature, copying, counterfeiting, state of the laws, effects of enforcement, alleged conspiracy, unfair competition, targeting of geographic locations, marketing and selling strategies,

Neomagic Omnibus Motion Responsive to OSC
Civil Action No. 2:20-cv-01384-WSS

1  dilution, price suppression, damage to good will, economic effects, location of defendants, and others.

2  Each also acts as a supplemental brief that may not be permitted by the rules.

3        These declarations should be stricken under FRE 702 and Rule 3.7. Messrs. Malkin and Ference

4  should be prohibited from continuing as counsel under Rule 3.7.

5

6

7                                Respectfully submitted,

8  Dated:  October 2, 2020

9                        By: _____
                                ANDREW T. OLIVER

10

11                                Andrew T. Oliver (Cal Bar No. 226098) (emergency
                              appearance)

12                                Michael C. Ting (Cal Bar No. 247610) (emergency
                              appearance)

13                                AMIN, TUROCY & WATSON LLP
                              160 West Santa Clara Street, Suite 975

14                                San Jose, CA  95113
                              Telephone: 650-393-0634

15                                Email:  aoliver@ATWiplaw.com
                                        mting@ATWiplaw.com

16

17                                Attorneys for Defendant

18                                Neomagic Corporation

19

20

21

22

23

24

25

26

27

28

1  dilution, price suppression, damage to good will, economic effects, location of defendants, and others.

2  Each also acts as a supplemental brief that may not be permitted by the rules.

3      These declarations should be stricken under FRE 702 and Rule 3.7. Messrs. Malkin and Ference

4  should be prohibited from continuing as counsel under Rule 3.7.

5

6

7                                    Respectfully submitted,

8  Dated:  October 2, 2020

9                              By: _____
                                   ANDREW T. OLIVER

10

11                                  Andrew T. Oliver (Cal Bar No. 226098) (emergency
                                    appearance)
12                                  Michael C. Ting (Cal Bar No. 247610) (emergency
                                    appearance)
13                                  AMIN, TUROCY & WATSON LLP
                                    160 West Santa Clara Street, Suite 975
14                                  San Jose, CA  95113
                                    Telephone: 650-393-0634
15                                  Email:  aoliver@ATWiplaw.com
                                           mting@ATWiplaw.com
16

17                                  Attorneys for Defendant
                                    Neomagic Corporation
18

19

20

21

22

23

24

25

26

27

28
                                            22