**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GORGE DESIGN GROUP, LLC, and KIRBY ERDELY,

Plaintiffs,

v.

SYARME, CAMPMAX, FREELAND OUTDOOR, GOUMAIZILIAO, GRASSLAND-ALL, MAMAY SUMARNA, MEANING XUANSHENG, NVHUNG36, IAM_1786, SKYCORPWORLD, AIMFIREE STORE, ALEXNLD, ANONTEE, BANGGOOD, BBFAT, BERROUS, BRYCES-SHOP, CAPIONS, COOHOME, DANCEMAGIC.SHOP, INSCRIPTIONLIFE, IZYNDEAL, LILYMI, LOCASDEALS, MERCADOMAGICO, MOTIONCOMM, MYRAGRAP, NAKATHALIE, ORANGE DANCER, PROTELIKES, QUANDARN, REACHSSGF, SHOPBESTYO, HOWCASESF, TODDEALS, TSMALLS, URBAN & HAWK, WATERBESTS, and WEREBEAR,

Defendants.

Civil Action No. 2:20-cv-001384-WSS

**FILED UNDER SEAL**

**BANGGOOD'S RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION, WITH SUPPORTING DECLARATION, TO REQUEST FOR PRELIMINARY INJUNCTION**

Defendant Guangzhou Banggood Technology Co., Ltd. ("Banggood"),[1] by and through its undersigned counsel, hereby files this Response to the Court's Order to Show Cause Why a Preliminary Injunction Should Not Issue and Opposition to Plaintiffs' Request for a Preliminary

[1] Plaintiffs' Complaint identifies "Banggood" and the website "usa.banggood.com" in their chart of "Defendants With Store Name and Seller ID" without making any effort to further identify the corporate structure, location, or operations of Banggood for the purposes of establishing personal jurisdiction over Banggood. (Compl. Schedule "A".) For instance, Plaintiffs do not identify any specific sales made by Banggood within this District.

Injunction, along with its supporting Declaration of Aaron Chen ("Decl.") filed herewith, stating as follows.

## I. INTRODUCTION

Plaintiffs' request for a Preliminary Injunction is an overreaching attempt by Gorge Design Group, LLC, and Kirby Erdely to essentially shut down all operations of e-commerce retailer Banggood. The purportedly wrongful actions of the sale of what constitutes a negligible number of plastic anchors in the past does not warrant the extreme relief requested during the pendency of this litigation or beyond. Plaintiffs have failed to meet their burden of demonstrating irreparable harm and have failed to demonstrate that they will suffer harm greater than the damage that will be caused to Banggood if this Court enters the equitable relief requested against Banggood by Plaintiffs' motion. For these reasons, and for the reasons set forth below, this Court should deny Plaintiffs' motion for a preliminary injunction as it relates to Banggood.

## II. FACTUAL BACKGROUND

On September 15, 2020, Plaintiffs Gorge Design Group, LLC ("Gorge Design") and Kirby Erdely ("Erdely") filed a Complaint for Damages and Injunctive Relief under seal with this Court. In their Complaint, Plaintiffs allege that Mr. Erdely holds the patent to a ground anchor product, which both Plaintiffs sell. (Compl. ¶¶ 1, 2.) Plaintiffs assert that all Defendants sold, distributed, and advertised and "are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute" anchors that infringe on Plaintiffs' intellectual property rights. (*Id.* ¶¶ 4, 8.) Plaintiffs do not identify specific actions taken by any one Defendant. Rather, the Complaint identifies Defendants as 39 unique "Merchant Storefronts," websites, and seller names and then asserts the same factual allegations against

each of those 39 entities.  (*Id.* ¶ 11(a).)  The Complaint contains no specific allegations about the actions of Banggood or its purported relationship with the 38 other loosely identified Defendants.

The four-count Complaint brings identical claims against each Defendant: Count I Federal Unfair Competition (15 U.S.C. § 1125(a)); Count II Patent Infringement (35 U.S.C. § 271(a)); Count III Common Law Unfair Competition; and Count IV Common Law Trademark Infringement.  Plaintiffs' *ad damnum* clause requests, "temporary, preliminary and permanent injunctions."  (Compl. at 22.)  The Court issued an *ex parte* Temporary Restraining Order on September 21, 2020, at 9:35 a.m., restraining assets and merchant storefronts, authorizing expedited discovery, and ordering Defendants to show cause as to why a preliminary injunction should not issue ("Order") (Dkt. 18).

The Court's Order stated that all Defendants were:

(1) Restrained from using Plaintiffs' mark or works or infringing on Mr. Erdely's patent and from "shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, or otherwise disposing of" products that use Plaintiffs' mark or works or infringe on Mr. Erdely's patent (Order at 5);

(2) Restrained from destroying any records relating to "User Accounts", *i.e.*, "any and all accounts with online marketplace platforms," *including those associated with Defendants' officers, employees, agents, servants, or others in active concert with them* ("Defendants' affiliates"), and "Merchant Storefronts," *i.e.*, "any and all 'User Accounts'" through which Defendants or Defendants' affiliates "deal in products" associated with Defendants *or* Defendants' affiliates, or any money, securities or other property or assets of Defendants" (Order at 5-6, n.1);

(3) Restrained from establishing or using other or new accounts or platforms to circumvent the Order (Order at 6);

(4) To cease use of Plaintiffs' mark or works online in search terms, metadata, source code (Order at 6);

(5) Restrained from transferring User Accounts or Merchant Storefronts "associated with the Seller IDs" (Order at 7);

(6) Required to preserve all computer files related to any User Accounts or Merchant Storefronts under the Seller IDs (Order at 7);

(7) Required—along with all financial institutions, payment processors, marketplace platforms, etc.—to "restrain all funds . . . transmitted into the accounts related to the Defendants . . . as well as funds transmitted into (i) any other accounts of the same customer(s); (ii) any other accounts which transfer funds into the same financial institution account(s), and/or any of the other accounts subject to this Order; and (iii) any other accounts tied to or used by any of the Seller IDs. . . ." (Order at 7); and

(8) Required—along with all financial institutions, payment processors, marketplace platforms, etc.—to hold in a separate account "for the trust of the Court" all funds transmitted into accounts related to Defendants, the same customers, *or* any other account that transfers funds into "other accounts subject to this Order" (Order at 8).

Further, third parties were also required to take actions as follows:

(1) Financial institutions, payment processors, marketplace platforms, etc. must reveal to Plaintiffs' counsel "all data that details" the funds in the restrained accounts and all account transactions (Order at 8);

(2) Internet marketplaces, at Plaintiffs' request, must cease fulfillment of Defendants' inventory (Order at 8-9);

(3) Domain name registries, at Plaintiffs' choosing, must change the registrar of Defendants' domain names to a registrar of Plaintiffs' choice or disable the domain names (Order at 9);

(4) Domain name registrars must transfer Defendants' domain name accounts to a registrar account of Plaintiffs' selection to allow for the domain names to be redirected or disabled (Order at 10);

(5) Financial institutions, payment processors, marketplace platforms, etc. must not transfer or withdraw Defendants' assets from their accounts or storefronts (Order at 10); and

(6) Financial institutions, payment processors, marketplace platforms, etc. must cease providing services to Defendants (Order at 10-11).

The Order states that it remains in effect until the hearing to show cause, which is scheduled for October 5, 2020 at 10:30 a.m. (Order at 11.)

Banggood is an international electronic commerce company with over 5,000 employees, which offers online shopping services to more than 200 countries and areas in the world and has a wide range of more than 400,000 products of different categories. (Decl. ¶ 4.) Banggood has sold specific plastic ground anchors in the past, including sixty-one (61) such anchors over the past year from September 21, 2019, through September 24, 2020, representing $209.80 in sales, and $76.21 in profits.[2] (*Id.* ¶ 7.) On or around September 24, 2020, Banggood ceased selling

---

[2] Banggood does not admit that it sold ground anchors that infringed on Plaintiffs' intellectual property or otherwise violated any laws.

and offering for sale these plastic ground anchors (the "Accused Product"), and has determined that it will not resume such sales or offers for sale in the future. (*Id.* ¶¶ 8, 10.) At that same time, Banggood removed any advertisements or marketing of the Accused Product. (*Id.* ¶ 9.) Banggood does not currently sell or offer for sale the Accused Product through its online marketplace or otherwise. (*Id.* ¶ 8.)

Banggood's financial and marketplace accounts facilitate the sales and distribution of all of Defendant's many product offerings. (*Id.* ¶¶ 5, 11.) The Court's Order restrained Banggood's PayPal account, (*see* Dkt. 18, ¶ 7), which currently has a balance of nearly $400,000. (Decl. ¶¶ 12-13.) This balance represents receipts for Banggood's sales on its website for thousands of products, almost all of which are completely unrelated to the Accused Product. (*Id.* ¶¶ 4, 13.) Only a negligible portion (approximately one tenth of one percent) of the funds in the PayPal account were even arguably derived from sales of the Accused Product. (*Id.*)

The Order required Plaintiffs to serve the Complaint, the "Application", the Order, and any Discovery on Defendants and also create a website where such filings were to be available for access. (Order at 11-2.) Banggood only obtained a copy of the Court's Temporary Restraining Order after receiving an account restriction e-mail by PayPal on September 24, 2020. (Decl. ¶ 14.) Defendant Banggood has not yet been served with a copy of any motion or application for temporary restraining order, motion to seal, summons, or any other document in this case, nor did Banggood receive access to a website containing such filings. (*Id.*) Further, the Order authorized expedited discovery in this matter, however, Plaintiffs did not serve Defendant Banggood with any discovery requests. (*Id.*) Accordingly, this filing is made without the benefit of the allegations and information contained in those documents, and is based on the allegations in the Complaint, and the representations adopted by the Court in its Order, without

waiver of its right to seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 permits this Court to grant a preliminary injunction if Plaintiffs demonstrate that they are entitled to such relief. Fed. R. Civ. P. 65(a). However, injunctive relief is an "'extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (*quoting Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). A court may grant an injunction only if a party shows: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* A party must produce sufficient evidence of all four factors—and a district court should weigh all four—before granting injunctive relief. *Winback*, 42 F.3d at 1427. "The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'" *QVC, Inc. v. Resultly, LLC*, 99 F. Supp. 3d 525, 532 (E.D. Pa. 2015) (*quoting NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)) (denying preliminary injunction where plaintiff could not show a reasonable likelihood of success or that it would suffer irreparable harm). "The movant bears the burden of showing that these four factors weigh in favor of granting the injunction." *Id.*

"[W]hen evaluating whether interim equitable relief is appropriate, '[t]he first two factors of the traditional standard are the most critical.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If those first two "gateway factors" are met, the Court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* An injunction may not be

used simply to eliminate a possibility of remote future injury. *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994). The Court will not issue an injunction "merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 326 (E.D. Pa. 2012). To the contrary, a plaintiff seeking an injunction must make a "clear showing of immediate irreparable injury." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91-92 (3d Cir. 1992) (*quoting ECRI v. McGraw Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)) (citations omitted). "[T]he claimed injury cannot merely be possible, speculative or remote." *Viad Corp. v. Cordial*, 299 F. Supp. 2d 466, 480 (W.D. Pa. 2003) (Hardiman, J.) The party seeking the injunction must show that the alleged harm is "imminent, not merely in the 'indefinite future.'" *Id.* (*citing Campbell Soup v. ConAgra*, 977 F.3d at 91).

## IV.    ARGUMENT

Plaintiffs have not shown and cannot demonstrate that they are entitled to the extraordinary relief they seek under the applicable standards due to the failure to establish at least two of the four considerations for preliminary injunctive relief. First, Plaintiffs cannot establish that they would suffer irreparable harm as necessary for injunctive relief. Second, Defendant Banggood would actually suffer immense harm if the Court were to grant the overly broad relief sought in Plaintiffs' Complaint. Plaintiffs have also failed to present any evidence of conspiracy between the Defendants to demonstrate the likelihood of success on the merits against Banggood that is based on any actions of other Defendants. Accordingly, this Court should deny Plaintiffs' request for a preliminary injunction.

### A. Plaintiffs Have Not Demonstrated That They Will Suffer Irreparable Harm.

A plaintiff seeking a preliminary injunction must demonstrate a "presently existing actual threat [of injury]." *Acierno v. New Castle Cty.*, 40 F.3d at 655. An injunction may not be used

"simply to eliminate a possibility of a remote future injury." *Id.* Establishing a mere risk of irreparable injury is insufficient. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). "Actual proof of irreparable harm is a prerequisite to the issuance of a preliminary injunction to enforce a covenant not to compete." *Deangelo Bros. v. Clarius*, No. 3:CV-06-0466, 2006 WL 7553206, at *13 (M.D. Pa. Aug. 17, 2006) (*quoting In re Arthur Treacher's Franchisee Litig.,* 537 F. Supp. 311, 323 n.31 (E.D. Pa.1982)).

Moreover, a preliminary injunction is inappropriate where the purported harm incurred only in the past and is merely monetary. The word irreparable connotes "that which cannot be repaired, retrieved, put down again, atoned for." *Viad Corp. v. Cordial*, 299 F. Supp. 2d at 480. If money damages provide an adequate remedy at law, then injunctive relief is inappropriate. *Instant Air Freight Co. v. C.F. Air Freight Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). A preliminary injunction is not needed going forward where a defendant's allegedly infringing activities, if any, have ceased, and any past harm can be redressed by monetary damages that appropriately compensate plaintiff for any infringement. *Byrd v. Aaron's, Inc.*, No. CA 11-101, 2011 WL 2672009, at *6 (W.D. Pa. June 16, 2011), *report and recommendation adopted sub nom. Crystal Byrd v. Aaron's Inc.*, No. CIV.A. 11-101, 2011 WL 2672204 (W.D. Pa. July 8, 2011) (denying preliminary injunction because, *inter alia*, there was no evidence plaintiff was suffering presently from any irreparable harm where a laptop used to carry out fraud was no longer in defendant's possession); *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 701 (N.D. Tex. 2015) ("[C]ourts in trademark cases have a responsibility to tailor the relief to the violation, a responsibility that includes consideration of disclaimers).

In the instant case, Plaintiffs failed to demonstrate that they would suffer harm in the absence of the entry of a preliminary injunction against Banggood. The crux of Plaintiffs' case

is that Defendants, including Banggood, purportedly sold the Accused Product infringing on Plaintiffs' intellectual property rights and that future advertisement and sales of such products must be prevented to reduce harm to Plaintiffs. (Compl. at 22-23.) Banggood is not selling the Accused Product and has decided that it will not sell the Accused Product in the future, thus eliminating any need for injunctive relief. The Accused Product has been removed from Banggood's ecommerce site, and as of September 24, 2020, Banggood has not sold or offered to sell the Accused Product. (Decl. ¶ 8.) A search of Banggood's website confirms these facts. (*See id.* ¶ 9.) Because Plaintiffs cannot establish that they face irreparable harm from future advertisements or sales of the Accused Product by Banggood, Plaintiffs' do not establish the first prong of the analysis. Rather, any harm caused by allegedly wrongful sales of the Accused Product can be compensated by money damages. *Byrd v. Aaron's, Inc.*, 2011 WL 2672009, at *6. Plaintiffs' requested injunctive relief is unnecessary and should be denied.

**B. Entry of a Preliminary Injunction Would Result in Greater Harm to Banggood—and Its Employees—Than Would Result to Plaintiffs if Its Application is Denied.**

The Court should deny Plaintiffs' *Ex Parte* application for a preliminary injunction against Banggood because the requested relief is not narrowly tailored and, as a result, would cause significant harm to Banggood. Injunctions "must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law." *Byrd v. Aaron's, Inc.*, 2011 WL 2672009, at *6; See also *ADT, LLC.*, 145 F. Supp. 3d at 701. "The requirement to tailor preliminary injunctions exemplifies this innate prerequisite for a causal connection between the injunctive relief and the harm it is intended to remove" and "should be 'no more burdensome to the defendant than necessary to provide complete relief to plaintiffs.' In other words, courts must "closely tailor injunctions to the harm that they address." *I.M. Wilson*, 2019 WL 5394113, at *4 ("Enjoining the defendants from selling GRISHKO-branded products in the U.S. in no way

rectifies the irreparable harm the Court found to be caused by Mr. Grishko's communications") (quoting *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 972 (D.C. Cir. 1990)).

Here, the contemplated preliminary injunction is overbroad and not narrowly tailored to the allegedly infringing activity whatsoever. Plaintiffs accuse all Defendants of selling, distributing, and advertising a product that allegedly infringes its trademarks and patent associated with a ground anchor. (*See* Compl. ¶¶ 6-9.) Specifically, Plaintiffs allege that Defendants advertise and sell infringing products "through on-line platforms with Merchant Storefronts via on-line marketplace websites, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ('User Accounts')." (*Id.* ¶ 11, *see also* ¶¶ 17-18.)

Banggood operates an international online sales platform, offering a variety of products. (Decl. ¶ 4.) As discussed *supra*, Banggood currently offers none of the Accused Product (*See id.* ¶¶ 8-10.) Further, Banggood's financial and marketplace accounts facilitate the sales and distribution of *all* of Defendant's numerous product offerings, very few of which were the Accused Product in the past and none of which are the Accused Product currently. (*Id.* ¶¶ 5, 11.) Further, Banggood has determined that it will not sell or offer for sale the Accused Product. (*Id.* ¶ 10.) Banggood sold a total of sixty-one (61) the Accused Product, representing $209.80 in sales, and $76.21 in profits. (*Id.* ¶ 7.) Nonetheless, the Court's Order restrained Banggood's PayPal account (and would appear to restrain other accounts as well), (*see* Dkt. 18, ¶ 7), which currently has a balance of nearly $400,000. (Decl.¶ 13.) This sum reflects all sales derived from Banggood's online platforms for products well beyond the Accused Product. (*Id.*) Only a negligible portion of the funds in the PayPal account—approximately one tenth of one percent—

were even arguably derived from sales of the Accused Product. (*See Id.*) Even so, *that entire account* is currently frozen as a result of the Order, and Plaintiffs ask the Court to continue that restraint through a preliminary injunction. If granted, the preliminary injunction sought by Plaintiffs would continue to freeze funds in the PayPal account (and ostensibly other accounts) that have no causal nexus to the sales of the Accused Product, and is therefore overbroad. *I.M. Wilson*, 2019 WL 5394113, at *4 ("Enjoining the defendants from selling GRISHKO-branded products in the U.S. in no way rectifies the irreparable harm the Court found to be caused by Mr. Grishko's communications"). Without active payment services, Banggood would quite simply be unable to conduct its business, causing it to suffer irreparable harm. (Decl. ¶¶ 4-5, 11-12.)

As if this were not detrimental enough, a close review of the Order and Plaintiffs' Complaint, demonstrates that Plaintiffs did not adequately tailor their requested relief.[3] For example, the Order explains that Plaintiffs' application defined User Accounts to include "any and all accounts with online marketplace platforms . . . held by or associated with Defendants, their respective officers, *employees*, agents, servants and *all other persons* in active concert with *any of them*." (Order at 6, n.1 (emphasis added); Compl. ¶ 11(a).) Despite this broad definition, the Order restrains financial institutions and service providers from *servicing* "User Accounts." (Order at 10; *see also* Compl. at 26, j.) This could be interpreted as preventing Defendants' employees from obtaining service for their personal PayPal or eBay accounts, for instance. Further, financial institutions are also prohibited from transferring "Defendants' Assets" from or

---

3 Plaintiffs provide no justification for extending injunctive relief beyond a prohibition of the sale of the Accused Product, which Banggood has already implemented itself. (Decl. ¶¶ 8-10.) Banggood intends to petition the Court to modify or dissolve the existing Order if it is not vacated or dissolved or narrowed to only restrain sales of the Accused Product in light of the facts discussed herein and in accordance with the Order (Order at 9, ¶ 12).

to "User Accounts," arguably restricting Banggood's 5,000 employees from freely transferring pay from their employer. (Order at 10.) Such an outcome would not only cause great harm to Banggood but also its employees and customers. The overbroad injunctive relief sought by Plaintiffs would cause unjustified harm to Defendant Banggood, its customers who use the site for numerous products, and its employees and other affiliates all to prevent harm to Plaintiffs that Banggood demonstrates will not occur. As such, the preliminary injunctive relief should be denied.

**C. Plaintiffs' Attempts to Tie the Defendants to Each Other Do Not Warrant Entry of a Preliminary Injunction Against Banggood.**

The likelihood that Plaintiffs will be successful on their claims is a relevant consideration when evaluating a motion for injunctive relief. *Winback*, 42 F.3d at 1427. Plaintiffs assert that all Defendants sold, distributed, and advertised and "are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute" anchors that infringe on Plaintiffs' intellectual property rights. (Compl. ¶¶ 4, 8.) Plaintiffs do not identify specific actions taken by any one Defendant, nor do Plaintiffs attempt to show how Banggood is related to any particular defendant. Rather, the Complaint identifies Defendants as 39 unique "Merchant Storefronts," websites, and seller names and then asserts the same factual allegations against each of those 39 entities. (*Id.* ¶ 11(a).) The Complaint contains no specific allegations about the actions of Banggood or its purported relationship with the 38 other loosely identified Defendants. Plaintiffs have failed to present any evidence of conspiracy between the Defendants to demonstrate the likelihood of success on the merits against Banggood that is based on any actions of other Defendants. As such, injunctive relief should not be granted against Banggood on the basis of any purported actions of other Defendants.

## V. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' request for a Preliminary Injunction. In the alternative, in the event this Court grant's Plaintiffs' motion, Banggood requests that any resulting order be narrowly tailored in such a way that permits Banggood to continue its operations while protecting against the use of Plaintiffs' purported intellectual property, if any.

Dated: October 2, 2020

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: */s/ Samuel W. Braver*

Samuel W. Braver
PA Id. No. 19682
Ingrid A. Bohme
PA Id. No. 309157
625 Liberty Avenue
Pittsburgh, PA 15222-3152
(412) 297-4900
Samuel.Braver@dentons.com
Ingrid.Bohme@dentons.com

Dentons US LLP
Derek A. Auito (*pro hac vice application forthcoming*)
1900 K. Street NW
Washington, DC 20006
(202) 496-7500
Derek.Auito@dentons.com

*Attorneys for Defendant Guangzhou Banggood Technology Co., Ltd. ("Banggood")*

3447198.5

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of October 2020, a true and correct copy of the foregoing was served via electronic mail on counsel for Plaintiffs.

By: */s/ Samuel W. Braver*