Kent E. Baldauf, Jr.
PA ID No. 70793
David DuMont
PA ID No. 205858
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
ddumont@webblaw.com

Andrew T. Oliver
Cal Bar No. 226098 (*Motion for PHV Pending*)
Michael C. Ting
Cal Bar No. 247610 (*Motion for PHV Forthcoming*)
**AMIN, TUROCY & WATSON LLP**
160 West Santa Clara Street, Suite 975
San Jose, CA  95113
Telephone: 650-393-0634
aoliver@ATWiplaw.com
mting@ATWiplaw.com

Attorneys for Defendant
Neomagic Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORGE DESIGN GROUP, LLC, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SYARME, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 2:20-CV-01384-WSS<br><br>**DEFENDANT NEOMAGIC CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** |

# Contents

I.     INTRODUCTION ................................................................................ 4

II.    FACTUAL BACKGROUND ............................................................... 6

    A.   Alleged Trademark Infringement .............................................. 6

    B.   Alleged Copyright Infringement ............................................... 8

    C.   Alleged Patent Infringement ..................................................... 9

    D.   Alleged Unfair Competition ..................................................... 11

    E.   Failure to Show or Allege Irreparable Harm .......................... 13

    F.   Overreaching Temporary Restraining Order and Insufficient Security ................................................................................... 13

    G.   Delayed Service ....................................................................... 15

    H.   Extortive Settlement Tactics ................................................... 15

    I.   Venue Is Knowingly Improper ................................................ 16

    J.   Jurisdiction and Other Rule 12 Issues .................................... 17

    K.   Improper Joinder ..................................................................... 18

III.   LEGAL STANDARDS ...................................................................... 19

    A.   Rule 54 .................................................................................... 19

    B.   35 U.S.C. §285 ........................................................................ 19

    C.   15 U.S.C. §1117 ...................................................................... 20

    D.   17 U.S.C. §505 ........................................................................ 21

    E.   Rule 11 .................................................................................... 21

    F.   The Court's Inherent Power ..................................................... 22

    G.   28 U.S.C. §1927 ...................................................................... 22

    H.   Pennsylvania Statute Title 42 Pa. C.S.A §2503 ..................... 23

    I.   Attorney Duty of Candor to the Court .................................... 23

IV.    ARGUMENT – ATTORNEYS FEES, COSTS, AND FEES SHOULD BE AWARDED ................................................................................... 23

    A.   For The Few Frameworks Requiring a Prevailing Party, Neomagic is the Prevailing Party ............................................................ 24

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

B.      Notice Under Rule 11 .................................................................... 25

C.      Sanctions Should Be Entered ....................................................... 25

      1.      This Case Is Baseless and Brought in Bad Faith .................................. 25

      2.      This Case Was Litigated Vexatiously and Unreasonably ...................... 28

      3.      Plaintiffs Attempted to Extort Settlement Based on
            Improperly Seized Moneys ......................................................... 28

      4.      Based on the Foregoing, This Case is Sanctionable Under
            Numberous Frameworks ........................................................... 29

V.      AMOUNT AND REASONABLENESS OF FEES ........................................... 30

VI.     REQUEST TO UNSEAL CASE .................................................................. 32

VII.    ALTERNATIVE REQUEST TO TAKE DISCOVERY ................................. 33

VIII.   CONCLUSION ......................................................................................... 33

Defendant Neomagic Corporation (doing business as www.mercadomagico.com) ("Defendant" or "Neomagic") moves for an award of its attorneys' fees, costs, and expenses incurred in defending this baseless and exceptional action, pursuant to Fed. R. Civ. P. 54, 35 U.S.C. §285, 15 U.S.C. §1117, 17 U.S.C. §505, Fed. R. Civ. P. 11, the Court's inherent power, 28 U.S.C. §1927, and 42 Pa. C.S.A. §2503(9). This motion is supported by the Declaration of Rod Peterson, the Declaration of Andrew T. Oliver and the proposed order, all submitted herewith.

Neomagic further moves for an order directing the clerk to unseal the entire case. Neomagic notes that its counsel still do not have access to the official docket of this case due to the sealed nature and, thus, are unable to verify whether the ECF numbers or page numbers provided by plaintiffs match those in the Court's docket.

## I.    INTRODUCTION

Stopping illegal counterfeiting is an admirable cause and, where that is what a party is doing, a cause that should be commended. That is not what happened here. Instead, plaintiffs and their attorneys are using this Court and its powers in an abusive manner to extort settlements with minimal intellectual property, false allegations of facts, and improper ex parte proceedings and sealings. The case brought by plaintiffs is the type of case that gives a bad name to the courts and the legal profession. Such conduct should not be condoned nor encouraged, but sanctioned.

The Court will note that in this case, of the 39 defendants named in Schedule A to the complaint, only 2 such defendants were able to retain counsel to appear at the October 5 hearing set for converting a temporary restraining order into a preliminary injunction. More notably, however, is that plaintiffs and their attorneys dismissed both such defendants when those defendants began to raise challenges that may have exposed the bad faith nature of the litigation.

Because of the conduct of the plaintiffs and their attorneys, Neomagic seeks sanctions in the form of all of its attorneys' fees, costs, and expenses incurred in this litigation. Neomagic requests that the Court hold the plaintiffs and their attorneys jointly and severally liable for the award, pursuant to the legal authorities set forth herein. The case against Neomagic, and indeed against many of the other defendants, was brought unreasonably, vexatiously, in bad faith, and without evidentiary support, as will

be demonstrated by the lack of support for the various claims brought by plaintiffs, the ex parte manner in which the claims were brought, and the sealing of the case that prevented reasonable defense thereof.  The manner of litigation was vexatious and unreasonable, including the bringing of a case in an improper venue, the vastly overreaching seizure orders procured from the court, the pittance of security that plaintiffs gave to secure broad injunctive relief while demanding extortive settlements, the unsupported allegations of conspiracy and fraud, and the impermissible joinder of unrelated cases.

Plaintiffs brought this case against Neomagic without performing a proper Rule 11 investigation, without pleading proper causes of action, with extremely weak patent rights, and in the case of trademark, copyright, and unfair competition, non-existent intellectual property.  The case is based on unsupported allegations of conspiracy, fraud, and selling substandard goods.

Trademark: Plaintiffs' trademark rights in "Ultimate Ground Anchor" are non-existent, because there is no allegation or showing of secondary meaning.  Even worse, not only was the term absent from Neomagic's advertising, none of the three words "ultimate", "ground", or "anchor" were even present in the evidence submitted by plaintiffs, despite sworn false declarations by counsel of such use.

Copyright: Plaintiffs assert copyright infringement, but do not provide a copyright registration or any relevant allegations.

Patent: Plaintiffs assert patent infringement of a patent that cannot be infringed, because their patent requires two or more threads on the screw, but Neomagic's product (and all of the identified products) include only a single thread.

Unfair Competition: Finally, plaintiffs assert unfair competition based on trademark infringement and the use of uncopyrighted "works."  As noted, Neomagic doesn't use the trademark, so the unfair competition claim is preempted by copyright law, or else the "works" must have secondary meaning.  Plaintiffs present no allegation nor evidence of such meaning.

Thus, each of plaintiffs' four causes of action was baseless as filed against Neomagic.

In addition to proceeding on baseless causes of action, plaintiffs and their attorneys made an insufficient pre-filing investigation into Neomagic, proceeded baselessly with sealing the case, seized over $300,000 based on a single sale of the accused device (later demanding almost $10,000 to release

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

the funds), improperly delayed service, obtained an overly broad seizure order that would have allowed seizure of Neomagic's website with 100,000+ products based on a single sale, and then intentionally delayed service for at least 7 days after the funds were seized.

Plaintiffs further made false and unsupported statements about venue, directing sales at Pennsylvania, conspiracy, fraud, and selling substandard goods.

Plaintiffs and their lawyers have assumed that the Court would not closely look at the complaint, temporary restraining order, or other supporting documents and merely rubber-stamp such documents, knowing that the Court must rely significantly on the candor of counsel in *ex parte* proceedings. Plaintiffs and their attorneys violated the duty of candor to the Court by submitting false declarations to secure exceedingly broad injunctive relief that was later used to attempt to extort settlements from Neomagic.

In view of the bad faith, vexatious, and unreasonable conduct by plaintiffs and their attorneys, Neomagic requests that the Court making findings as to the bad acts of plaintiffs and their attorneys, declare the case exceptional, and award Neomagic its attorneys' fees and costs in defending this action. Neomagic further requests that the Court make plaintiffs and their attorneys jointly and severally liable for such sanctions.

Finally, Neomagic requests that the Court unseal this case, as there is no basis to keep this case sealed.

## II.     FACTUAL BACKGROUND

### A.     Alleged Trademark Infringement

Plaintiffs allege that they hold common law rights in the term "Ultimate Ground Anchor" as a trademark. Complaint ¶ 2. Plaintiff does not hold a registration certification on this mark. This mark is generic as to ground anchors. *See* Complaint Exh. 2 ("Orange Screw™ Patented Ground Anchors … The Orange Screw® ground anchor is an innovative screw-in ground anchor … Before we invented the Orange Screw™, ground anchors consisted of simple tent stakes, …").

Plaintiffs submitted evidence of Neomagic's alleged use of "Ultimate Ground Anchor" in the Declaration of Taylor Ray (ECF No. 12) at Composite Exhibit 1 at pages 256 to 259 of the PDF served

on Neomagic, in a section titled "Seller Display Name mercadomagico." The word "ultimate" does not appear in plaintiffs' evidence. The word "ground" does not appear in plaintiffs' evidence. The word "anchor" does not appear in plaintiffs' evidence. None of the three words comprising the alleged trademark was used by Neomagic in plaintiffs' evidence.

Despite this, plaintiffs' counsel signed a false declaration against Neomagic stating, "[W]e identified Defendants as offering for sale and/or selling Counterfeit Products…" Malkin Decl. (ECF No. 14) ¶8; *see also id.* at footnote 4 (identifying "Defendants" and alleged "Infringing Products"). Notably, "counterfeit" is a trademark infringement term requiring use of a trademark identical to a registered mark. *See* 15 U.S.C. §1127 (defining "counterfeit"). Plaintiffs' counsel submitted a proposed order to the Court (that was entered), stating, "[T]he detailed webpages and photographs were inspected by Plaintiffs' representative who confirmed that each defendant is featuring, displaying, and/or using Plaintiffs' Mark…" ECF No. 18 ¶7. As noted above, Neomagic did not use even a single one of the three words in plaintiffs' alleged trademark. And Plaintiffs admit that their mark is unregistered. *See* ECF No. 10 p. 39 ("Plaintiffs' unregistered ULTIMATE GROUND ANCHOR mark…"). Thus, Plaintiffs fail two of three tests needed to allege that Neomagic (and many other defendants) are counterfeiters.

In fact, as Neomagic noted in its memorandum re omnibus motion of October 2, "The term 'ultimate' is missing from the product listings in pages 11-55, 120-138, 144-168, 195-235, 243-292, 312-373, and 390-427. So approximately 2/3 of the alleged evidence of trademark infringement that Plaintiffs filed actually shows absence of use of 'Ultimate Ground Anchor.'" Omnibus Memorandum p. 7. This is notable to show plaintiffs' and their attorneys' pattern of abuse. After Neomagic pointed this out to the plaintiffs in the filings of October 2 and an email of October 4 (Oliver Decl. Exh. 2), at the hearing on October 5, the Court asked plaintiffs' attorneys whether they wanted to make any changes to their application for preliminary injunction. *See* Hearing Transcript.[1] Plaintiffs' attorneys responded that they had no changes. *Id.* Plaintiffs' attorneys knowingly went forward with false accusations of trademark infringement and at least one false declaration, and secured a preliminary

---

[1] Neomagic has not yet been given access to the docket or the hearing transcript, so a citation to a specific page is not possible yet.

7

1    injunction related to at least 2/3 of their evidence when they had notice that such evidence did not

2    include the alleged trademark "Ultimate Ground Anchor."

3          Plaintiffs secured a temporary restraining order against Neomagic and all defendants (ECF No.

4    18), and later secured a preliminary injunction against all remaining defendants, based upon this false

5    declaration and allegation.

6          **B.     Alleged Copyright Infringement**

7          Plaintiffs alleged copyright infringement against Neomagic and the other Defendants.[2]

8    Complaint ¶19 ("Upon information and belief, Defendants will continue … infringing Plaintiffs'

9    federally registered copyright unless preliminarily and permanently enjoined.").  Plaintiffs' attorneys

10   further sent a communication to Neomagic, stating, "[W]e represent Gorge Design Group, LLC, et al.,

11   ('Plaintiffs'), in the above matter … alleging that you engaged in … copyright infringement."  Peterson

12   Decl. Exh. 2.

13         The problem with such allegations is that Plaintiffs must have a copyright registration to assert

14   copyright infringement.  But Plaintiffs complaint does not contain a cause of action for copyright

15   infringement or allege (or identify) any actual federal copyright registration.  *See generally* Complaint.

16         The photographs identified as "Plaintiffs Works" with respect to Neomagic were published in

17   or before 2015.  *See* Complaint Exh. 1 at p. 2 ("Last updated November 25, 2015"); *compare* photos at

18   Ray Declaration Exh. 1 pp. 256-259 *to* Complaint Exh. 1 at pp. 4-5.  Thus, the publication was far more

19   than three months before Neomagic's alleged use in 2020.[3]

20         Neomagic pointed out in its filings of October 2 that the copyright allegations were improper.

21   Omnibus Motion pp. 6, 13 ("…they must have a registration before asserting such rights.").  Neomagic

22   again pointed this out to plaintiffs' attorneys on October 4. Oliver Exh. 2 ("[Y]ou sued them for non-

23   copyrighted photos…").

24

25

26   ───────────────────
     [2] The introductory paragraph on page 1 of the Complaint defines "Defendants" to include all
           defendants identified in the caption and Schedule A to the Complaint.
27   [3] This is significant, in part, because 17 U.S.C. §412 eliminates any claim to statutory damages or
           attorneys' fees for plaintiffs absent a registration.  If a proper claim had been alleged, plaintiffs
28         would have been left with actual damages for a single unit of sales from Neomagic.

8

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

At the hearing on October 5, the Court asked plaintiffs' attorneys whether they wanted to make any changes to their application for preliminary injunction. *See* Hearing Transcript. Plaintiffs' attorneys responded that they had no changes. *Id.* Plaintiffs' attorneys knowingly went forward with false accusations of copyright infringement when they had notice that such allegations are improper. *See, e.g.,* ECF No. 10 p. 52 ("In this case, Defendants' blatant violations of federal trademark and copyright laws warrant an ex parte restraining order …").

Plaintiffs secured a temporary restraining order against Neomagic and all defendants (ECF No. 18), and later secured a preliminary injunction against all remaining defendants, based upon this false allegation of copyright infringement.

### C.   Alleged Patent Infringement

Plaintiffs alleged patent infringement against Neomagic and the other Defendants. Complaint ¶¶50-55. The asserted patent has two independent claims and each of them include a claim limitation requiring "a plurality of threads" on the shaft. Complaint Exh. 3 (asserted patent) at claims 1 and 5. Thus, every claim (both the two independent and three dependent claims) in the patent requires "a plurality of threads." The term "plurality" has established meaning in the patent law of "two or more."[4] Thus, to infringe, an accused product must have two or more threads.

An ordinary definition of a "thread" on a screw is a ridge wrapped around a cylinder in the form of a helix. *See, e.g.,* Oliver Decl. Exh. 3 (https://en.wikipedia.org/wiki/Screw_(simple_machine)); Exh 4 (https://en.wikipedia.org/wiki/Screw_thread). As noted, "In most screws, called 'single start' screws, which have a single helical thread wrapped around the, the lead and pitch are equal." *Id.*

Here, the accused product of Neomagic only has a single thread, as demonstrated at Ray Decl. Exh. 1 at pp. 256-259:

---

[4] "…Cybersettle agreed at oral argument that the claim term 'plurality' refers to two or more of something. That definition is consistent with the well understood meaning of the term 'plurality' both in general and in patent parlance." *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603, 606 (Fed. Cir. 2007).

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

1
2
3
4
5
6
7
8



9 As can be seen in the image above, the single thread wraps around the length of the shaft.  In contrast,

10 some screws do have a "plurality" of threads, such as the multi-threaded screws pictured below, which

11 are often called "multi-start" screws as opposed to "single-start"  screws of the type shown above and

12 in the far left image of each picture below:



13
14
15
16
17
18

19        The same is true for every product shown in the Ray Declaration Composite Exhibit 1. In

20 searching the Ray Declaration, every pictured product has a single thread, not a plurality of threads.

21        Neomagic pointed out in its filings of October 2 that the patent infringement allegations were

22 improper.  Omnibus Motion pp. 8-10.  Neomagic again pointed this out to plaintiffs' attorneys on

23 October 4. Oliver Exh. 2 ("[Y]ou sued them for patent infringement when they clearly don't use the

24 patent.").

25        At the hearing on October 5, the Court asked plaintiffs' attorneys whether they wanted to make

26 any changes to their application for preliminary injunction.  *See* Hearing Transcript.  Plaintiffs' attorneys

27
28

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

1  responded that they had no changes. *Id.* Plaintiffs' attorneys knowingly went forward with false

2  accusations of patent infringement when they had notice that such allegations are improper.

3      Plaintiffs secured a temporary restraining order against Neomagic and all defendants (ECF No.

4  18), and later secured a preliminary injunction against all remaining defendants, based upon this false

5  allegation of patent infringement.

6      **D.      Alleged Unfair Competition**

7      Plaintiffs alleged two counts of unfair competition against Neomagic and the other Defendants.

8  Complaint pages 18-19, 21.  Plaintiffs' arguments regarding its unfair competition claims rely on an

9  allegation that Defendants (including Neomagic) use "Plaintiffs' Works and/or Plaintiffs' Mark" and

10 that this has created likely and actual confusion.  *Id.*

11     As to the second point, the use of Plaintiffs' alleged trademark, as shown above, Neomagic

12 doesn't even use any of the individual terms in "Ultimate Ground Anchor" and certainly doesn't use

13 the entire phrase.

14     Thus, the relevant facts will relate to "Plaintiffs' Works" and whether they form the basis for an

15 unfair competition claim.  Plaintiff defines "Plaintiffs' Works" as Plaintiffs' "photographs, videos,

16 artwork, creative text and product instructions" in exhibits 1 and 2 to the Complaint.  Complaint ¶7.

17 Plaintiff has not alleged that it holds a copyright registration to any of these photographs, videos,

18 artwork, creative text and product instructions.  *See generally* Complaint.  In Plaintiffs' evidence related to

19 Neomagic (Ray Declaration Exh. 1 at pages 256-259), there are no identifiable videos, artwork, creative

20 text, or product instructions from either of exhibits 1 or 2 to the Complaint.  So, with respect to

21 Neomagic, the allegations regarding Plaintiffs' Works are limited to photographs.  *See* Ray Decl. Exh. 1

22 at pp. 256-259.  As noted below, in these photos, displayed below, only a handful of these photographs

23 arguably show any product.  The photos showing products are marked in green and red below.  The

24 green circles indicate photos that Plaintiffs indicate are their own, as set forth in Exhibits 1 and 2 to the

25 Complaint.  The red X marks indicate photos or images that plaintiffs do not claim as their own.  The

26 pink squares indicate photos that do not show the products:

27

28

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

1
2
3
4
5
6
7
8
9
10
11
12
13



14  As can be seen, all but one of the photos that shows more than the head of the screw is not in the set

15  claimed by Plaintiffs.  The single photo of Plaintiffs' that shows more than the head (bottom row

16  middle) is reproduced so poorly that one cannot discern that it shows any product.  (It is reproduced

17  slightly larger in Plaintiffs' evidence in Ray Exh. 1 p. 257, but still does not show more than an orange

18  shaft.)  And unlike Plaintiffs' photos prominent in the Complaint exhibits, the clear tube in Neomagic's

19  photos does not say "Orange Screw."  *Compare* Complaint Exhs. 1 and 2 *to* Ray Decl. Exh. 1 pp. 256-

20  259.  Each of Plaintiffs' photos of the clear tube bears the "Orange Screw" logo.  *Id.*

21          Aside from the photos discussed above, Plaintiffs did not submit any evidence regarding the

22  quality or even the appearance of the product attributed to Neomagic.  Plaintiffs did not allege or

23  establish that Neomagic shipped anything other than what was depicted.

24          Neomagic pointed out in its filings of October 2 that the unfair competition allegations were

25  improper.  Omnibus Motion pp. 10-14.  Neomagic again pointed this out to plaintiffs' attorneys on

26  October 4. Oliver Exh. 2 ("[Y]ou sued them for non-copyrighted photos that don't have a secondary

27  meaning.").

28

At the hearing on October 5, the Court asked plaintiffs' attorneys whether they wanted to make any changes to their application for preliminary injunction. *See* Hearing Transcript. Plaintiffs' attorneys responded that they had no changes. *Id.* Plaintiffs' attorneys knowingly went forward with false accusations of unfair competition when they had notice that such allegations are improper.

Plaintiffs secured a temporary restraining order against Neomagic and all defendants (ECF No. 18), and later secured a preliminary injunction against all remaining defendants, based upon this false allegation of unfair competition.

### E.      Failure to Show or Allege Irreparable Harm

Plaintiffs did not set forth any facts showing or supporting a finding of irreparable harm with respect to Neomagic. As noted above, the patent, trademark, copyright, and unfair competition claims are without merit. The trademark was not used. The copyright is non-existent. And the unfair competition claims require secondary meaning that is not present and was not alleged. With respect to the patent claims, they are not relevant to the accused product.

But if they were, only a single unit of the accused product was sold. Peterson Decl. ¶¶ 5-6. And the only sale of that item was shipped to an address that matches the address of Plaintiffs' attorneys. *Id.* at ¶6. The item was not even listed on Neomagic's website at the time of the lawsuit. *Id.* at ¶5.

Even if such an item infringed, past sales of infringing items can be compensated by damages under 35 U.S.C. §284, but do not constitute irreparable harm necessitating injunctive relief.

### F.      Overreaching Temporary Restraining Order and Insufficient Security

Having failed to allege any legitimate intellectual property rights, Plaintiffs moved the Court for an overreaching temporary restraining order ("TRO") and preliminary injunction ("PI") in an *ex parte* and sealed filing. Plaintiffs proposed and obtained a temporary restraining order with the following overbroad seizure provisions that are unrelated to the alleged harm suffered based on Neomagic's alleged actions. For example, on a typical day, Neomagic's website lists over 100,000 items for sale. Peterson Decl. ¶ 4. This lawsuit is related to a single item, approximately 1/1000 of one percent of the items on the website. At the time that the TRO issued, Neomagic's Paypal account that was frozen had

a balance of over $300,000. *Id.* at ¶ 7. The total sales of products accused of infringement amounted to $4.99. *See* Peterson Decl. ¶ 6 (one unit sold); Ray Decl. Composite Exhibit 1 at pp. 256-259 (price $4.99).

Based on this single sale of less than $5, the TRO and proposed PI broadly prohibits defendants from transferring "any money, securities or other property or assets…" ECF No. 18 p. 5 ¶ (2). It broadly prohibits defendants from assignments, transfers, importing, exporting, advertising, marketing, distribution, etc. *Id.* at p. 6 ¶ (3). It broadly prohibits use of uncopyrighted "Plaintiffs' Works." *Id.* at ¶(4). It imposes broad file preservation requirements unrelated to the scope of alleged infringement. *Id.* at p. 7 ¶ (6). It broadly "restrain[s]" defendants' funds unrelated to the scope of alleged infringement. *Id.* at ¶ (7). It broadly requires that "all funds" be diverted to the court, including funds in "any other accounts which transfer funds into the same" accounts, regardless of whether those accounts are related to defendants or to the alleged infringement. *Id.* at p. 8 ¶(8). It broadly requires the financial institutions to provide "account transactions" to plaintiffs (who are potentially direct competitors) without any protective order in place to prevent plaintiffs from directly viewing their potential competitors' data. *Id.* at ¶ (9). It broadly requires third parties to "sequester Defendants' inventory" regardless of whether that inventory is related to the 100,000+ non-accused products. *Id.* at ¶ (10). It broadly allows plaintiffs to transfer or inactivate Defendants' websites. *Id.* at p. 9 ¶ 13. It directs domain name registrars to transfer Defendants' websites to plaintiffs "within (3) business days." *Id.* at p. 10 ¶ 14.

In addition to the broad and oppressive terms of the TRO, the order sets both response and hearing dates (ECF No. 18 p. 11), but allows Plaintiffs to delay service of the order indefinitely, until "Plaintiffs' counsel has received confirmation" of seizures from third parties. *Id.* at p. 11 ¶ C. This indefinite and inappropriate service procedure would permit plaintiff to proceed to the OSC hearing and obtain a PI without ever serving defendants.

Further, the TRO contains many proposed and entered "factual" findings that directly contradict the actual facts set forth in this brief. *See, e.g.,* ECF No. 18 ¶¶ 1, 3, 6, 7, 8, 9, 10, 11, 13.

Plaintiffs seized the $300,000 from Neomagic based on a total bond in the amount of $5,000. ECF No. 18 p. 14.  This bond amounts to $128.21 for each of 39 defendants identified in Schedule A to the Complaint (i.e., $5000/39 = $128.21).  So, if this average is used, Plaintiffs seized $300,000 and obtained permission to seize and inactivate Neomagic's website on a bond of $128.21.

**G.      Delayed Service**

Plaintiffs obtained the temporary restraining order ("TRO") on September 21, 2020.  ECF No. 18.  Plaintiffs served the order on Paypal and seized $300,000 from Neomagic on September 22, 2020. Peterson Decl. ¶ 7, Exh. 1.

Plaintiffs delayed serving the TRO on Neomagic until September 29, 2020.  Peterson Decl. ¶ 8, Exh. 2.  This service was only three days before written submissions responsive to the Court's order to show cause ("OSC") were due on October 2, and only four business days before the hearing on the OSC.  ECF No. 18 p. 11.

**H.      Extortive Settlement Tactics**

After Neomagic was notified by Plaintiffs' email of this action (Peterson Decl. ¶ 8), Neomagic scrambled to retain counsel and was able to retain counsel on October 1, the day before the noticed hearing.  *Id.* at ¶ 9.

On October 2, responsive to the OSC, Neomagic filed a motion to dismiss under Rule 12 by email at 1:08 pm Eastern time to Judge Stickman's chambers and plaintiffs' counsel.  Shortly after that filing, Neomagic's counsel received a phone call from plaintiffs' counsel (Messrs. Ference and Malkin) in which plaintiffs' counsel asked for a settlement offer.  Oliver Decl. ¶ 16.  During the call, Mr. Oliver responded that the case was baseless and explained why, and stated that plaintiffs' should dismiss with prejudice and offer to pay all of Neomagic's attorneys' fees.  *Id.*  The call ended.  Shortly after that, Mr. Oliver received a second call from Mr. Malkin in which Mr. Malkin proposed that Neomagic should be willing to pay some amount to have its financial account released, and that plaintiffs' proposed a payment of $9,500.  *Id.*  Mr. Oliver responded that he would take the settlement offer to Neomagic as required, but that he would advise Neomagic not to pay anything to plaintiffs.  *Id.*  Mr. Ference acknowledged this call by email.  Oliver Decl. Exh. 2 p. 2.

Later on October 2 (at 6:45 pm Pacific / 9:45 pm Eastern), Mr. Oliver filed the Omnibus Motion on behalf of Neomagic, by emailing the motion to Judge Stickman's chambers and plaintiffs' counsel.

On October 3, Mr. Oliver received a phone call and email from Mr. Ference seeking a settlement counter-offer.  Oliver Exh. 2 pp. 1-2.  Mr. Oliver responded shortly after midnight (i.e., 12:37am on October 4), informing plaintiffs' counsel that the case was "frivolous" and sanctionable, giving a brief explanation of the reasoning, and stating that the declarations submitted by plaintiffs' counsel were false.  *Id.*  Mr. Oliver also informed them that plaintiffs should dismiss the case with prejudice and pay all of Neomagic's attorneys fees for the matter.  *Id.*

On October 4, plaintiffs' filed a notice of dismissal under Rule 41.  In that document, plaintiffs falsely stated that "each party [was] to bear its own attorneys' fees, costs, and expenses."  Mr. Oliver appeared at the hearing on October 5, to clarify the record that Neomagic did not agree to bear its own fees, costs, or expenses.  *See* Hearing Transcript.

**I.      Venue Is Knowingly Improper**

Plaintiffs listed Neomagic's website at www.mercadomagico.com in schedule A to the Complaint.  *See* Complaint Schedule A at line 25.  Plaintiffs provided a partial screenshot of the same website (without text), showing that they accessed the main webpage at www.mercadomagico.com on May 4, 2020.  Ray Decl. Composite Exh. 1 at p. 256.

Neomagic operates the website at http://www.mercadomagico.com.  Peterson Decl. ¶3. Neomagic has operated this website for several years.  *Id.*  The front page of this website states "Launched as a division of NeoMagic Corp, MercadoMagico.com is an exciting and growing web destination for purchasing and selling products."  *Id.*  The front page of this website further states, "MercadoMagico is a division of NeoMagic Corporation (Stock Symbol:NMGC)."  *Id.*  The front page of this website further states, "Contact Us  830 Hillview Ct #138 Milpitas, CA-95035 United States (844) 854-6823."  *Id.*  Each of these statements has been on the front page of this website for more than a year.  *Id.*  Further, as noted in Neomagic's Motion to Dismiss, Neomagic is a Delaware

corporation with its corporate office at the above-listed address in Milpitas, CA.  Neomagic does not maintain a regular or established place of business in Pennsylvania.  *Id.* (Motion to Dismiss).

Both the corporation name and the contact information were prominently displayed on the website when Plaintiffs accessed the website and place an order on May 4, 2020.  *Compare* dates on Ray Decl. Exh. 1 pp. 256-259 *to* Peterson Decl. ¶3.  Despite this, Plaintiffs submitted a false affidavit that, "These Defendants use their respective Merchant Storefronts and User accounts to anonymously sell…"  Ference Decl. (ECF no. 13) ¶ 12.  Plaintiffs further submitted a false affidavit, stating, "…Plaintiffs have not been able to determine Defendants' exact location due to their concealed addresses." Ference Decl. (ECF No. 17) ¶9.  Plaintiffs further submitted a motion requesting and obtaining permission to perform service under a procedure authorized only for foreign defendants, despite Neomagic's open and unmistakable domestic nature.  *See* ECF No. 15 (Motion for an Order Authorizing Alternative Service … [Under Rule] 4(f)(3)).  Plaintiffs further submitted a motion referring to "the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies…"  ECF No. 10 (Memorandum in Support of Ex Parte Application for TRO) at p. 56.

Plaintiffs made multiple false statements about Neomagic being a foreign entity when its corporate status, publicly traded stock, and California address were all plainly displayed on webpages that Plaintiffs accessed.  In patent infringement cases, venue is only proper under 28 U.S.C. §1400(b) where the defendant resides or has a regular and established place of business.

**J.     Jurisdiction and Other Rule 12 Issues**

Plaintiffs alleged without support that Neomagic directed activities at this forum.  This is an unsupported attempt to manufacture personal jurisdiction.  Plaintiffs point only to a single Pennsylvania purchase directed to an address identical to that of plaintiffs' counsel.  Ray Decl. Composite Exh. 1 pp. 256-259.

As noted in Neomagic's Motion to Dismiss (pp. 7-8), the summons in this case was incomplete and without sufficient information to constitute proper process.

As noted in Neomagic's Motion to Dismiss (pp. 8-9), plaintiffs attempted to serve process under Fed. R. Civ. P. 4(f)(3), which is applicable only to foreign defendants.

Finally, to manufacture a basis to obtain ex parte orders, plaintiffs allege that "Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms…" Complaint ¶18.  In paragraph 19, plaintiffs' allege that "Defendants are currently targeting their infringing activities toward consumers…As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit."  *Id.* at ¶19.  These statements are not supported by evidence of the alleged fraud.

### K.    Improper Joinder

Plaintiffs alleged, without factual support, that Neomagic is involved in some vaguely identified "conspiracy."  Complaint ¶8.  This appears to be based on unsupported allegations that the Defendants are working together to manufacture and distribute products and that "the Infringing Products share similar characteristics including … colors, shapes, and sizes." *Id.*  However, the evidence of various defendants that was submitted by plaintiffs shows differently, and shows that these products were likely manufactured by different companies:



Ray Decl. (ECF No. 12) at pp. 13, 80, 92, 104, 106, 201.

Such allegations are insufficient for joinder under 35 U.S.C. §299, and serve to overburden the Court and avoid payment of filing fees for 39 defendants. *See, e.g., Richmond v. Lumisol Elec. Ltd.*, No. 13-1944 (MLC), 2014 U.S. Dist. LEXIS 90541, at *18-19 (D.N.J. July 3, 2014) (plaintiff "has placed an undue burden on the judiciary and the Clerk of the Court by seeking relief under only twelve docket numbers  [*19] and paying only twelve filing fees" for 80 defendants); *Reese v. Spring Nextel Corp.*, No. 2:13-cv-3811-ODW(PLAx), 2013 U.S. Dist. LEXIS 98635, at *4 (C.D. Cal. July 15, 2013) ("…even if the underlying infringing parts or service are identically sourced, there are other factors to consider before joining the defendants…").

## III.   LEGAL STANDARDS

### A.   Rule 54

Federal Rule of Civil Procedure Rule 54(d)1 states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs-other than attorney's fees—should be allowed to the prevailing party."

Federal Rule of Civil Procedure Rule 54(d)2 provides the requirements for a claim to be made for attorney fees:

> (2) Attorney's Fees.
>     (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.
>     (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:
>
>         (i)  be filed no later than 14 days after the entry of judgment;
>         (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>         (iii) state the amount sought or provide a fair estimate of it; and
>         (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

### B.   35 U.S.C. §285

The patent statute provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. §285.

An exceptional case is "simply one that stands out with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

1   unreasonable manner in which the case was litigated.  District Courts may determine whether a case is

2   'exceptional' in the case-by-case exercise of their discretion, considering the totality of the

3   circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).

4        The Supreme Court has said that "the touchstone of the prevailing party inquiry must be the

5   material alteration of the legal relationship of the parties.  This change must be marked by judicial

6   *imprimatur.*" *CRST Van Expedited, Inc. v. E.E.O.C.,* 136 S. Ct. 1642, 1646 (2016).  The Federal Circuit

7   has held that "defendants need not prevail on the merits to be classified as a 'prevailing party.'" *Rainiere*

8   *v. Microsoft Corp.,* 887 F.3d 1298, 1306 (Fed. Cir. 2018).

9        Attorneys' fees under 35 U.S.C. §285 have been awarded where "plaintiffs failed to conduct an

10  adequate investigation into infringement before filing suit." *ThermoLife Int'l LLC v. GNC Corp.,* 922 F.3d

11  1347, 1362 (Fed. Cir. 2019).  One consideration that the Federal Circuit has held is important to an

12  exceptional-case determination is whether the party seeking fees "provide[d] early, focused, and

13  supported notice of its belief that it was subjected to exceptional litigation behavior." *Stone Basket*

14  *Innovations, LLC v. Cook Med. LLC*, 992 F.3d 1175, 1181 (Fed. Cir. 2018).

15       Moreover, "[a] pattern of litigation abuses characterized by the repeated filing of patent

16  infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits

17  of one's claims, is relevant to a district court's determination under §285." *SFA Sys., LLC v. Newegg Inc.,*

18  793 F.3d 1344, 1350 (Fed. Cir. 2015).

19       **C.        15 U.S.C. §1117**

20       Under section 35(a) of the Lanham Act "the district court has authority to award attorneys' fees

21  to the prevailing party in certain trademark cases, but only if the case is an 'exceptional' case."  15

22  U.S.C. §1117(a); *J&J Snack Foods, Corp. v. Earthgrains Co.,* Civil Action No. 00-6230(JBS), 2003 U.S. Dist.

23  LEXIS 8040, *1 (D.N.J. May 9, 2003).  The Lanham Act fee provision is "identical" to §285 of the

24  Patent Act.  *Octane,* 134 S. Ct. at 1756.

25       The Third Circuit deems a case exceptional where either 1) "there is an unusual discrepancy in

26  the merits of the positions taken by the parties," or 2) "the losing party has litigated the case in an

27  unreasonable manner." *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 314 (3d Cir. 2014).

28

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

**D.      17 U.S.C. §505**

The copyright act provides that "the court in its discretion may allow the recovery of full costs

by or against any other party other than the United States or an officer thereof.  Except as otherwise

provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part

of the costs."  17 U.S.C. §505.

"In exercising its discretion to decide whether to award attorneys' fees, district courts are to

consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal

components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence." *Am. Bd. Of Internal Med. v. Von Muller,* 540 Fed. Appx. 103, 106-107

(3rd Cir. 2013) *quoting Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994).

**E.      Rule 11**

Federal Rule of Civil Procedure 11 provides in pertinent part:

> (b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) **Sanctions**.
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

The Supreme Court of the United States and the United States Court of Appeals for the Third

Circuit have developed a consistent jurisprudence as it pertains to Rule 11 Sanctions.  *Keister v. PPL

Corp.,* 318 F.R.D. 247, 255 (M.D. Pa 2015).  "It is now clear that the central purpose of Rule 11 is to

deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of

authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

A party may be sanctioned under Rule 11(b) for its "frivolous arguments regarding venue and service of process." *Khan v. Hemosphere Inc.,* Nos. 2019-1952, 2019-2394, 2020 U.S. App. LEXIS 25726, *19 (Fed. Cir. Aug. 13, 2020).  In the *Khan* case, the Federal circuit permitted Rule 11 sanctions based on "notice of intent to seek sanctions" rather than requiring that the Rule 11 motion be served.  *Id.* at *19-*20.

### F.       The Court's Inherent Power

District Courts have the inherent power to assess attorneys' fees against parties and counsel. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991) ("an assessment of attorney's fees is undoubtedly within a court's inherent power…"); *see also Ford v. Temple Hospital*, 790 F.2d 342, 346 (3rd Cir. 1986) ("The power of the court to assess attorneys' fees … cover[s] both litigants and their counsel."). Furthermore, a "court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46; *see also Hall v. Cole*, 412 U.S. 1, 5 (1973) (permitting fees for actions "in bad faith, vexatiously, wantonly, or for oppressive reasons").

The Federal Circuit (to whom this patent case would be appealed) "appl[ies] the law of the regional circuit…" *Walker v. Health Intern. Corp.*, 845 F.3d 1148, 1153 (Fed. Cir. 2017).  The Third Circuit notes that fees may be assessed "when [the] opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ford*, 790 F.2d at 346.

### G.       28 U.S.C. §1927

Section 1927 of Title 28 U.S.C. provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. §1927.

"[Section] 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so

in bad faith or by intentional misconduct. *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions,* 278 F.3d 175, 188 (3d Cir. 2002).

### H.     Pennsylvania Statute Title 42 Pa. C.S.A §2503

Pennsylvania has codified certain exceptions to the American Rule.  42 Pa. C.S.A §2503 (9) provides in pertinent part:

> The following participants shall be entitled to a reasonable fee as part of the taxable costs of the matter: …
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

The Pennsylvania Supreme Court has set forth the following tests:

> An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature.  An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance.  Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption.

*Thunberg v. Strause*, 545 Pa. 607, 615, 682 A.2d 295, 299 (Pa. 1996) (internal citations omitted).

### I.     Attorney Duty of Candor to the Court

"Rule 3.3(d) of the Pennsylvania Rules of Professional Conduct provides as follows: In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994)  "Even beyond the requirements of Rule 3.3(d), an attorney, as an officer of the Court, has an overarching duty of candor to the Court." *Id.* (considering whether the court should discipline lawyers or refer them to the state bar).

## IV.     ARGUMENT – ATTORNEYS FEES, COSTS, AND FEES SHOULD BE AWARDED

In many cases that come before the Courts where a party is seeking a sanction of attorneys' fees, a single aspect or small set of issues renders the case exceptional, vexatious, in bad faith, etc. such that fees are awarded.  In this case, virtually every aspect of the case falls into those categories of bad acts and litigation misconduct.  And plaintiffs, along with their attorneys, attempt to cover up such conduct by dismissing defendants who uncover the conduct.

Though this case lasted less than one month from the filing of the complaint to the date that Plaintiffs dismissed Neomagic (immediately after Neomagic had filed two strong motions to undo much of the prior action and rejected an extortive settlement proposal), the entire case is stained with the bad faith, unreasonableness, vexatious, and improper conduct (including false affidavits) of plaintiffs and their attorneys.  For these reasons, Neomagic asks the court for an order that will reimburse it for all of the reasonable attorneys' fees and costs that it incurred in this action.

There are multiple legal frameworks under which the Court can and should sanction both plaintiffs and their attorneys, including the Court's inherent power, 28 U.S.C. §1927, 35 U.S.C. §285, 15 U.S.C. §1117, 17 U.S.C. §505, 42 Pa. C.S.A. §2503, Fed. R. Civ. P. 11, and the attorneys' duty of candor to the Court.  Some of these frameworks (e.g., inherent power, 28 U.S.C. §1927, 42 Pa. C.S.A. §2503, duty of candor) require a finding of bad faith, vexatiousness, unreasonableness, or other circumstances, but do not require a finding that a party prevailed.  Other frameworks require a prevailing party (e.g., 35 U.S.C. §285, 15 U.S.C. §1117, 17 U.S.C. §505).  And Rule 11 requires a notice.

### A.      For The Few Frameworks Requiring a Prevailing Party, Neomagic is the Prevailing Party

As to those frameworks that require a prevailing party, courts have held (in certain circumstances) that where a plaintiff dismisses under Fed. R. Civ. P. 41(a), as happened in this case, that there might not be a prevailing party.  *See, e.g., O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC,* 955 F.3d 990, 993 (Fed. Cir. 2020).  However, Neomagic asserts that this case is different from such cases where no party prevailed.  Rather, in this case, plaintiffs seized over $300,000 from Neomagic's financial account, as described above.  And in the hearing on October 5, the Court extended the seizure order against all remaining defendants who were not dismissed.  Neomagic reversed this order and the seizure of its $300,000+ by filing motions that forced plaintiffs to dismiss not only the TRO, but the entire complaint against Neomagic.  This worked a material alteration of the legal relationship of the parties.  *CRST Van Expedited, Inc. v. EEOC,* 136 S. Ct. 1642, 1646 (2016) ("[T]he 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'  This change must be marked by 'judicial imprimatur.'").  Prior to such alteration, plaintiffs were using the seized funds to demand extortive settlement payments of $9,500 from Neomagic, despite having been

shown through filings that the case was baseless.  After the alteration, plaintiffs had no grounds to demand any settlement, because they had dismissed the case and released the funds.

Neomagic is the prevailing party.

### B.      Notice Under Rule 11

Sanctions under Rule 11 require a 21-day notice of the sanctions motion before filing.  This may be a requirement that cannot be waived.  However, in a recent case, the Federal Circuit permitted sanctions based upon a notice that sanctions would be sought, rather than a served Rule 11 motion.  *See Khan*, 2020 U.S. App. LEXIS 25726 at *19-*20.  In the *Khan* case, the notice was given more than 21 days before the Rule 11 motion was filed.  In this case, the entire involvement of Neomagic was less than 21 days from Complaint to dismissal.

However, Neomagic did give notice that the lawsuit was sanctionable as to Neomagic under Rule 11.  Oliver Decl. Exh. 2 (email of Oct. 4).  Plaintiffs dismissed shortly thereafter.  But Plaintiffs' false and improper filings as to Neomagic and multiple other defendants were not "withdrawn or appropriately corrected" after notice was given.  Fed. R. Civ. P. 11(c)(2).  Those filings remain on the docket unaltered and form the basis for an ongoing preliminary injunction.

Neomagic was required by Rule 54 to file this motion promptly, and could not wait until October 25 to ascertain whether plaintiffs and their attorneys would withdraw the sanctionable filings. But unless such filings are withdraw or appropriately corrected, Rule 11 sanctions should be entered.

Plaintiffs and their counsel should both be held liable for such sanctions.  Fed. R. Civ. P. 11(c)(1) (permitting sanctions against "any attorney, law firm, or party that violated the rule or is responsible for the violation").

### C.      Sanctions Should Be Entered

Virtually every aspect of this case, against both Neomagic and other defendants weighs in favor of sanctions.

### 1.      This Case Is Baseless and Brought in Bad Faith

Plaintiffs asserted four causes of action against 39 defendants.  These include alleged trademark infringement, alleged copyright infringement, alleged patent infringement, and alleged unfair

competition.  As to any and all of the sanctions frameworks that can result in sanctions based on frivolous litigation, bad faith, unreasonableness, or vexatiousness, the baseless nature of the case provides grounds for sanctions.

Trademark:  Plaintiffs falsely asserted that Neomagic infringes the alleged "Ultimate Ground Anchor" unregistered trademark, but Neomagic does not use the mark or any of the three individual words with respect to the accused product.  *See supra* § II A.  Approximately 2/3 of the evidence submitted against the other 30+ defendants lacked the word "ultimate" and could not infringe that mark.  *Id.*  While the above is enough to enter sanctions for a baseless case, Plaintiffs did not allege or provide any evidence of secondary meaning, which is required for assertion of an unregistered trademark.  Moreover, Plaintiffs urged the Court into entering further injunctive relief related to the alleged trademark *after* Neomagic filed papers showing that 2/3 of the evidence lacked any use of "ultimate."

Copyright:  Both the Complaint and Plaintiffs' correspondence falsely assert copyright infringement, with the Complaint referencing a "federally registered copyright."  *See supra* §II B.  Indeed, to bring a copyright infringement case, Plaintiffs must hold a registered copyright.  *Fourth Estate Public Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019).  Plaintiffs do not make any factual allegation supporting their copyright assertion.  It is baseless.

Patent:  Plaintiffs baselessly assert a patent that requires two or more threads.  *See supra* §II C.  Neomagic's product (and, indeed, every defendants' pictured products in the Ray Decl.) include only a single thread.  There is no manner in which such products could be found to meet a requirement that is not present.  *Id.*  And there is no basis for Plaintiffs to assert *ex parte* that they had a high likelihood of success on the merits to obtain injunctive relief.  Neomagic pointed this out in its omnibus motion on October 2, yet at the hearing on October 5, Plaintiffs' attorneys urged the Court to enter an injunction against all remaining defendants based on alleged patent infringement.  This conduct is baseless.

Unfair Competition:  Plaintiffs baselessly assert unfair competition based on use of their alleged trademark and "Plaintiffs' Works."  *See supra* §II D.  As noted above, Neomagic and about 2/3 of the defendants don't use the trademark.  As further noted, "Plaintiffs' Works" are limited to a few

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

photographs in which only one photograph shows more than the head of the screw and in which none of the photos are copyrighted.  As most of this claim is preempted by copyright and trademark law (briefed in Neomagic's Omnibus Motion of Oct. 2), the claim as to unfair competition is threadbare. And such a claim requires both that third parties associate the photos with plaintiffs and that Neomagic shipped something other than what was depicted.  Such allegations and evidence are not present here. This claim is baseless as well.

Other Aspects of the Case Are Baseless:  In addition to its baseless causes of action, plaintiffs made several other baseless assertions.  Plaintiffs asserted immediate and ongoing irreparable harm to obtain injunctive relief; such harm is absent where Neomagic stopped selling the product before the lawsuit and only sold a single unit of the product to Plaintiffs' attorneys for $4.99.  Further, Plaintiffs baselessly obtained a broadly overreaching and abusive TRO (and sought an injunction) that allowed seizure of $300,000 and Neomagic's (and other defendants') websites / livelihoods for a single sale of less than $5 that represents less than 1/1000 of one percent of the products listed for sale by Neomagic.  *See supra* §II F.  This is not only baseless, but it is an abuse of the ex parte procedure that the Court permitted.  Injunctions are to be tailored narrowly, not overbroadly.

In addition to this, the venue allegations were both fraudulent and baseless.  *See supra* §II I.  For U.S. companies, patent litigation venue lies where the company resides or has a place of business.  28 U.S.C. §1400.  Here, Plaintiffs falsely stated that this Delaware corporation with a California headquarters was a foreign company who could be sued in Pennsylvania.  *Id.*  This is blatantly false, because the precise webpage that Plaintiffs accessed has stated for over a year that the company is a publicly traded company and listed both the company name and the California address and phone number.

Further, Plaintiffs manufactured improper jurisdictional allegations, baselessly asserted fraud and conspiracy, and improperly joined almost 40 defendants that should have each been sued separately under 35 U.S.C. §299.  *See supra* §§II J and II K.

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

### 2.     This Case Was Litigated Vexatiously and Unreasonably

Plaintiffs entire litigation conduct in this case has been vexatious and unreasonable.  Plaintiffs filed a sealed case so that Neomagic could not locate the files even after its funds had been seized. Plaintiffs sought ex parte relief (without notice, seemingly in violation of Rule 65(b)(1)(B)) against a party whose California address is advertised prominently.  Plaintiffs obtained an overbroad and potentially devastating TRO that allowed seizure of accounts, websites, and even third-party accounts who had paid into the seized accounts.  *See supra* § II F.  The TRO could affect all of Neomagic's products, even though the relevant product is less than 1/1000th of one percent of such products.  *Id.* And the TRO was based on multiple false statements.  *Id.*

Plaintiffs put up a bond equivalent to less than $130 for each defendant, an amount plainly insufficient to compensate for any damages suffered by such defendants.  *Id.*  And plaintiffs seized $300,000 from Neomagic alone based on that bond.  *Id.*

In addition to this, Plaintiffs crafted a TRO that allowed them to serve it a week after seizing Neomagic's funds, and only a couple of days before Neomagic would be required to respond to the OSC.  *See supra* § II G.

Further, Plaintiffs obtained an alternate service order based on a provision for foreign companies and an oppressive discovery order requiring responses to broad-ranging and extensive discovery within two weeks.  *See* Orders re alternate service and expedited discovery.

Plaintiffs' overall litigation tactics were designed to foreclose Neomagic's ability to respond to this lawsuit while heaping on a maximum amount of harassment in doing so.  These are the type of tactics that give both attorneys and courts a bad name.

### 3.     Plaintiffs Attempted to Extort Settlement Based on Improperly Seized Moneys

Compounding their bad acts, plaintiffs and their attorneys attempted to extort a settlement based on having improperly seized $300,000 from Neomagic.  After Neomagic filed a motion to dismiss and verbally explained the baseless nature of plaintiffs' assertions, plaintiffs requested a settlement payment of $9,500 to have the seized funds released promptly.  *See supra* § II H.  Plaintiffs

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

suggested that this would be needed to have the funds released quickly rather than waiting for several days to regain access through the court process.

After Neomagic refused this demand, explained again that the case was sanctionable, and filed a second motion (its Omnibus Motion), Plaintiffs promptly dismissed the case pursuant to Rule 41.  *Id.*

This attempt at extortive tactics is further vexatious, baseless, and unreasonable.

### 4.    Based on the Foregoing, This Case is Sanctionable Under Numberous Frameworks

Plaintiffs entire litigation conduct in this case merits sanctions.

<u>Inherent Power</u>:  Under the Court's inherent power, attorneys fees can be assessed for bad faith, vexatious, wanton, or oppressive acts.  *See supra* § III F.  As noted in the preceding section and the fact discussion, each of these types of acts are present.  The Court should enter sanctions under its inherent power.

<u>28 U.S.C. §1927</u>:  Under §1927, attorneys fees can be assessed for (a) multiplying proceedings, (b) unreasonably and vexatiously, (c) increasing the cost, and (d) doing so in bad faith or by intential misconduct.  *See supra* § III C.  As noted in the preceding section and the fact discussion, each of factors a, b, and d are present.  The fee request below shows the excessive costs incurred based on this conduct.  Without the unreasonable and vexatious conduct, Neomagic could have reasonably engaged in discussion with plaintiffs' counsel and explained the facts without extensive analysis and briefing required to respond in two days to an OSC.  The Court should enter sanctions under its inherent power.

<u>42 Pa. C.S.A. §2503</u>:  Under section 2503, attorneys fees can be assessed for arbitrary, vexatious, or bad faith conduct.  *See supra* § III H.  As noted in the preceding section and the fact discussion, each of these types of acts are present.  The Court should enter sanctions under section 2503.

<u>35 U.S.C. §285, 15 U.S.C. §1117, 17 U.S.C. §505</u>:  Each of sections 285, 1117, and 505 provide statutorily for attorneys fees in exceptional cases for patent, trademark, and copyright infringement respectively.  *See supra* §§ III B, III C, III D.  As noted in the preceding section and the fact discussion, this case is exceptional with respect to each of patent, copyright, and trademark infringement.  The

29

prefiling investigation was flawed.  False and baseless assertions were made.  And the case was litigated in an abusive manner.  The Court should enter sanctions under each of these sections.

Fed. R. Civ. P. 11:  Under Rule 11, attorneys fees can be assessed for baseless and frivolous assertions.  *See supra* § III E.  As noted in the preceding section and the fact discussion, each of these types of acts are present.  The Court should enter sanctions under its inherent power.

Duty of Candor:  Under Professional Conduct Rule 3.3(d) and the overarching duty, attorneys have a duty of candor to the court that is strong in ex parte proceedings.  The Court can sanction violations of such duty through attorneys fees assessments.  *See supra* § III I.  As noted in the preceding section and the fact discussion, multiple false assertions and declarations were submitted in the ex parte proceedings.  The Court should enter sanctions for violation of the duty of candor.

## V.   AMOUNT AND REASONABLENESS OF FEES

As a result of the bad faith, misconduct, and vexatious tactics employed by Plaintiffs, and their established pattern of representative behavior such as set forth above, Neomagic requests its attorney fees and costs in the estimated amount of $18,525 for the preparation of the Motion to Dismiss, the Omnibus Motion, and preparation for the hearing on the Court's order to show cause.  In addition, Neomagic requests its attorneys' fees and costs in the amount of $21,685 to compensate Neomagic for the preparation of the instant motion for attorneys' fees and costs, and supporting filings.  Neomagic expects to revise this amount to account for any reply brief and hearing on this motion.  To date, the total fees and costs sought equal $40,210.  The amounts sought are supported by the Declaration of Andrew Oliver which establish the hourly rate and the hours worked by each attorney on this case on behalf of Neomagic.  Oliver Decl. ¶13; *see also* ¶¶ 5, 8, 11, 12.

Each of the attorneys that worked on the previous motions and the Motion for Attorneys' Fees and Costs are experienced and qualified for this work.  Oliver Dec. ¶¶3-4, 6-7, 9-10.  Moreover, Mr. Ting and Mr. Oliver did not overlap any portions of their work and worked collaboratively to prepare the motion to dismiss in the tight window necessitated by Plaintiff's conduct.  *See* Peterson Decl. ¶¶ 8, 9 (documents served on Sept. 29, attorneys retained Oct. 1, filings due Oct. 2).

1    The fees requested by Neomagic are reasonable.  Neomagic's PayPal account, containing over

2    $300,000 was frozen (Peterson Decl. ¶7), WITHOUT prior notice, due to the baseless, bad faith

3    allegations and sealed, ex parte proceeding against Neomagic in Plaintiffs' complaint, motion for TRO

4    and preliminary injunction, and supporting papers.  This includes the frivolous argument that

5    Neomagic is a foreign corporation, despite that information showing it is a publicly traded Delaware

6    Corporation with a head office in Milpitas California, readily available on the front page of its website

7    that Plaintiffs listed in their filings.  Peterson Decl. ¶3.  Moreover, Plaintiffs' had all the pleadings

8    sealed, but didn't provide any access to documents or notice to Neomagic for a week after seizing the

9    funds (Peterson Decl. ¶¶ 7, 8, Exhs. 1, 2), leaving Neomagic to scramble to find counsel and  respond

10   to the motion for preliminary injunction between Sept. 29 and Oct. 2.

11   In addition to the reasonable fees and costs sought herein for responding to the TRO and order

12   to show cause, Neomagic is entitled to fees and costs incurred in its efforts to seek sanctions through

13   the instant Motion (including reply and hearing) and request such fees herein.  The Third Circuit

14   provides, "(T)he time expended by attorneys in obtaining a reasonable fee is justifiably included in the

15   attorneys' fee application, and in the court's fee award."  *Bagby v. Beal*, 606 F.2d 411, 416 (3d Cir. 1979).

16   "In statutory fee cases, federal courts, including our own, have uniformly held that time spent in

17   establishing the entitlement to and amount of the fee is compensable."  *In re Nucorp Energy*, 764 F.2d

18   655, 659-60 (9th Cir. 1985).

19   Finally, the rates for Mr. Oliver ($500 an hour) and Mr. Ting ($450 an hour) are more than

20   reasonable given not only their experience in intellectual property litigation, but also well within the

21   range of what has been deemed reasonable compared to other attorneys in the field with similar

22   experiences.  For example, already this year, Judge Yvonne Gonzalez Rogers of the Northern District

23   of California found the billing rates of these attorneys reasonable in a separate action.  *International*

24   *Petroleum Products and Additives Company, Inc., v. Black Gold S.A.R.L.*, Case No. 19-CV-03004-YGR, ECF

25   No. 54 p. 7, (N.D. Cal. Feb. 18, 2020) (considering counsels' discounted rates for volume work, but

26   noting that counsels' rates were over $100 below normal rates for the area).  *See, also, In re Magsafe Apple*

27   *Power Adapter Litigation.,* 5:09-cv-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the

28

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

bay area, reasonable hourly rates for partners range from $560 to $800, for associates from $285-510[.]"). Counsels' rates are below the low end of reasonable rates cited by their local court. And Mr. DuMont is an attorney with a Pittsburgh firm that sets his rates according to the prevailing market in Pittsburgh.

Notably, rates should be compared to the prevailing rates for similar services (i.e., intellectual property litigation) of lawyers of reasonably comparable skill in the community in which the Court is located. Messrs. Oliver and Ting work in San Jose, California, approximately 8 miles away from Neomagic's headquarters, and are appropriately located to aid Neomagic. This Court likely draws attorneys from both the Pittsburgh and Philadelphia areas. While counsel could not find a direct analysis of the Pittsburgh area, the 2015 American Intellectual Property Law Association Report of the Economic Survey provided statistics for nationwide and Philadelphia rates for such intellectual property ("IP") attorneys. In 2015, the mean billable rate for Philadelphia IP attorneys was $510 per hour, the median rate was $480 per hour, and third quartile was $556 per hour. Oliver Decl. at Ex. 1, table I-25. Considering nationwide rates for lawyers with 15-24 years of experience, the mean rate was $468 per hour, the median rate was $483 per hour, and the third quartile rate was $515 per hour. *Id.* All of these rates were compiled five years ago and would likely be higher in a more recent survey. Counsels' rates are very close to the 2015 mean and median, and don't exceed the third quartile for both Philadelphia and nationwide IP attorney. This is the very definition of reasonable in light of the experience needed in patent, trademark, copyright, and unfair competition to litigate this case.

Given the concerted effort needed to respond to Plaintiffs' filings of over 500 pages and multiple motions, coupled with Plaintiffs' belated service that necessitated an all-nighter to prepare motions, both the hourly rates and numbers of hours worked by Neomagic's counsel were reasonable.

## VI.    REQUEST TO UNSEAL CASE

Neomagic requests that the Court promptly unseal the case. The preliminary injunction entered at ECF No. 34 p. 11 directs that the case be unsealed. However, Neomagic's counsel is unable to obtain access to the docket or any filed documents outside of the limited subset made available on plaintiffs' attorneys' website. Thus, Neomagic is largely unable to confirm the proper docket numbers.

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

Further, in the event that any portion of this motion is denied, Neomagic will likely need access to the filings for any appeals taken from such decision.

## VII.   ALTERNATIVE REQUEST TO TAKE DISCOVERY

If this Court is not inclined to grant Neomagic's request for attorneys' fees and costs, Neomagic respectfully requests this court to grant Neomagic discovery in order to uncover the what actions Plaintiffs and/or its attorneys conducted in its pre-filing investigation in this case and to uncover their pattern of vexations, abusive, and frivolous litigation conduct. As explained above, Plaintiffs and their attorneys have, at the very least in this action, made false representations to the Court in order to freeze PayPal accounts of allegedly "foreign" corporations and seek extortive settlements and/or hope for a default judgment. Plaintiffs have referred to this litigation as being similar to many other cases where such conduct may also exist with respect to either plaintiffs or their attorneys. *See, e.g.,* ECF No. 10 (Memorandum re Ex Parte Application for TRO) at p. 59 (listing several cases). And Plaintiffs' counsel informed Neomagic that they have filed many similar cases in this Court.

The Complaint as well as the Motion for TRO and a Preliminary Injunction are fundamentally baseless and borderline fraudulent. Moreover, as set forth above, Courts have sanctioned parties and their attorneys for engaging in patterns of vexatious, abusive, and frivolous litigation conduct. *SFA Sys., LLC*, 793 F.3d at 1350.

Thus, to the extent the Court denies this motion for fees and costs, Neomagic respectfully requests that discovery by allowed to uncover additional facts to expose Plaintiffs and their counsels' patterns of inappropriate litigation conduct, to further support Defendant Neomagic's Motion for Attorneys' Fees and Costs.

## VIII.   CONCLUSION

For the foregoing reasons, the Court should declare the case exceptional and find the conduct of plaintiffs and their attorneys in bad faith, vexatious, and unreasonable. The Court should further find that the hourly billing rates and the amount of hours expended by Neomagic's attorneys were reasonable. Upon such findings, the Court should award attorneys' fees and costs in an amount to be finalized after a revised calculation to be submitted in a reply brief.

1

2

3

4   Dated: October 19, 2020

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**THE WEBB LAW FIRM**

s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr. (PA ID No. 70793)
David A. DuMont (PA ID No. 205858)
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
ddumont@webblaw.com

*and*

Andrew T. Oliver (CA ID No. 226098)
(*Motion for PHV Pending*)
Michael C. Ting (CA DI No. 247610)
(*Motion for PHV Forthcoming*)
**AMIN, TUROCY & WATSON LLP**
160 West Santa Clara Street, Suite 975
San Jose, CA 95113
650.393.0634
aoliver@atwiplaw.com
mting@atwiplaw.com

*Attorneys for Defendant Neomagic
Corporation*

NeoMagic's Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October, 2020, I filed the foregoing **DEFENDANT NEOMAGIC CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS** under seal with the Clerk of the Court.  A true and correct copy of same was also served, via email, on counsel for Plaintiffs.


**THE WEBB LAW FIRM**


s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr.