Kent E. Baldauf, Jr.
PA ID No. 70793
David DuMont
PA ID No. 205858
The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
ddumont@webblaw.com

Andrew T. Oliver
Cal Bar No. 226098 (pro hac vice)
Michael C. Ting
Cal Bar No. 247610 (pro hac vice motion expected)
AMIN, TUROCY & WATSON LLP
160 West Santa Clara Street, Suite 975
San Jose, CA  95113
Telephone: 650-393-0634
aoliver@ATWiplaw.com
mting@ATWiplaw.com

Attorneys for Defendant
NeoMagicCorporation

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORGE DESIGN GROUP, LLC, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>SYARME, *et al.*,<br><br>  Defendants. | Civil Action No. 2:20-CV-01384-WSS<br><br>**Defendant Neomagic Corporation's Reply In Support of Motion for Attorneys' Fees** |

# Contents

I. INTRODUCTION ........................................................................................................... 4

II. PLAINTIFFS' IMPROPER EXPERT REPORT FURTHER ILLUSTRATES WHY THE PATENT INFRINGEMENT CLAIM IS BASELESS ...................................................................................................................... 9

III. PLAINTIFFS ARGUMENTS ABOUT AMAZON, WALMART, ALIEXPRESS, AND OTHERS ARE IRRELEVANT ....................................... 11

IV. PLAINTIFFS CONTINUE TO MISREPRESENT THE FACTS REGARDING NEOMAGIC ........................................................................... 13

V. PLAINTIFFS MISREPRESENT THE MEET-AND-CONFER PROCESS .................. 14

VI. NEOMAGIC DID NOT RECEIVE NOTICE UNTIL THREE DAYS BEFORE OSC SUBMISSIONS WERE REQUIRED ...................................... 14

VII. NEOMAGIC COMPLIED WITH RULE 54 ................................................................ 15

VIII. NEOMAGIC REQUESTS THE ADDITIONAL FEES INCURRED IN CONNECTION WITH THE MOTION FOR ATTORNEYS' FEES SINCE OCTOBER 20 ................................................................................................. 15

IX. CONCLUSION ............................................................................................................. 16

## Table of Authorities

**Cases**

*ARP Wave, Ltd. Liab. Co. v. Salpeter*, 364 F. Supp. 3d 990 (D. Minn. 2019) .......................... 7

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 U.S. Dist. LEXIS 76156 (D. Mass. Apr. 30, 2020) ........................................................... 7

*Cal. Expanded Metal Prods. Co. v. Klein*, No. CV 18-00242 DDP (MRWx), 2018 U.S. Dist. LEXIS 118254 (C.D. Cal. Apr. 30, 2018) ............................................. 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041 (2003) ............................................................................................................................. 6

*E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374 (Fed. Cir. 2009) ........................... 8

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 U.S. Dist. LEXIS 175399 (S.D.N.Y. Oct. 20, 2017) ............................................... 7

*NextEngine Inc. v. NextEngine, Inc.*, No. 17-CV-9785 (JPO), 2019 U.S. Dist. LEXIS 584 (S.D.N.Y. Jan. 2, 2019) ............................................................................. 7

*Nissei ASB Co. v. R&D Tool & Eng'g Co.*, No. 1:18-cv-553-TCB, 2018 U.S. Dist. LEXIS 230469 (N.D. Ga. Nov. 9, 2018) ................................................................. 7

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). ................. 7

*Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. H-17-3258, 2018 U.S. Dist. LEXIS 64600 (S.D. Tex. Apr. 17, 2018) ............................................................................. 7

**Statutes**

35 U.S.C. §299 ................................................................................................................ 8

*RX Billing Servs. v. Fazio*, 161 A.3d 381 (Pa. Super. Ct. 2017) .......................................... 12, 13

**Rules**

Fed. R. Civ. P. 54(d)(2)(B)(i) ............................................................................................ 15

Neomagic Reply in Support of Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

Case 2:20-cv-01384-WSS   Document 68   Filed 11/17/20   Page 4 of 17

Defendant Neomagic Corporation (doing business as www.mercadomagic.com) ("Defendant" or "Neomagic") submits this Reply in support of its Motion for Attorneys' Fees (ECF Nos. 42 and 43). This reply is Supported by the Supplemental Declaration of Andrew T. Oliver, filed herewith.

## I.      Introduction

Plaintiffs[1] are correct that counterfeiting is a serious problem facing our country and that it endangers small companies such as Neomagic and Plaintiffs when it actually exists.  Indeed, President Trump wrote,

> Counterfeit trafficking impairs economic competitiveness by harming United States intellectual property rights holders and diminishing the reputations and trustworthiness of online markets; cheats consumers and poses risks to their health and safety; and may threaten national security and public safety …[2]

As noted by the President, such counterfeiting harms both rights holders and "online markets" such as the market operated by Neomagic at the www.mercadomagico.com website, where over 100,000 products are listed for sale on a typical day.  (ECF No. 44 ¶ 3).

However, such counterfeiting is not what is at issue here.  What is at issue here is the right to sell goods and to use advertisements that are <u>not</u> protected by legitimate intellectual property.  What is further at issue here is whether a plaintiff can unilaterally expand its intellectual property rights without basis and attempt to monopolize part of the free market.  What is at issue is whether a plaintiff can bring a frivolous suit and secure an oppressive *ex parte* restraining order against a defendant merely because the plaintiff does not like free market competition.

At issue are Plaintiffs' bad faith, Plaintiffs' vexatious conduct, and Plaintiffs' litigation misconduct.

As Ronald Reagan's economic advisor Milton Friedman is attributed with saying, "Underlying most arguments against the free market is a lack of belief in freedom itself."  The Plaintiffs and their attorneys in this case have demonstrated their lack of belief in the free market and the freedom it provides.  Rather, they are seeking to unilaterally impose government regulation where such regulation

---

[1] Plaintiffs Gorge Design Group, LLC and Kirby Erdely are referred to collectively as "Plaintiffs" or "Gorge."
[2] Memorandum on Combating Trafficking in Counterfeit and Pirated Goods, issued April 3, 2019, available at https://www.whitehouse.gov/presidential-actions/memorandum-combating-trafficking-counterfeit-pirated-goods/ <<last viewed November 2020>>.

4

does not belong, and to use the Court as an activist tool to extend those regulations beyond what Congress intended.  This should not be permitted and, instead, should be deterred.  This lawsuit as to Neomagic (a) was baseless (i.e., in bad faith), (b) litigated vexatiously, and (c) litigated with misconduct by both counsel and Plaintiffs.  And they have doubled-down on that misconduct by submitting further incorrect information to the Court in their opposition brief.  An appropriate sanction of reasonable attorneys' fees can begin to deter such acts.

Upon reading Plaintiffs' brief (ECF No. 54), it becomes clear that Plaintiff has no legitimate argument to show that its claims against Neomagic have any basis in law or fact.  Instead, Plaintiffs and their attorneys primarily focus on nebulous counterfeiting done through Amazon, Shopify, and others, without addressing the facts regarding Neomagic's own independent marketplace that is not part of Amazon, Shopify, or those others.  The facts of this case demonstrate that the case was brought in bad faith.

Trademark:  Plaintiffs asserted an alleged common law trademark ("Ultimate Ground Anchor") that Neomagic never used.  In fact, Neomagic did not use any of the words "ultimate," "ground," or "anchor."  And the alleged mark does not even have the required secondary meaning for assertion of an unregistered mark.  Plaintiffs' trademark infringement claims against Neomagic and many of the other defendants who didn't use the mark are entirely in bad faith.

Copyright:  Plaintiffs asserted a non-existent copyright, and now claim that they did not assert copyright infringement.  In Plaintiffs' letter to Neomagic, they wrote that their lawsuit alleged "that you engaged in … copyright infringement …"  (ECF No. 44-2).  Plaintiffs' complaint states, "… Defendants will continue … infringing Plaintiffs' federally registered copyright …"  (ECF No. 2-1 ¶19).  And Plaintiffs' ex parte motion papers state, "In this case, Defendants' blatant violations of … copyright laws warrant an *ex parte* order restraining …"  (ECF No. 7-7 p. 1).  Now, when called to account, Plaintiffs argue, "Defendant even discusses non-existent claims for Copyright."  (ECF No. 54 p. 16 n. 4).  If these copyright claims were non-existent, why did Plaintiff assert them in (1) correspondence, (2) the complaint, and (3) the *ex parte* motion papers on which the Court replied?  The

5

answer: Plaintiffs and their attorneys were caught in a bad faith assertion of a non-existent copyright. Plaintiffs' copyright claims are entirely frivolous and in bad faith.

<u>Unfair Competition</u>: Plaintiffs asserted non-existent unfair competition. Plaintiffs' attempted to defend their assertions by arguing that Neomagic used Plaintiffs' photographs. ECF 54 p. 17. To establish this unfair competition, Plaintiffs would need to show that Neomagic sold an inferior product; but the only sale of the product was to Plaintiffs' attorneys, yet they did not submit any evidence that the product was inferior or that it was different in any way from Plaintiffs' own product.

Second, state law unfair competition claims related to photographs are preempted by federal law. (*See, e.g.,* ECF No. 28 p. 13). And regarding Lanham Act §43 unfair competition, there can be no unfair competition in using uncopyrighted photographs unless the Plaintiffs show that the photographs have secondary meaning that associates the photos with Plaintiffs. Plaintiffs seek to elicit the Court's sympathy by arguing that these photographs were taken by a plaintiff and his mother; but such allegations have no bearing on whether the use of the photographs is permitted by law. As the Supreme Court stated, "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."[3] The Supreme Court specifically cautioned against the type of judicial activism that Plaintiffs seek from this Court: "[I]n construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright."[4] Without improper judicial extension of the laws, Plaintiffs unfair competition claims are also made in bad faith.

<u>Patent</u>: While Plaintiffs' improper patent assertions are addressed more fully below, it is worth noting that they are such poor accusations that Plaintiffs apparently could not find a mechanical engineer willing to provide an infringement opinion, but instead retained a patent attorney to provide an opinion that would be rejected under *Daubert* and Fed. R. Evid. 702. Plaintiffs' patent infringement claims are in bad faith as further demonstrated below.

<u>Misconduct and Vexatiousness Issues</u>: The fact that Plaintiffs dismissed their entire Complaint against Neomagic after being served with a Rule 12 motion should demonstrate the baselessness of the

---

[3] *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33, 123 S. Ct. 2041, 2048 (2003)
[4] *Id.*

6

Neomagic Reply in Support of Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

Complaint. Yet despite this, Plaintiffs now argue that "Service, Jurisdiction, Venue, and Joinder are Appropriate." (ECF No. 54 p. 23). And Plaintiffs argue that Neomagic was "second guessing the Court." *Id.* Plaintiffs are twisting Neomagic's arguments. Neomagic did not argue that the Court failed, but rather that Plaintiffs made false, fraudulent, and baseless allegations to secure rulings by this Court. (ECF No. 43 p. 27). These demonstrate bad faith, misconduct, and vexatiousness. The Court did not act improperly; rather, Plaintiffs false statements caused the Court to enter overreaching orders by relying on Plaintiffs' attorneys to be honest when they were not. The Court is certainly entitled to rely upon the sworn affidavits of counsel. And in this instance, those affidavits were false, demonstrating misconduct and demonstrating vexatiousness.

Plaintiff attempts to save its improperly manufactured jurisdiction by citing a decision in *Talisman Designs*. ECF No. 54 p. 23. But that decision construes Rule 4 as it applies to foreign companies under section (k)(2), and is unrelated to a Delaware corporation with California headquarters. The only alleged personal jurisdiction is based on a product purchase by Plaintiffs' lawyers, not a good faith argument that personal jurisdiction is proper.

Plaintiff further argue that venue is appropriate under the *Hsin Ten v. Clark* opinion, decided in 2000. ECF No. 54 p. 24. But this 20-year-old decision was superseded by the Supreme Court's *TC Heartland* opinion in 2017.[5] Every opinion that Neomagic could find that issued since *TC Heartland* has rejected *Hsin Ten* and refused to apply pendent jurisdiction to patent claims unless the Court has original venue over a separate patent claim. *See, e.g., ARP Wave, Ltd. Liab. Co. v. Salpeter*, 364 F. Supp. 3d 990, 997 (D. Minn. 2019) ("Every court that has addressed the issue following TC Heartland … has found that there is no 'pendent' venue over a patent-infringement claim unless there is 'original' venue over a separate patent-infringement claim under § 1400(b).").[6] Venue is not even arguably proper here.

---

[5] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).
[6] *See also NextEngine Inc. v. NextEngine, Inc.*, No. 17-CV-9785 (JPO), 2019 U.S. Dist. LEXIS 584, at *8-9 (S.D.N.Y. Jan. 2, 2019); *Nissei ASB Co. v. R&D Tool & Eng'g Co.*, No. 1:18-cv-553-TCB, 2018 U.S. Dist. LEXIS 230469, at *10-11 (N.D. Ga. Nov. 9, 2018); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 U.S. Dist. LEXIS 76156, at *27-28 (D. Mass. Apr. 30, 2020); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 U.S. Dist. LEXIS 175399, at *21 (S.D.N.Y. Oct. 20, 2017); *Cal. Expanded Metal Prods. Co. v. Klein*, No. CV 18-00242 DDP (MRWx), 2018 U.S. Dist. LEXIS 118254, at *7-8 (C.D. Cal. Apr. 30, 2018); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. H-17-3258, 2018 U.S. Dist. LEXIS 64600, at *9 (S.D. Tex. Apr. 17, 2018).

(As a short aside: Neomagic notes that this is not the only instance in which Plaintiffs have cited outdated authority that contradicts current authority. See, e.g., ECF 28 p. 13 (noting that Plaintiffs' 1954, 1967, 1976, and 1978 case law was out of date in view of a 2003 Supreme Court opinion). The Federal Circuit has looked unfavorably on misrepresentation of legal standards when issuing sanctions against counsel. *E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374, 1379 (Fed. Cir. 2009).)

Plaintiffs attempt to defend improper joinder by alleging the existence of a publication about the lawsuit that is entirely unrelated to Neomagic. ECF No. 54 p. 25. Nothing in this publication or Defendants' other purported evidence suggests that Neomagic (a U.S. corporation) coordinated or cooperated with any of the allegedly-Chinese defendants. Further, Plaintiffs cite to Fed. R. Civ. P. 20 regarding joinder (ECF No. 54 p. 25), but fail to address the improper joinder under stricter and mandatory requirements of 35 U.S.C. §299 that was raised by Neomagic. *See* ECF No. 43 p. 19, lines 1-8. And the *Bose* and *United Mine Workers* cases cited by Plaintiffs also have no relationship to proper joinder under 35 U.S.C. §299.[7] Section 299 imposes requirements beyond the requirements of Rule 20 that Plaintiffs cannot meet. It is apparent that joinder was improper.

Plaintiffs defense of the alleged irreparable harm supporting the TRO is even weaker. ECF No. 54 pp. 18-19. Plaintiffs cite generally to their filings at ECF Nos. 15-16. *Id.* But Plaintiffs do not show any harm related to Neomagic that would merit injunctive relief against Neomagic. In fact, even if one puts aside the baseless claims for the sake of argument, the evidence submitted by Plaintiffs was collected in May 2020, four months before the lawsuit was filed. ECF No. 12-11 p. 20 (date stamp). And the product listing allegedly causing the harm had been removed before the lawsuit was filed. *See,*

---

[7] On November 11, Plaintiffs filed a brief citing additional authority regarding a joinder ruling in a patent case. ECF No. 62. The cited opinion ruled on joinder without any consideration or mention of 35 U.S.C. §299. ECF No. 62-2. And the "additional briefing" referenced in ECF No. 62 never made any mention or analysis of 35 U.S.C. §299. *See generally* ECF No. 24, filed Oct. 21, 2020, in case no. 1:20-cv-5972 in the U.S. Dist. Ct. for the N.D. Ill. ("Plaintiff's Memorandum Establishing That Joinder is Proper"). It should not be surprising that Judge Valderrama failed to consider the mandatory patent joinder statute when, as in this case, the plaintiff did not alert a recently-appointed judge to that statute. This hearkens to Neomagic's reference to the attorneys' duty of candor to the Court in an ex parte proceeding, professional conduct rule 3.3(d). *See* ECF No. 43 p. 23. In this case, as in the case cited by Plaintiffs, counsel did not bring the Court's attention to the controlling statute regarding joinder.

*e.g.,* ECF No. 44 ¶6. Plaintiffs had no basis to seek injunctive relief or seize funds or other assets where they could not even arguably show ongoing harm from Neomagic.

## II. Plaintiffs' Improper Expert Report Further Illustrates Why the Patent Infringement Claim is Baseless

While Neomagic has moved to strike the improper opinion testimony of Mr. Mesiti regarding alleged infringement (ECF Nos. 63-64), the purported analysis he provided is useful in showing the bad faith nature of the position taken by Plaintiffs. As the Court recalls, the key claim term demonstrating that infringement is impossible is the term requiring a "plurality of threads" (i.e., two or more threads). Mr. Mesiti provides a photo of the accused product that demonstrates the presence of a single thread, reproduced (below-left) in color from ECF No. 56 p. 4. As this single thread wraps around the cylinder of the screw, it passes both in front of and behind the cylinder. As viewed in a modified version of this photo (below-right), the angle of the thread behind the cylinder is the same as the angle in front of the cylinder. This is demonstrated below by two green lines at the lower portion of the image, showing the angle of the thread passing in front of the cylinder. To show the angle behind the cylinder, those lines were mirrored and colored black. Four sets of such lines are at the top of the modified photo. This illustration demonstrates that the pictured product actually does have a single thread wrapping around the cylinder multiple times.

| **Photo from ECF No. 56 p. 4** | **Modification of Photo from ECF No. 56 p. 4** |
|---|---|
| | |

1    Mr. Mesiti then relies on images from the patent, claiming that FIG. 3 and FIG. 4 show "a
2 continuous helix similar to a single start screw." ECF No. 56 p. 7.  However, while the angle of FIGS.
3 3 and 4 is not a straight-on image, applying the same type of analysis (below-left) demonstrates that
4 FIG. 3 shows a screw with two threads (as claimed).  In this analysis, however, due to the black-and-
5 white line drawing in the patent figure, green and red lines are used, and only a single red line is used in
6 each instance.  As can be seen, there are two different threads, which have been highlighted with yellow
7 and blue to illustrate the contrast.  As is plain, there are two different helical threads in this image, not
8 one.  It is not similar to a single-start screw, but it is a double-start screw, consistent with the claims
9 that require a "plurality of threads."  Notably, it is easily discernable that the blue and yellow
10 highlighting showing the thread passing behind the cylinder is disposed at the same angle as the red
11 lines.  As can be seen by comparison to the single-start and
12 double-start screws illustrated (below-right), even the angles of
13 the illustration in FIG. 3 are the more-steeply angled threads of a
14 dual-start screw than the more moderate angles of a single-start
15 screw.

FIG. 3

**Variations of Helical Screw Threads**
- A helical screw thread can consist of more than two helices
- A two start screw thread has four helices
- A three start would have six helices, etc

Single Start      Double Start

1  Rather than showing infringement, Plaintiffs' improper opinion testimony by a patent attorney
2  demonstrates the bad faith and baseless nature of the infringement allegation.  The photo of the
3  accused products is akin to the single helix (item (a) below), while the patent claims illustrated in FIG. 3
4  of the patent are akin to the double helix (item (b) below).  The claims require multiple helixes (e.g.,
5  double-, triple- (item (c) below), or quadruple-, etc.), while the product has only a single helix.  It cannot
6  infringe the asserted patent.



### III. Plaintiffs Arguments About Amazon, Walmart, Aliexpress, And Others Are Irrelevant

Strangely, Plaintiffs wrote about 10 pages of briefing (ECF No. 54 pp. 3-13) about the "common counterfeiting scenario" and Plaintiffs' business origins, without addressing anything relevant to the issue at hand: bad faith litigation, vexatious tactics, and litigation misconduct.  This background information on counterfeiting is irrelevant to this motion, and Neomagic has moved to strike it as such.

Even if counterfeiting is a scourge to U.S. businesses such as Neomagic and Plaintiffs, that does not justify bringing a bad faith lawsuit, seeking vexatious relief, or engaging in litigation misconduct.  In most instances, merely responding to a patent infringement complaint costs upwards of $5,000 or

$10,000. In this case, Plaintiffs sought to vexatiously increase such costs by filing numerous motions and securing onerous injunctive relief, onerous and expedited discovery, onerous service rulings (which permitted seizure of monies and property before even attempting notice in contradiction to Fed. R. Civ. P. 65), and an onerous sealing order that blocked defendants from even seeing the filings in the case until the Plaintiffs decided to give access to the papers three days before the show cause deadline. Responding to such proceedings on an expedited basis is much more expensive than having a normal period to respond to a complaint.

In this case, it is not Neomagic who is the bad actor, it is Plaintiffs and their counsel. Plaintiffs improperly swept Neomagic into their lawsuit baselessly, and then when confronted with their misconduct, they doubled-down by demanding $9,500 to release improperly seized funds in excess of $300,000. They attempted to cripple a legitimate business to extort an excessive settlement[8] after being informed that a single unit of the product was sold for less than $5, and that the product listing had been removed before suit was filed.[9] Defendant Banggood faced largely similar circumstances. *See sealed* ECF No. 35 pp. 5-6.

While counterfeiting is bad, both "abuse of process" and "wrongful use of civil process" are torts in Pennsylvania. *See RX Billing Servs. v. Fazio*, 161 A.3d 381 (Pa. Super. Ct. 2017) ("To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."); *id.* ("The tort of wrongful use of civil process as codified in the Dragonetti Act provides: (a) Elements of action. A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the

---

[8] Even if one unreasonably assumed both infringement and willful infringement, patent infringement damages for lost profits would not exceed 3X the lost profits, i.e., less than $100. And unfair competition damages would be similarly limited. So $9,500 was a plainly extortive demand.
[9] In the brief, Plaintiffs state incorrectly that "Defendant never [informed Plaintiff] … how many of the goods it sold in total." ECF No. 54 p. 23. This is incorrect. Plaintiffs were informed. *See* Supp. Oliver Decl. ¶26; *see also* ECF No. 45-2 p. 2 (email referencing "…a single unit of sales which was in fact the sale to your firm.").

12

claim in which proceedings are based; and (2) The proceedings have terminated in favor of the person against whom they are brought. 42 Pa.C.S. § 8351.").

Indeed, "wrongful use of civil process" is a tort that "has been characterized as a form of extortion or coercion to obtain an advantage collateral to the proceeding itself." *Id.* If demanding a settlement payment of $9,500 to *release seized funds* after being informed of a single $5 sale of a no-longer-listed product is anything other than "extortion or coercion to obtain an advantage collateral to the proceeding", it is difficult to imagine what would constitute such torts.

Yet, while Neomagic might have causes of action against Plaintiffs and their counsel for such torts, it will be much more efficient for the Court to enter sanctions against Plaintiffs and counsel in this proceeding, in an attempt to partially fix the damage done to Neomagic.

### IV.  Plaintiffs Continue to Misrepresent The Facts Regarding Neomagic

Neomagic moved to strike the unsupported hearsay portions of Mr. Erdeley's declaration that appear to be falsified. But in the event that the Court considers them, Neomagic notes that the sworn declaration of Neomagic employee Mr. Peterson establishes that Neomagic sold only a single unit of the accused product, and that the sole sale was shipped to the same address as Plaintiffs' counsel's law firm. ECF No. 44 ¶¶5-6. This sale and address matches that provided by Plaintiffs when they filed the lawsuit (down to the idiosyncratic repetition of the suite number). ECF No. 12-11 p. 22.

Despite this, Mr. Erdeley now offers unsupported hearsay that an unidentified customer allegedly contacted him to complain about a product from "Mercado Magico." ECF No. 55 ¶ 4. Mr. Erdeley does not identify the customer, does not identify how he was contacted (email, phone, letter, etc.), does not provide a date, and does not provide any details that could establish the veracity. This hearsay is not only unsupported, it directly contradicts the sworn facts demonstrating that Plaintiffs' attorneys were the first and only buyer to purchase this product.

It is unclear why Plaintiffs feel the necessity to put such statements in the record, but it demonstrates that Plaintiffs and their attorneys are not yet finished with their litigation misconduct.

Neomagic Reply in Support of Motion for Attorneys' Fees
Civil Action No. 2:20-cv-01384-WSS

### V.   Plaintiffs Misrepresent The Meet-And-Confer Process

Plaintiffs continue misrepresenting facts, stating that telephone calls between counsel occurred on three days (Oct. 2, 3, 4) and that Neomagic's counsel "refused to discuss anything other than a demand to be dismissed and for Plaintiffs to pay all costs." ECF No. 54 pp. 3, 22.  Both are false.  On October 2, Neomagic responded to the order to show cause by filing a motion to dismiss.  ECF 45 ¶16.  Shortly after filing, Messrs. Ference and Malkin called Mr. Oliver and asked for a settlement offer.  *Id.*  Mr. Oliver explained why each of the causes of action was baseless, explained that only a single product was sold, explained that Plaintiffs should dismiss Neomagic and offer to pay its attorneys fees.  *Id.*  Shortly after that, Mr. Malkin telephoned Mr. Oliver and requested a settlement payment of $9,500 because, in Mr. Malkin's explanation, Neomagic should be willing to pay that to have its financial account released.  *Id.*  Mr. Oliver stated that Mr. Oliver would inform Neomagic of the offer, but that he would advise Neomagic not to accept the extortive offer.  *Id.*  These conversations occurred on October 2.

No further conversations occurred prior to dismissal of the case.  On October 3, Mr. Ference left a voicemail and email asking for a further discussion and counteroffer.  *See* ECF No. 45-2 p. 3 (email stating "I just call you and left a voicemail message.").  Shortly after midnight on October 4, Mr. Oliver responded by email and explained again why the case was baseless and sanctionable.  *Id.* at p. 2.  That same day, Sunday October 4, Mr. Malkin wrote an email informing Mr. Oliver that a voluntary dismissal of Neomagic had been filed.  Supp. Oliver Decl ¶25.

It is unclear why Plaintiffs are attempting to further engage in litigation misconduct by falsifying the record, but Neomagic made clear at every point why the case was baseless and sanctionable.

### VI.   Neomagic Did Not Receive Notice Until Three Days Before OSC Submissions Were Required

Plaintiffs attempt to deflect its culpability by alleging multiple times that Neomagic had notice of the lawsuit on September 23.  ECF No. 54 pp. 3, 13, 15.  In fact, Neomagic did not receive anything approaching adequate notice until September 29, only 3 business days before the submissions responsive to the OSC were required, and was not able to retain counsel until after that.  ECF No. 44-

14

2. (Counsel could not properly check for ethical conflicts until counsel learned the actual identities of the parties to the lawsuit.)

On September 23, Neomagic received a notice from Paypal that its account (containing over $300,000) was frozen due to a lawsuit by plaintiff "Ultimate Ground Anchor" and that it should contact plaintiff's representative at an incorrect email address "anti-counerfeiting@ferencelaw.com" (note: misspelling). ECF No. 44-1. Email to this account is returned as "undeliverable". Oliver Decl. ¶24. A civil action number was provided, but looking up the sealed case on PACER revealed "Sealed v. Sealed", which was no help in providing notice.

In fact, while Neomagic knew its account was frozen, it was forced to wait helplessly for six days until Plaintiff deigned that it wanted to send notice of the lawsuit and OSC. This abusive tactic is merely one of the types of litigation misconduct / vexatious litigation making sanctions appropriate here.

## VII.  NeoMagic Complied With Rule 54

Plaintiffs frivolously argue that the motion for attorneys' fees was not timely. Rule 54 provides that such a motion must be filed "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). No judgment has been entered, so the motion is not late.

Even if the Rule 41 dismissal was deemed to be judgment (which Plaintiffs argued strenuously against), it was "entered" in the docket on October 6. *See* docket entry for ECF No. 31. The motion for attorneys' fees was transmitted by email to the Court on October 19, because the case was still sealed and Neomagic's counsel did not yet have access to filing. And the Court's docket and ECF stamp on the motion (ECF Nos. 42 and 43) both show that the motion was "filed" on October 20, which is not later than 14 days from October 6. Plaintiffs' contrary argument is another example of bad faith tactics.

## VIII.  Neomagic Requests the Additional Fees Incurred in Connection With the Motion for Attorneys' Fees Since October 20

Additional attorneys' fees were reasonably incurred in connection with the preparation of the reply and motion to strike. Mr. Oliver worked approximately 20 hours. Supp. Oliver Decl. ¶ 27. Mr. Ting worked approximately 12 hours. *Id.* Mr. DuMont worked approximately 7.75 hours. *Id.*

15

Neomagic submits that these fees are reasonable because Neomagic needed to respond to over 30 pages of briefing and consider whether and how to respond to four declarations, including three that attempted to submit improper evidence. *See* motion to strike (ECF Nos. 63, 64).

Accordingly, based on the hourly rates disclosed in ECF No. 45 (see, e.g., ¶13), Neomagic requests that the Court increase the lodestone of reasonable attorneys' fees by $17,450. When added to the $40,210 requested at ECF No. 43 p. 30, this results in a total request for an award of attorneys' fees and costs in the amount of $57,660.

## IX. CONCLUSION

While Plaintiffs attempt to argue that the Court should discard its standards and allow bad faith actions to combat a wave of counterfeiting, that is not what is at issue here. The issue here is threefold. Plaintiffs and their counsel brought this case against Neomagic in bad faith. After filing this case, they litigated it vexatiously. And over its short duration, they engaged in multiple instances of litigation misconduct. Any of these acts alone would be sanctionable. Combined, there should be no doubt that the Court should award reasonable attorneys' fees of $57,660 to Neomagic for being improperly dragged through this case.

Respectfully submitted,

Dated: November 13, 2020

By: ‎ /s/ Andrew T. Oliver ‎
ANDREW T. OLIVER

Kent E. Baldauf, Jr.
PA ID No. 70793
David DuMont
PA ID No. 205858
The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
ddumont@webblaw.com

Andrew T. Oliver
Cal Bar No. 226098 (pro hac vice)
Michael C. Ting

| | |
|---|---|
| 1 | |
| 2 | Cal Bar No. 247610 (pro hac vice motion expected)<br>AMIN, TUROCY & WATSON LLP<br>160 West Santa Clara Street, Suite 975<br>San Jose, CA  95113<br>Telephone: 650-393-0634<br>aoliver@ATWiplaw.com<br>mting@ATWiplaw.com |
| 3 | |
| 4 | |
| 5 | Attorneys for Defendant<br>NeoMagicCorporation |